IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF COURTLAND GETTEL REGARDING CASE FILING

I, COURTLAND GETTEL, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the Chief Executive Officer of Variant Holding Company, LLC, located at 1200 North El Dorado Pl., Ste. G-700, Tucson, Arizona 85715.

2.      Based on my positions with the Debtor, I am familiar with the day-to-day operations, business affairs, assets and liabilities, and books and records of the Debtor.

3.      I submit this declaration (the "Declaration") in support of the Debtor's voluntary chapter 11 petition and to provide the Court with important background information regarding the Debtor's case and the anticipated next steps forward.   Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's representatives at my direction, or my opinion based on my experience with the Debtor's operations and financial condition.  In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or

---

[1]  The last four digits of the Debtor's federal tax identification number are (4044).  The Debtor's address is 1200 North El Dorado Pl., Ste. G-700, Tucson, AZ  85715.

collected by the Debtor's representatives, I have relied upon these representatives in accurately recording, preparing, or collecting any such documentation and other information.

       4.      If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of the Debtor.

### General Background Regarding the Debtor

       5.      The Debtor and its affiliates are a commercial real estate company with indirect ownership interests in approximately 27 apartment complexes and other real property interests in Arizona, Georgia, Maryland, Nevada, South Carolina, Texas, and Virginia. The Debtor is the ultimate parent within the organization. An organizational chart for the Debtor and its affiliates is attached hereto as **Exhibit A**.

       6.      The Debtor's principal secured creditor is "Beach Point," which is made up of the following entities: BPC VHI, L.P., Beach Point Total Return Master Fund, L.P., Beach Point Distressed Master Fund, L.P. (together, "Beach Point"). Cortland Capital Market Services LLC ("Cortland") is the administrative agent for Beach Point's debt. On May 19, 2014, Beach Point commenced an action in California state court (the "State Court Action") to collect on a $73.5 million loan consummated in September and October 2013. The loan is secured by pledges in certain specified membership interests owned by the Debtor and two non-debtor subsidiaries. A significant portion of the Debtor's interests are unencumbered by Beach Point's debt. In addition to Beach Point's commencement of the State Court Action, Cortland (as administrative agent for Beach Point) noticed a foreclosure sale of the Debtor's pledged membership interests for August 29, 2014.

7.      As is now clear to the Debtor, Beach Point entered into the loan with the Debtor as part of a "loan to own" scheme with the goal of stripping the Debtor of valuable ownership interests in real estate, and not for purposes of making a commercial loan. Through its conduct, Beach Point has also attempted to extract outrageous fees and charges under the loan. As an example, the original loan amount had a principal amount of $73.5 million. Beach Point has already been paid approximately $18 million. Yet, Beach Point continues to assert approximately $70 million in claims against the Debtor and its affiliates. Beach Point has also made spurious allegations of fraud, negligent misrepresentation, and other tort claims in the State Court Action against the Debtor and certain affiliates, including fraudulent transfer and alter ego claims under California law that (if valid) now properly reside in the Debtor's bankruptcy estate. The Debtor believes that it has been damaged by Beach Point's conduct and intends to assert claims against Beach Point at the appropriate time and in the appropriate forum.

8.      This bankruptcy case was commenced in order to provide the Debtor with a breathing spell as a means to effectuate a reorganization, including the sale of the real estate portfolio owned by the Debtor's non-debtor subsidiaries. The Debtor's subsidiaries have already retained brokers who have begun the process of marketing the entire portfolio for sale. The Debtor and its subsidiaries' brokers estimate the value of the portfolio at over Three Hundred Million Dollars ($300,000,000). The portfolio is encumbered by first mortgage debt in the approximate amount of One Hundred Fifty Million Dollars ($150,000,000) and Beach Point's contested and partially secured claim of approximately Seventy Million Dollars ($70,000,000). There is ample equity value in such real estate interests to fund full payment to Beach Point (to the extent of its allowed claim) and other creditors, and to yield significant returns for equity holders. The filing of this case was also necessary in order to maximize value for the estate's

other creditor constituents.  Non-insider unsecured creditor claims against the Debtor are expected to exceed $10 million.

### The Debtor's Relationship with Beach Point (and Its Agent, Cortland)

9.      The Debtor, as borrower, Beach Point (or its predecessor affiliates), as lenders, and Cortland, as administrative agent for the lenders, initially entered into that certain *Loan Agreement* dated September 13, 2013, pursuant to which the lenders thereto agreed to advance $72 million to the Debtor.  The parties subsequently entered into that certain *Amended and Restated Loan Agreement* dated as of October 11, 2013 (the "Loan Agreement"), pursuant to which the lenders thereto (*i.e.*, Beach Point) loaned the aggregate sum of $73.5 million to the Debtor in two tranches designated as M1 ($30 million) and M2 ($43.5 million).  The Debtor executed two promissory notes (the "Notes") in favor of Beach Point to evidence the obligations under the Loan Agreement.

10.      The Debtor's obligations under the Loan Agreement are secured by a specified subset of the Debtor's assets.  Specifically, pursuant to that certain *Pledge and Security Agreement* dated as of September 13, 2013, the Debtor pledged its 94% membership interests in Laser Focus Holding Company, LLC ("Laser Focus Holding") to Cortland, in its capacity as administrative agent, to secure the M2 obligations under the Loan Agreement.  In addition, non-debtor Laser Focus Holding entered into that certain *Pledge and Security Agreement* dated as of September 13, 2013, pledging its 100% membership interests in Laser Focus Commercial Investments, LLC ("Laser Focus Commercial") to Cortland, in its capacity as administrative agent, to secure the M1 obligations under the Loan Agreement.  Laser Focus Commercial, through other intermediary subsidiaries, owns 14 apartment complexes in Texas.

11.    Non-debtor Numeric Commercial Investments, LLC ("Numeric") is a wholly-owned subsidiary of the Debtor.  Numeric entered into that certain *Pledge and Security Agreement* dated as of September 13, 2013, pledging its membership interests in Tucson Mall Suites, LLC ("Tucson Mall") and Spencer Highway Self Storage, LLC ("Spencer Highway") to Cortland, in its capacity as administrative agent, to secure the M2 obligations under the Loan Agreement.  Tucson Mall owns a hotel property in Tucson, Arizona and Spencer Highway owns a self-storage facility in Pasadena, Texas.

12.    Numeric and certain other affiliates of the Debtor are guarantors of the obligations under the Loan Agreement, at least in part.

13.    The Debtor, through Numeric and other subsidiaries, owns an additional 13 apartment complexes that are unencumbered by Beach Point's and Cortland's asserted liens and claims.

14.    On May 7, 2014, Cortland, on behalf of Beach Point, delivered to the Debtor a notice of default under the Loan Agreement, accelerating all payment obligations thereunder.

15.    On July 3, 2014, Cortland, on behalf of Beach Point, delivered a *Notification of Disposition of Collateral* to the Debtor, Conix, Inc., and myself providing notice of Cortland's intent to conduct a public sale of the Debtor's 94% membership interests in Laser Focus Holding on August 8, 2014.  Conix, Inc. and I, in my individual capacity, together hold the remaining 6% of the membership interests in Laser Focus Holding.  The foreclosure sale was subsequently continued by Cortland to August 15, 2014, and then August 29, 2014.

16.    Also on July 3, 2014, Cortland, on behalf of Beach Point, delivered two separate notices each designated *Notification of Disposition of Collateral* to Numeric providing

notice of Cortland's intent to conduct a public sale of Numeric's 100% membership interests in each of Tucson Mall and Spencer Highway. The foreclosure sale was subsequently continued by Cortland to August 15, 2014, and then August 29, 2014. On August 28, 2014, Cortland cancelled the foreclosure sale of Numeric's membership interests.

17.     The Debtor commenced its bankruptcy case, among other reasons, in order to stay the foreclosure sale of its interests in Laser Focus Holding.

### Anticipated Steps Forward in the Chapter 11 Case

18.     In order to bring additional transparency to this bankruptcy case and the Debtor's ongoing efforts to market and sell its subsidiaries' real estate assets, the Debtor has determined that obtaining the services of a Chief Restructuring Officer and other personnel with turnaround and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in this case, and (b) preserve and maximize the value of its assets pending any sale or sales at subsidiary levels. As such, the Debtor has appointed Bradley D. Sharp ("Mr. Sharp") of Development Specialists, Inc. ("DSI") as Chief Restructuring Officer ("CRO"), along with certain DSI personnel as appropriate, effective as of the commencement of this case. DSI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States.

19.     Contemporaneously with this Declaration, the Debtor has filed a motion (the "CRO Motion") to retain DSI and Mr. Sharp as CRO.[2] As CRO, Mr. Sharp will assume control of the Debtor's direct and indirect assets, including the day-to-day control of the ongoing efforts of the Debtor's affiliates to market and sell their respective assets, among other duties.

---

[2] The Debtor will also seek approval of its retention of Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel and Greenberg Traurig LLP as special litigation counsel.

Mr. Sharp will report to the Court, as well as complying with the Debtor's corporate governance requirements. Compensation to Mr. Sharp and DSI will be payable based on an hourly rate structure, as set forth in the CRO Motion.

20.     The appointment of Mr. Sharp as CRO and DSI's engagement should assist all parties to focus on protection of asset value and creditor repayment as opposed to allegations of pre-petition misconduct from which the bankruptcy estate will be insulated by Mr. Sharp's and DSI's engagement.

21.     As noted, the Debtor is in the process of marketing its subsidiaries' real estate portfolio for immediate sale. The purpose of the sale process is to generate sufficient proceeds to repay Beach Point and other constituents in full as soon as reasonably possible and to maximize the value of this estate. The Debtor anticipates developing and seeking Court approval of protocols for the sale of its non-debtor affiliates' assets. Although no Court approval is required for the sale of a non-debtor's assets, in the interests of full disclosure and complete transparency, the Debtor is willing to discuss providing reasonable notice and an opportunity to object to Beach Point and other parties in interest of its intention to cause the sale of a non-debtor affiliate's assets. The Debtor also is willing to consider setting aside proceeds of affiliates' asset sales in which Beach Point asserts an interest.

22.     The Debtor believes that the best path forward in this chapter 11 case – to maximize asset value and creditor recoveries – is to allow the Debtor, through its independent and experienced CRO, to proceed with its strategy of selling non-debtor subsidiary assets and thereby realizing the highest possible return for all constituents within a reasonably short time frame.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:   August 29, 2014

Respectfully submitted,

Variant Holding Company, LLC

Courtland Gettel
Chief Executive Officer