IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION OF DEBTOR PURSUANT TO 11 U.S.C.
§§ 105(a) AND 363(b) TO EMPLOY AND RETAIN DEVELOPMENT SPECIALISTS,
INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL
PERSONNEL, AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED
SERVICES, *NUNC PRO TUNC* AS OF THE PETITION DATE**

The above-captioned debtor (the "Debtor") hereby moves (the "Motion") the

Court for the entry of an order pursuant to sections 105(a) and 363(b) of title 11 of the United

States Code (the "Bankruptcy Code"):  (a) authorizing the Debtor to retain Development

Specialists, Inc. ("DSI"), pursuant to the terms and conditions of that certain letter agreement

between DSI and the Debtor dated August 28, 2014 (the "Engagement Letter"), as further

modified herein, to (i) provide Bradley D. Sharp ("Mr. Sharp") as Chief Restructuring Officer

("CRO") of the Debtor, (ii) provide additional personnel (the "Additional Personnel"), (iii)

provide financial advisory and restructuring-related services to the Debtor, in each instance *nunc*

*pro tunc* to the commencement of this case (the "Petition Date"); and (iv) granting certain related

relief.  A copy of the Engagement Letter is attached hereto as **Exhibit A**.  In support of this

Motion, the Debtor relies upon the declaration of Mr. Sharp, a Senior Vice President of DSI

(the "Sharp Declaration"), attached hereto as **Exhibit B** and incorporated herein by reference,

and respectfully represents as follows:

---

[1]  The last four digits of the Debtor's federal tax identification number are (4044).  The Debtor's address is 1200 North El Dorado Pl., Ste. G-700, Tucson, AZ  85715.

## Jurisdiction

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

2.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## Background

3.  On the Petition Date, the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its properties as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee.

4.  The Debtor and its affiliates are a commercial real estate company with indirect ownership interests in approximately 27 apartment complexes and other real property interests in Arizona, Georgia, Maryland, Nevada, South Carolina, Texas, and Virginia.  The Debtor is the ultimate parent within the organization.

5.  The factual background relating to the Debtor's commencement of this chapter 11 case is set forth in detail in the declaration of Courtland Gettel, the Debtor's Chief Executive Officer, filed concurrently with this Motion.

## DSI's Engagement and Qualifications

6.  In order to bring additional transparency to this bankruptcy case and the Debtor's ongoing efforts to market and sell its subsidiaries' real estate assets, the Debtor has determined that obtaining the ongoing services of a CRO and other personnel with turnaround

and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in this case and (b) preserve and maximize the value of its assets pending any sale or sales.  As such, the Debtor has chosen to utilize DSI personnel as appropriate and has appointed Mr. Sharp of DSI to the position of CRO.  Specifically, as set forth in the Engagement Letter, the Debtor retained DSI and Mr. Sharp as CRO, effective as of the commencement of this case.  DSI has been engaged by the Debtor as financial advisor since August 7, 2014.

7.     DSI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States.  Among many other examples, DSI has provided (a) restructuring and turnaround advisory services for the following companies: Namco Capital Group, Inc., Estate Financial Mortgage Fund, LLC, Reynaldo's Mexican Food Manufacturer, Inc., Rouge Industries, and Vista Hospitals; and (b) financial advisory services to companies, secured creditors, committees or trustees in the following matters: Dana Corporation, Dreier, LLP, London Fog, Precision Tool & Die Machine Company, and United Producers, Inc..

8.     Further, as a result of prepetition work performed on behalf of the Debtor, DSI has acquired significant knowledge of the Debtor and its business and is now familiar with the Debtor's financial affairs, debt structure, operations and related matters.  Likewise, in providing prepetition services to the Debtor, DSI's professionals have worked closely with the Debtor's management and other advisors.  Accordingly, DSI has developed relevant experience regarding the Debtor that will assist it in providing effective and efficient services to the Debtor in this case.

9.     As such, the Debtor believes that DSI is well qualified and able to advise the Debtor in a cost-effective, efficient and timely manner.  The Debtor has been advised by DSI that it will endeavor to coordinate with the other professionals retained in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.  Therefore, the Debtor submits that the retention and employment of DSI is in the best interests of its estate, creditors and other stakeholders in this case.

## Services to Be Provided by DSI

10.     Consistent with the terms of the Engagement Letter, Mr. Sharp as CRO and the Additional Personnel are charged with assisting the Debtor with its various operational, administrative and financial needs arising in connection with this chapter 11 case.  More specifically, but without limitation, the anticipated services include the following:

(a)     providing Mr. Sharp to act as Chief Restructuring Officer of the Debtor, upon the filing of the Debtor's bankruptcy case.  As CRO, Mr. Sharp will assume control of the Debtor's direct and indirect assets, including the day-to-day control of the ongoing efforts of the Debtor's affiliates to market and sell their respective assets.  Mr. Sharp will report to the Bankruptcy Court, as well as complying with the Debtor's corporate governance requirements;

(b)     implementing and prosecuting the chapter 11 case, including, but not limited to, disposition of assets, negotiations with creditors, reconciliation of claims and confirmation of a plan;

(c)     in addition, other services may include:

(i) assisting the Debtor in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

(ii) advising and assisting the Debtor, the Debtor's legal counsel and other professionals in responding to third party due diligence requests, including with respect to potential sales of the Debtor's assets.

(iii) attending meetings and assisting in communications with parties in interest in this case and their professionals, including the Debtor's secured lenders, any official committee(s) appointed in these chapter 11 cases and the Office of the United States Trustee (the "U.S. Trustee");

(iv) providing litigation advisory services with respect to accounting matters, along with expert witness testimony on case related issues; and,

(v) rendering such other general business consulting or such other assistance as Debtor's counsel may deem necessary and which are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this case.

### DSI's Fees

11.     As set forth in the Engagement Letter, for DSI's services rendered in connection with the restructuring advisory function of the scope of services, the Debtor has agreed to compensate DSI on an hourly basis.  As set forth in the Engagement Letter, the hourly rates for Mr. Sharp and the Additional Personnel are as follows:

| | | |
|---|---|---|
| a) | Bradley D. Sharp | $570.00/hr. |
| b) | R. Brian Calvert | $570.00/hr. |
| c) | Eric J. Held | $425.00/hr. |
| d) | Matthew P. Sorenson | $330.00/hr. |
| e) | Shelly L. Cuff | $250.00/hr. |

12.     In addition to the fees outlined above, DSI will bill the Debtor for reimbursement of reasonable costs and expenses incurred on the Debtor's behalf during the engagement.  Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses, long distance telephone charges, postage and other charges customarily invoiced by consulting firms.  Airfare for international flights will be charged at the business class fare.

13.    Notwithstanding anything to the contrary in the Engagement Letter, DSI is not seeking any "success," deferred, "back end" or similar fees from the Debtor for this engagement.

14.    Because DSI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  DSI will, however, submit certain reports described below.

### No Prepetition Obligations

15.    DSI has no outstanding obligations owed by the Debtor as of the Petition Date.

### Reporting Requirements

16.    To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtor under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol") (the "Protocol"), DSI intends to file with the Court and serve on the Debtor, the U.S. Trustee and any statutory committee(s) appointed in this case (collectively, the "Committee" and, together with the Debtor and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all DSI personnel assigned to this engagement.  The Staffing Report (and DSI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

17.    In addition, DSI will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis.  The Compensation Reports would summarize the service provided, identify the compensation earned, itemize expenses incurred and provide for an objection period. All such compensation would be subject to review by this Court if an objection is filed.

## Indemnification and Liability Limitation Provisions

18.    The Engagement Letter contains standard indemnification and limitation of liability language with respect to DSI's services.  Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the Protocol, DSI has agreed otherwise, as set forth below.

19.    Notwithstanding anything to the contrary in the Engagement Letter, the Debtor is permitted to indemnify those persons acting as executive officers only on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, in addition to insurance coverage under the Debtor's director and officer insurance policies.

20.    There will be no other indemnification of DSI or any of its affiliates.

21.    Finally, notwithstanding any provisions of the Engagement Letter to the contrary, DSI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to DSI's engagement in this case.

## Legal Basis for Relief Requested

### A.    The Debtor Has Exercised Its Sound and Prudent Business Judgment

22.    Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."

*In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also In re*

*Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

  23. The retention of corporate officers, including in conjunction with the

retention of associated turnaround and advisory firms to provide related services, is proper under

section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined

that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re*

*Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order

authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief

restructuring officer and certain additional officers and personnel); *In re Archbrook Laguna*

*Holdings LLC*, No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention

of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In*

*re Calpine Corp.*, No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing

employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code);

*In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order

designating chief restructuring officer and chief financial officer pursuant to section 363 of the

Bankruptcy Code).

  24. Entry into the Engagement Letter and retaining DSI to provide Mr. Sharp

as CRO and the Additional Personnel, and the financial advisory and restructuring-related

services, upon the terms set forth in the Engagement Letter, this Motion and any order approving

this Motion, would enable the Debtor to most efficiently administer this case and control the

process of selling its subsidiaries' assets, address issues arising in chapter 11, and preserve and

maximize the value of the estate. The Debtor requires the assistance of qualified and

experienced personnel to assist in these matters. Thus, the Debtor believes that it would be in its

best interests and in the best interests of its estate, creditors and other parties-in-interest for the

Court to grant the relief requested herein, with such relief being deemed effective as of the

Petition Date.

25.      The Debtor believes that DSI's fee structure is fair and reasonable in light

of the type of services being provided and is comparable to those generally charged by firms of

similar stature to DSI for comparable engagements.  In addition, given the numerous issues DSI

may be required to address in this case, the intense effort expected to be required over certain

periods of time (particularly at the outset of this case), DSI's commitment to the variable level of

time and effort necessary to address all such related issues as they arise and the market prices for

DSI's services for engagements of this nature in an out-of-court context, the Debtor believes that

the DSI fee arrangement is fair and reasonable.

**B.      The Proposed Retention Comports with the Bankruptcy Code and the Protocol**

26.      DSI will provide the Notice Parties with the Staffing Reports and the

Compensation Reports.  Because the Debtor is seeking to retain DSI and a CRO pursuant to

section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, DSI is

not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code.

Therefore, the Debtor requested that fees and expenses of DSI incurred in the performance of the

above-described services be treated as an administrative expense of the Debtor's chapter 11

estate and be paid by the Debtor in the ordinary course of business, without the need for DSI to

file fee applications or otherwise seek Court approval for the compensation of its services and

reimbursement of its expenses, other than those described above.

27.      In addition, because the Debtor is not seeking to retain DSI as a

professional under section 327 of the Bankruptcy Code, there is no requirement that DSI, Mr.

Sharp or any of the Additional Personnel be disinterested.  Nevertheless, to the best of the

Debtor's knowledge, information and belief based on the Sharp Declaration, DSI does not have

or represent any interest adverse to the Debtor's estate or any class of creditor or equity security

holders, by reason of any direct or indirect relationship to, connection with or interest in, parties

in interest in this case, or for any other reason.  Additional information about DSI's connections

to parties in interest in this case is described in the Sharp Declaration.

**C.    The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code**

28.    Additionally, the Court's general equitable powers codified in

section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein.

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or

judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see*

*also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental*

*Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements

courts' specifically enumerated bankruptcy powers by authorizing orders necessary or

appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Communications Corp.*

*v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr.

S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to

maintain its own jurisdiction and to facilitate the reorganization process.").

**No Prior Request**

29.    No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with this chapter 11 case.

**Notice**

30.    Notice of this Motion has been given to the following parties or, in lieu

thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtor's

principal secured lenders; (c) the creditors on the list of creditors holding the 20 largest

unsecured claims; and (d) those persons who have requested notice pursuant to Rule 2002 of the

Federal Rules of Bankruptcy Procedure.  The Debtor submits that, in light of the nature of the

relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit C**, (a) granting the relief sought herein and (b) granting to the Debtor such other and further relief as the Court may deem proper.

Dated:   August 29, 2014

Respectfully submitted,

Variant Holding Company, LLC

Courtland Gettel
Chief Executive Officer