IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VARIANT HOLDING COMPANY, LLC,[1] | ) Case No. 14-12021 (BLS) |
| | ) |
| Debtor. | ) |
| | ) **Re: Docket No. 4** |

**SUPPLEMENT TO MOTION OF DEBTOR PURSUANT TO 11 U.S.C.
§§ 105(a) AND 363(b) TO EMPLOY AND RETAIN DEVELOPMENT SPECIALISTS,
INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL
PERSONNEL, AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED
SERVICES, *NUNC PRO TUNC* AS OF THE PETITION DATE**

The above-captioned debtor (the "Debtor") hereby submits this supplement (the "Supplement") to the *Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc as of the Petition Date* [Docket No. 4] (the "CRO Motion"). In support of this Supplement, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The Debtor has amended its operating agreement and engagement letter with Development Specialists, Inc. ("DSI") to broaden the management authority of the Debtor's proposed Chief Restructuring Officer, Bradley D. Sharp (the "CRO"). As amended, the CRO will be the sole officer of the Debtor and will have complete dominion and control over the management and operations of the Debtor, including its various direct and indirect property-owning subsidiaries, subject only to the oversight of a new independent board of management

---

[1] The last four digits of the Debtor's federal tax identification number are (4044). The Debtor's address is 1200 North El Dorado Pl., Ste. G-700, Tucson, AZ 85715.

and this Court. The Debtor's prior management and principals will have no further governance role with the Debtor so long as this case remains pending.

2. The foregoing governance changes are irrevocable and will ensure that independent and professional fiduciaries will manage the Debtor's estate, mooting any need to appoint a chapter 11 trustee. Accordingly, the CRO Motion, as modified by the amended operating agreement and engagement letter, should be approved.

## Background

3. On August 29, 2014, the Debtor filed the CRO Motion seeking, among other things, to retain Mr. Sharp as CRO. The original engagement letter between the Debtor and DSI was attached as Exhibit A to the CRO Motion.

4. On September 5, 2014, BPC VIII, L.P., Beach Point Total Return Master Fund, L.P., and Beach Point Distressed Master Fund, L.P. (collectively, the "Beach Point Funds") filed the *Motion of the Beach Point Funds for an Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 20] (the "Trustee Motion").

5. On September 12, 2014, the Debtor filed the *Debtor's Preliminary Objection to Motion of the Beach Point Funds for an Order Directing the Appointment of a Chapter 11 Trustee; and Request for Continuance* [Docket No. 51] (the "Preliminary Objection"). Through the Preliminary Objection, the Debtor asserted that it was taking "swift action to appoint independent managers to oversee the CRO's activities, and to amend its operating agreement to prevent existing equity holders and principals from having any management role with the Debtor." Preliminary Objection ¶ 2. The Debtor also emphasized that "[s]uch governance controls will be irrevocable and will ensure independent and professional management of this estate, mooting any possible need for the appointment of a trustee." *Id.*; *see*

*also* ¶¶ 20-21 (summarizing the proposed new provisions for the Debtor's amended operating agreement).

### Supplemental Basis for Relief

6.    As promised in the Preliminary Objection, the Debtor has now amended its operating agreement and made consistent changes to DSI's engagement letter in order to irrevocably remove the Debtor's prior management and principals and to replace them with the CRO as sole officer and a new board of independent managers.

7.    Attached hereto as **Exhibit 1** is the Amended and Restated Operating Agreement of Variant Holding Company, LLC dated September 19, 2014 (the "Amended Operating Agreement").[2] The Amended Operating Agreement provides for, among other new provisions, the appointment of two independent managers who shall constitute the board of managers of the Debtor. *See* Amended Operating Agreement, Art. 5.1, 5.2. The initial independent managers shall be Manager 1 (M. Freddie Reiss) and Manager 2 (R. Todd Neilson). *See id.*, Art. 1.29, 1.30. A redline comparing the Amended Operating Agreement to the prior operating agreement is attached hereto as **Exhibit 2**.

8.    In addition, the Amended Operating Agreement provides that:

- Under the original operating agreement, Variant Manager, LLC ("Variant Manager") was the sole manager of the Company. Amended Operating Agreement, Recital A.

- The Members have removed Variant Manager as manager of the Company and have restated the original operating agreement to provide, inter alia, that during the Bankruptcy Period (as defined in the Amended Operating Agreement) (A) management of the operations and business affairs of the Company will be under the control of Mr. Sharp as Chief Restructuring Officer, subject to the supervision of an independent board of managers and (B) neither Variant Manager, nor the Members, nor any of their

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Amended Operating Agreement or Amended Engagement Letter, as applicable.

    Affiliates shall participate in the management or affairs of the Company. Amended Operating Agreement, Recital D.

- A Manager may be removed For Cause by the Members, *provided, however*, during the Bankruptcy Period, the Members shall take no such action, and no such action shall have any force or effect, except upon and subject to approval by the Bankruptcy Court. Amended Operating Agreement, Art. 5.5.

- During the Bankruptcy Period, no Member or any Affiliate thereof shall, or shall have any right, power or authority to, make any decisions in the name of or on behalf of the Company or to vote upon, consent to, approve or ratify any act or transaction by the Company or otherwise participate in the management of the business or affairs of the Company. Amended Operating Agreement, Art. 7.4.

- The Amended Operating Agreement may not be amended except by the affirmative unanimous written vote of Members; *provided, however*, that during the Bankruptcy Period, the Members shall not have the right, power or authority to amend the Amended Operating Agreement except with the express prior written approval of the Chief Restructuring Officer, the Board of Managers, and the Bankruptcy Court. Amended Operating Agreement, Art. 13.2.

    9.  Pursuant to the Amended Operating Agreement, the CRO is the sole officer of the Debtor and is firmly in control of all assets and operations of the Debtor, subject only to the supervision of the independent managers that comprise the Debtor's newly-installed board of managers and this Court. The members of the Debtor – Conix WH Holdings, LLC, Conix, Inc., Numeric Holding Company, LLC, Walkers Dream Trust, and Variant Royalty Group, LP – have removed Variant Manager, LLC, the Debtor's prior sole manager, from any further management or participation in the Debtor's operations and business affairs. In addition, the members themselves have forfeited the power or authority to make any decisions regarding the Debtor's management, and have agreed that the Amended Operating Agreement cannot be revised or amended by them without the approval of the CRO, the independent managers, and this Court. Through these governance changes, the Debtor's prior management and principals

will not have any authority over the CRO or the independent managers, and no governance role in the Debtor's affairs on a going forward basis.

10. Attached hereto as **Exhibit 3** is the amended engagement letter dated September 19, 2014 (the "Amended Engagement Letter") between the Debtor and DSI. The Amended Engagement Letter incorporates various revisions consistent with the Amended Operating Agreement and provides for the CRO to have complete dominion and control over the Debtor and its assets, subject only to the oversight of the independent managers and this Court. A redline comparing the Amended Engagement Letter against the original engagement letter with DSI is attached hereto as **Exhibit 4**.

11. The key terms of the Amended Engagement Letter are summarized below:

- During the Debtor's bankruptcy case: (A) management of the operations and business affairs of the Debtor will be under the control of Mr. Sharp as Chief Restructuring Officer, subject to the supervision of the independent Board of Managers and (B) neither the members of the Debtor nor any of their Affiliates shall participate in the management or affairs of the Company. Mr. Sharp will report to the Board of Managers as required by the Debtor's amended operating agreement and, as appropriate, the Bankruptcy Court. Amended Engagement Letter § 1(b).

- The Chief Restructuring Officer may not be removed as Chief Restructuring Officer except by order of the Bankruptcy Court by reason of an act or omission "For Cause," which is defined in the Amended Engagement Letter as an intentional act of malfeasance, e.g., fraud, embezzlement, theft, self dealing, intentional damage to the Debtor's assets, etc. Amended Engagement Letter § 3.

12. The Beach Point Funds make the argument in the Trustee Motion that the Debtor's fraud is too deep to cure through a CRO because: (a) the original engagement letter suggested that the Debtor's prepetition management would continue to retain oversight and decision-making authority over the CRO; and (b) the original engagement letter provided that the CRO could be terminated for any reason. Trustee Motion ¶ 47. These arguments are now moot.

13.     The Debtor's prepetition management, existing equity holders, and principals will have no role in the conduct or affairs of the Debtor and its non-debtor subsidiaries in this case. The CRO will report to two independent managers who have no prior relationship with the Debtor, its affiliates, or any of its principals. The independent managers are professionals well-versed in serving in fiduciary roles in bankruptcy cases and have particular experience regarding commercial real estate. In addition, the Amended Engagement Letter provides that the CRO may not be removed except "for cause" and except by an order of the Bankruptcy Court. This additional layer of protection will ensure that the Debtor, through the CRO and with oversight from the independent managers, can fulfill its fiduciary obligations to the estate and maximize value for all constituents.

## Conclusion

14.     The Debtor has taken prompt and irrevocable action to appoint independent management for the Debtor as reflected in the Amended Operating Agreement and the Amended Engagement Letter. As a result of such governance changes, there is no need for the appointment of a chapter 11 trustee and the CRO Motion, as amended hereby, should be approved.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtor respectfully requests that the Court enter an order approving the CRO Motion, as amended hereby, and granting to the Debtor such other and further relief as the Court may deem proper.

Dated: September 23, 2014                              PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Peter J. Keane*
Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
Maxim B. Litvak (CA Bar No. 215852)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rpachulski@pszjlaw.com
          akornfeld@pszjlaw.com
          mlitvak@pszjlaw.com
          pkeane@pszjlaw.com

[Proposed] Counsel for Debtor and Debtor in Possession, Variant Holding Company, LLC