## Exhibit 3

**Amended Engagement Letter**



**Development Specialists, Inc.**
Advisory and Fiduciary Services • Corporate Restructuring and Workouts • Interim Management • Insolvency Services

September 19, 2014

Mr. Courtland Gettel,
Chief Executive Officer
Variant Holding Company, LLC
1200 North El Dorado Place
Suite G-700
Tucson, Arizona 85715

      Re:    Development Specialists, Inc. ("DSI")
              <u>Amended Retention and Letter of Engagement</u>

Dear Mr. Gettel:

This letter supersedes the engagement letter of August 28, 2014. Please accept this letter as our firm's formal written agreement (the "Agreement") to name Bradley D. Sharp of DSI as Chief Restructuring Officer ("CRO") of Variant Holding Company, LLC (the "Company" or the "Debtor") effective upon the bankruptcy filing of the Company. DSI will also provide additional personnel with respect to restructuring support services to the Company described herein. In this position, our firm's role will be to provide the following services to the Company:

Section 1 – Scope of Work

DSI's role will be to provide the following services to the Company:

a. Bradley D. Sharp will act as the Debtor's CRO, upon the filing of a bankruptcy;

b. As CRO, Mr. Sharp will assume control of the Debtor's direct and indirect assets, including the control of the ongoing efforts of the Debtor's affiliates to market and sell their respective assets. During the Company's bankruptcy case: (A) management of the operations and business affairs of the Company will be under the control of Mr. Sharp as Chief Restructuring Officer, subject to the supervision of the independent Board of Managers and (B) neither the members of the Company nor any of their Affiliates shall participate in the management or affairs of the Company. Mr. Sharp will report to the

LOS ANGELES
333 South Grand Avenue, Suite 4070 • Los Angeles, California 90071-1544 • Telephone: 213.617.2717 • Fax: 213.617.2718 • www.dsi.biz

SAN FRANCISCO • CHICAGO • NEW YORK • MIAMI • LONDON • PHILADELPHIA • COLUMBUS • CLEVELAND

Variant Holding Company, LLC
September 19, 2014
Page 2

    Board of Managers as required by the Company's amended operating agreement and, as appropriate, the Bankruptcy Court.

c. The CRO will be responsible for the implementation and prosecution of the Chapter 11 Case, including, but not limited to, disposition of assets, negotiations with creditors, reconciliation of claims and confirmation of a plan;

d. Provide other personnel of DSI to provide restructuring support services as necessary.

e. Provide other services which may include:

    i. assisting the Debtor in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

    ii. advising and assisting the Debtor, the Debtor's legal counsel and other professionals in responding to third party due diligence requests, including with respect to potential sales of the Debtor's assets.

    iii. attending meetings and assisting in communications with parties in interest in this case and their professionals, including the Debtor's secured lenders, any official committee(s) appointed in these chapter 11 cases and the Office of the United States Trustee (the "U.S. Trustee");

    iv. providing litigation advisory services with respect to accounting matters, along with expert witness testimony on case related issues; and,

f. Render such other general business consulting or such other assistance as Debtor's counsel may deem necessary and which are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this case.

DSI will submit its evaluation and analyses pursuant to this engagement in periodic oral and written reports. Such reports are intended to and shall constitute privileged and confidential information, and shall constitute your property.

Section 2 – Rates, Invoicing and Retainer

A number of DSI's personnel have experience in providing restructuring support services and may be utilized by DSI and/Mr. Sharp in this representation. Although others of our staff may also be involved, we have listed below certain of the DSI personnel (along with their



DSI Development Specialists, Inc.

Variant Holding Company, LLC
September 19, 2014
Page 3

corresponding billing rates) who would likely constitute the core group for this matter. The individuals are:

| | |
|---|---|
| Bradley D. Sharp | $570.00/hr. |
| R. Brian Calvert | $570.00/hr. |
| Eric J. Held | $425.00/hr. |
| Matthew P. Sorenson | $330.00/hr. |
| Shelly L. Cuff | $250.00/hr. |

The above rates are adjusted as of January 1st of each year to reflect advancing experience, capabilities, and seniority of our professionals as well as general economic factors. The hourly rate for Bradley D. Sharp as the CRO will be $570.00 per hour. The services of all other DSI staff will be capped at a blended hourly rate of $375.00 per hour to be calculated at each invoice on a cumulative basis.

DSI also will be entitled to reimbursement for its reasonable costs and expenses. Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses, long distance telephone charges, postage and other charges customarily invoiced by consulting firms. Airfare for international flights will be charged at the business class fare.

This Agreement shall be presented to the appropriate Court for approval and continuation, pursuant to Bankruptcy Code Sections 363, and DSI's then-prospective obligations shall be contingent upon such approval.

The Company and DSI have agreed that any retainer will be applied to post-petition invoices as approved by the Court before DSI seeks payment from the Debtor for DSI's monthly fees and/or expenses.

Section 3 – Termination

The Chief Restructuring Officer may not be removed as Chief Restructuring Officer except by order of the Bankruptcy Court by reason of an act or omission "For Cause," which means any of the following acts: (i) an intentional act of fraud, embezzlement, theft, self-dealing or any other material violation of law with respect to matters related to a Member or the conduct of Company business with third-parties; (ii) intentional damage to Company's assets, (iii) willful and continued failure to substantially perform the duties required by the Company's amended Operating Agreement (other than as a result of incapacity due to physical or mental illness) by the Chief Restructuring Officer or any Manager or other willful misconduct, to the extent demonstrably and materially injurious to Company, monetarily or otherwise. An act, or a failure to act, shall not be deemed willful or intentional, unless it is done, or omitted to be done, in bad faith or without a reasonable belief that said action or omission was in the best interest of the Company.


DSI Development Specialists, Inc.

Variant Holding Company, LLC
September 19, 2014
Page 4

DSI may terminate this agreement on no less than thirty (30) days' written notice. The Company shall be obligated, in accordance with any orders of or procedures established by the Court, to pay and/or reimburse DSI all fees and expenses accrued under this Agreement as of the effective date of the termination.

Section 4 – Relationship of the Parties, Confidentiality

DSI will provide services to and for the Company, with select members of DSI assigned to specific roles for the benefit of the Company. These members will remain as DSI employees during the pendency of this case. Specifically, the parties intend that an independent contractor relationship will be created by this Agreement. Employees of DSI are not to be considered employees of the Company and are not entitled to any of the benefits that the Company provides for the Company's employees, unless written modification is made to this retention agreement.

The Company shall name Bradley D. Sharp as its Chief Restructuring Officer and in addition to the indemnity under this Agreement, shall indemnify him on the same terms as provided to the Company's other officers and directors under the Company's corporate bylaws and applicable state law. Mr. Sharp shall be included as an insured under any insurance policies or coverage available to officers and directors of the Company.

The Company acknowledges that all advice (written or oral) given by DSI to the Company in connection with DSI's engagement is intended solely for the benefit and use of the Company (limited to its Board of Directors) in considering the transaction to which it relates, and that no third party is entitled to rely on any such advice or communication. DSI will in no way be deemed to be providing services for any person not a party to this letter agreement.

DSI agrees that all information not publicly available that is received by DSI from the Company in connection with this engagement or that is developed during this engagement, will be treated as confidential and will not be disclosed by DSI, except as required by Court order, or other legal process, or as may be authorized by the Company. DSI is being engaged to assist counsel in the preparation of litigation and restructuring strategies and all information provided by counsel or by DSI, or developed by DSI, may be subject to the attorney-client and work product protection. DSI shall not be required to defend any action to obtain an order requiring disclosure of such information, but shall instead give prompt notice of any such action to the Company, so that you may seek appropriate remedies, including a protective order. The Company shall reimburse DSI for all costs and fees (including reasonable attorney's fees) incurred by DSI relating to responding to (whether by objecting to or complying with) any subpoenas or requests for production of information or documents.



Variant Holding Company, LLC
September 19, 2014
Page 5

Section 5 – Indemnity

The Debtor shall indemnify those persons, and only those persons, serving as executive officers on the same terms as provided under the Debtor's amended operating agreement. Notwithstanding any term in the Agreement to the contrary, there shall be no indemnification of DSI, its affiliates or the Additional Personnel. Any such indemnity shall survive the expiration or termination by either party of this engagement.

Section 6 – Conflicts

DSI has made diligent inquiries to determine whether it or any of its professionals have any connections with the Debtor, creditors, or other parties in interest in this case. Based on that review, the review of DSI's conflict files and responses to inquiries from DSI's professional staff, neither DSI nor its professionals have connections with the parties in this case.

Section 7 – No Audit

The Company acknowledges that it is hiring DSI to assist and advise the Company in business planning and operations. DSI's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA or other such state and national professional bodies.

Section 8 – Non-Solicitation

The Company agrees not to solicit, recruit or hire any employees or agents of DSI for a period of two years subsequent to the completion and/or termination of this Agreement.

Section 9 – Survival

The provisions of this agreement relating to indemnification, the non-solicitation or hiring of DSI employees, and all other provisions necessary to the enforcement of the intent of this agreement will survive the termination or expiration of this Agreement.

Section 10 – Entire Agreement, Amendment

This Agreement letter contains the entire understanding of the parties relating to the subject matter of this engagement letter and supersedes and is intended to nullify any other agreements, understandings or representations relating to the subject of this engagement letter. This engagement letter may not be amended or modified except in a writing signed by the parties.


DSI Development Specialists, Inc.

Variant Holding Company, LLC
September 19, 2014
Page 6

If you are in agreement with the terms and conditions of this engagement letter, I would ask that you indicate your acceptance of the above terms of our engagement by signing an original copy of this engagement letter on the signature lines below, then returning one fully-executed agreement to DSI's office. The Agreement will become effective upon execution by duly authorized representatives of the respective parties.

Should the Company or its representatives have any questions, comments or concerns, or require additional clarification or information, please do not hesitate to call.

Very truly yours,

_____
Development Specialists, Inc.

                                              AGREED AND ACKNOWLEDGED:
                                              Variant Holding Company, LLC

                                              By: _____
                                              Date: ____09/19/14____


Development Specialists, Inc.