IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtor. | ) | **Related to Docket No. 34** |
| | ) | |

**DEBTOR'S RESPONSE TO MOTION OF THE BEACH POINT FUNDS AND CORTLAND CAPITAL MARKET SERVICES LLC FOR AN ORDER (I) COMPELLING THE DEBTOR OR CHAPTER 11 TRUSTEE TO SEEK BANKRUPTCY COURT APPROVAL FOR ALL SALES OF PROPERTY OWNED BY NON-DEBTOR SUBSIDIARIES, (II) GRANTING THE BEACH POINT FUNDS AND CORTLAND CAPITAL MARKET SERVICES LLC ADEQUATE PROTECTION FOR THE USE OF THEIR COLLATERAL, AND (III) GRANTING RELATED RELIEF**

Variant Holding Company, LLC (the "Debtor"), the above-captioned debtor and debtor in possession, hereby submits this response to the *Motion of the Beach Point Funds and Cortland Market Services LLC for an Order (I) Compelling the Debtor or Chapter 11 Trustee to Seek Bankruptcy Court Approval for All Sales of Property Owned by Non-Debtor Subsidiaries, (II) Granting the Beach Point Funds and Cortland Capital Market Services LLC Adequate Protection for the Use of Their Collateral, and (III) Granting Related Relief* [Docket No. 34] (the "Adequate Protection Motion"), filed by BPC VIII, L.P., Beach Point Total Return Master Fund, L.P., and Beach Point Distressed Master Fund, L.P. (collectively, the "Beach Point Funds") and Cortland Capital Market Services LLC, as administrative agent for the Beach Point Funds ("Cortland", and together with the Beach Point Funds, the "Beach Point Parties"). In support hereof, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are (4044). The Debtor's address is 1200 North El Dorado Pl., Ste. G-700, Tucson, AZ 85715.

1

## **Preliminary Statement**

1. By the Adequate Protection Motion, the Beach Point Parties effectively seek injunctive relief against the Debtor with respect to matters involving its non-debtor subsidiaries. This request is over-reaching and improper. However, in order to provide complete visibility into its actions in this case, the Debtor is prepared to provide advance notice, and an opportunity to object, to the Beach Point Funds prior to causing any of its non-debtor subsidiaries to consummate sales of their assets, or to enter into third party financing transactions, outside the ordinary course of business. In the event of objection by the Beach Point Funds, the Debtor would seek approval of this Court prior to causing its subsidiaries to consummate any proposed transaction.[2]

2. Further, the Debtor is willing to provide a full accounting of estimated sale or financing proceeds to the Beach Point Funds and, in the event of objection, to the Court. Such accounting would describe how every dollar from a proposed transaction will be utilized. It is the Debtor's intention to reserve excess funds at subsidiary levels so that such funds would be available to fund continuing maintenance obligations, capital expenditures, and other ordinary course expenses at property-owning subsidiaries. Such expenditures may be necessary in order to maximize property values. The Debtor will agree to provide advance notice to the Beach Point Funds of any contemplated intercompany loans to fund operating expenses at subsidiary levels.

---

[2] The Debtor also proposes to agree upon a set release price with the Beach Point Funds as to each property. If such release price is attained or exceeded, then the Beach Point Funds will be presumed to approve the sale. Nonetheless, the Debtor will provide notice to the Beach Point Funds of each proposed transaction, along with an accounting of anticipated proceeds.

3.    Although the Debtor does not believe that notice to the Beach Point Funds or Court approval of subsidiary asset sales or third party financing transactions is necessarily required, the Debtor is prepared to impose such requirements here in order to ensure complete transparency. To be clear, in the event of an objection by the Beach Point Funds, the Debtor will seek approval, under section 363 of the Bankruptcy Code, to exercise its business judgment by causing subsidiaries to effectuate certain proposed transactions. The Debtor will not be asking for approval of bid procedures, stalking horse protections, free and clear sales, assumption and assignment of contracts, or any of the other typical "bells and whistles" associated with bankruptcy sales. The Debtor also does not want the Court approval process to unreasonably complicate or delay the sale process for non-debtor subsidiaries. Hence, as set forth in the section entitled "Proposed Subsidiary Transaction Protocol" below, the Debtor proposes certain expedited procedures with respect thereto.

4.    As to the remaining requests for relief in the Adequate Protection Motion, the Debtor takes issue with the Beach Point Parties' underlying premise that the Debtor proposes to use collateral, including cash collateral, in which the Beach Point Parties assert an interest and therefore the Beach Point Parties are entitled to adequate protection. The Debtor is not proposing to use the Beach Point Parties' alleged collateral at this time. Rather, as noted above, the Debtor intends to segregate any sale proceeds at subsidiary levels in order to allow such funds to be available, if necessary, to maximize property values. The Beach Point Parties therefore are not entitled to adequate protection.

5. Finally, the Beach Point Parties seek to impose excessive and onerous reporting obligations on the Debtor as to the assets, operations, and business at subsidiary levels. Among other things, the Beach Point Parties seek monthly and quarterly detailed financial statements for each subsidiary, all information delivered to lenders at subsidiary levels, and various property-level reports. Because the Beach Point Parties are not creditors at property-owning subsidiary levels, they are not entitled to this level of detailed information. The Debtor is prepared, however, to provide monthly financial statements for real estate-owning subsidiaries to the Beach Point Parties so that they can be generally informed about subsidiary operations. More importantly, the Debtor is willing to make its representatives reasonably available to the Beach Point Funds to discuss the status of the sale/financing process. This is more than sufficient information for the Beach Point Parties to monitor this case.[3]

## Background

6. The Debtor and its affiliates are a commercial real estate company with direct and indirect ownership interests in approximately twenty-seven (27) apartment complexes and other real property interests in Arizona, Georgia, Maryland, Nevada, South Carolina, Texas, and Virginia. The Debtor is the ultimate parent within the organization.

7. The Debtor's principal secured creditors are the Beach Point Funds. Cortland is the administrative agent for the Beach Point Funds.

---

[3] As part of the Adequate Protection Motion, the Beach Point Parties repeat the allegations of wrongdoing from the pending trustee motion on the part of the Debtor's prepetition principals. The Debtor reserves all rights to contest such allegations at the appropriate time. Such allegations are irrelevant to the Adequate Protection Motion given that current management of the Debtor had no involvement with the alleged prepetition misconduct.

DOCS_DE:195437.1 89703/002

8. The Debtor's primary assets are its direct and indirect ownership interests in subsidiaries. The subsidiaries are currently marketing their assets for sale. Commercial real estate brokers have been retained and are proceeding with a comprehensive sale process. Initial offers are expected from prospective buyers by the end of September 2014. The Debtor expects to start consummating sales during the following months.

9. Significantly, the Debtor believes that proceeds of subsidiary asset sales will generate sufficient value for the Debtor's estate to pay all claims of the Beach Point Funds (to the extent allowed) and other creditors, and to generate returns in favor of the Debtor's equity holders.

### Independent Management for the Debtor

10. Management of the Debtor is now in the hands of an independent and experienced Chief Restructuring Officer, Bradley D. Sharp of Development Specialists, Inc. (the "CRO"). The CRO's engagement is broad-ranging. The CRO has assumed control of the Debtor's direct and indirect assets, including control of the ongoing efforts of the Debtor's subsidiaries to market and sell their respective real estate properties, among other duties.

11. As promised, the Debtor's operating agreement has been amended effective September 19, 2014, and a new board of independent managers has been installed. The two independent managers are: R. Todd Neilson and M. Freddie Reiss, both of whom are independent and experienced professionals with no prior relationship with the Debtor, its affiliates, or prior management. Under the amended operating agreement, prior management has been removed and the holders of the membership interests in the Debtor have no say so long as

the bankruptcy case is pending. The Debtor is managed exclusively by the CRO, subject to the oversight of the new board.

### **Proposed Subsidiary Transaction Protocol**

12. The Debtor proposes the following protocol for transactions involving subsidiaries outside the ordinary course of business (the "Subsidiary Transaction Protocol"):

- The Debtor shall not authorize or cause any subsidiaries to effectuate sales of assets or third party financing transactions outside the ordinary course of business, unless (a) no less than three (3) business days' advance notice of, and an opportunity to object to, each proposed transaction is provided to counsel for the Beach Point Funds, or (b) in the event of a timely objection by the Beach Point Funds thereto, Court approval is obtained.[4] Notice to the Beach Point Funds may be by email to counsel for the Beach Point Funds and should identify the material terms of the proposed transaction and provide an accounting of the projected proceeds and how they will be disbursed or held. No other notice shall be required to any other party in the event that Court approval is not required.

- In the event that the Beach Point Funds assert an objection to a proposed transaction, the Debtor will be required to seek Court approval by filing a motion for authority to cause a subsidiary to effectuate an asset sale or financing transaction (each, an "Approval Motion"). Each Approval Motion will summarize the key terms of the proposed transaction and provide an accounting of the projected proceeds and how they will be disbursed or held.

- The Debtor may file each Approval motion on at least seven (7) days' notice of hearing. Notice shall be provided via email (or, if no email address is available for the party, via overnight mail) to the Beach Point Parties, the Office of the United States Trustee, and any party requesting notice of matters in the case under Bankruptcy Rule 2002 (the "Notice Parties").

- Objections to each Approval Motion shall be due no later than three (3) days prior to the hearing (the "Objection Deadline"). The Debtor may file a reply no later than one (1) day prior to the hearing.

---

[4] The Debtor also proposes to agree upon a set release price with the Beach Point Funds as to each property. If such release price is attained or exceeded, then the Beach Point Funds will be presumed to approve the sale. Nonetheless, the Debtor will provide notice to the Beach Point Funds of each proposed transaction, along with an accounting of anticipated proceeds.

- Absent objection from a Notice Party by the Objection Deadline, the Debtor may submit a proposed order to the Court approving the sale at issue under a certification of counsel.

- In the event of a timely objection from a Notice Party, the matter will be decided by the Court.

- The Debtor will segregate all excess proceeds from subsidiary transactions at subsidiary levels and will not cause such subsidiaries to transfer such funds to other subsidiaries without providing at least seven (7) days' advance notice to the Beach Point Funds. Upon expiration of the notice period, the Debtor shall be authorized to cause its subsidiaries to transfer funds as proposed unless the Beach Point Funds obtain an order from this Court to the contrary.

13.     The foregoing protocol will provide the Beach Point Funds with complete transparency when it comes to the key issue in this case: the Debtor's efforts to maximize value at subsidiary levels.

### The Court Should Authorize the Debtor to Consummate Transactions At Subsidiary Levels in the Event of Objection from the Beach Point Funds

14.     Recognizing the need for additional transparency in this case, the Debtor is willing to provide advance notice of subsidiary asset or financing transactions to the Beach Point Funds. To the extent that the Beach Point Funds assert an objection to a particular subsidiary transaction, the Debtor will agree to seek approval from this Court prior to consummating any transaction at subsidiary levels.

15.     The Debtor's exercise of its approval rights to cause subsidiaries to effectuate asset sales or financing transactions will constitute a reasonable exercise of the Debtor's business judgment under Bankruptcy Code section 363(b). This provision states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting this provision, courts

have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983. Approval of subsidiary transactions will be further authorized pursuant to section 105 of the Bankruptcy Code, which authorizes the Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *See* 11 U.S.C. § 105(a).

16.     Each subsidiary transaction that the Debtor will present to this Court will be well-supported by the sound exercise of the Debtor's business judgment and, on that basis, should be approved.

### The Beach Point Parties are Not Entitled to Adequate Protection Because the Debtor is Not Utilizing Their Alleged Collateral

17.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides consent, or (ii) the court approves the use of cash collateral after notice and a hearing. *See* 11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

18.     Here, the Debtor is not proposing to use any cash collateral, or any other collateral in which the Beach Point Parties assert an interest. Subject to the proposed Subsidiary

8

Transaction Protocol outlined above, the Debtor intends to proceed with asset sales and financing transactions involving the assets held through various indirect subsidiaries. The Beach Point Parties admit that they have no security interests at the property level. *See* Adequate Protection Motion at p. 8, fn. 16 ("The Beach Point Parties acknowledge that they do not hold deeds of trust with respect to these underlying properties."). The Beach Point Parties assert that they have "a security interest in all distributions from Laser Holding in the H14 Portfolio, and from Numeric Commercial on account of the FX3 Portfolio and the Other Properties Portfolio." Adequate Protection Motion at ¶ 49.

19. The Debtor does not expect to receive any proceeds from subsidiary transactions until most, if not all, subsidiary sales have been consummated, primarily because excess sale proceeds may be needed to fund maintenance obligations, capital expenditures, or other ordinary course expenses at the property level in order to maximize property values. Because the Debtor will not be receiving any of the proceeds of sale (at least initially), the Beach Point Parties are not entitled to adequate protection at this time.

20. Further, there is no basis for the Beach Point Parties to demand that the proceeds of subsidiary sales be held in escrow, or that such proceeds be delivered to the Debtor so that it may pay the Beach Point Parties' claims for interest and fees. So long as such funds reside at subsidiary levels, they do not constitute the Beach Point Parties' collateral. The Adequate Protection Motion is not the proper means to supplant the Debtor's business judgment by compelling proceeds from subsidiaries to be transferred to the Debtor. Such proceeds may need to be retained at subsidiary levels in order to maximize property values. Although the

Debtor is willing to provide notice to the Beach Point Funds prior to disbursing these funds, the Beach Point Parties are not entitled to effectively impound such funds for their own benefit at the expense of creditors at subsidiary levels and the Debtor's ongoing efforts to maximize value there.

**The Beach Point Parties' Demands for Subsidiary Reporting are Over-Reaching**

21. The Beach Point Parties are not creditors at subsidiary levels. Yet, they demand onerous and excessive reporting and information from these non-debtor entities. Specifically, the Beach Point Parties seek: (a) monthly and quarterly financial reporting at the property level, including cash flow projections and variance reports; (b) all information delivered to lenders at subsidiary levels; (c) monthly property activity reporting, including any notices from governmental units, capital repair and expenditure activity, and operations and maintenance reports; and (d) property level information consisting of title reports and survey information, property condition assessment reports, environmental reports, property management agreements, and insurance policies.

22. Although the Beach Point Parties may like to think that they have liens and claims at subsidiary levels, they do not. As such, the Beach Point Parties are not entitled to the level of information that subsidiary borrowers provide to their respective lenders.

23. The Debtor is willing to provide monthly financial statements to the Beach Point Parties so that they can be generally informed about subsidiary operations. Further, upon request, the Debtor will make its representatives reasonably available to the Beach Point Funds

DOCS_DE:195437.1 89703/002

to discuss the status of the sale process. The Beach Point Parties are not entitled to anything more.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court (i) approve the proposed Subsidiary Transaction Protocol; (ii) deny the Adequate Protection Motion, except as set forth herein; and (iii) grant such other and further relief as is just and proper under the circumstances.

Dated:  September 23, 2014

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
Maxim B. Litvak (CA Bar No. 215852)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:   rpachulski@pszjlaw.com
         akornfeld@pszjlaw.com
         mlitvak@pszjlaw.com
         pkeane@pszjlaw.com

[Proposed] Counsel for Debtor and Debtor in Possession, Variant Holding Company, LLC

11