IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VARIANT HOLDING COMPANY, LLC, | Case No. 14-12021-BLS |
| Debtor. | **Re: Docket No. 136** |

**INTERIM ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION
FINANCING AND TO GRANT SECURITY INTERESTS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(C) AND
364(D); (B) AUTHORIZING DEBTOR TO USE CASH COLLATERAL;
(C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362;
(D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND
363; AND (E) SCHEDULING A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001**

Upon *Debtor's Motion for Entry of Interim and Final Orders (a) Authorizing Debtor to
Obtain Postpetition Financing and to Grant Security Interests and Superpriority Administrative
Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (b) Authorizing Debtor to Use
Cash Collateral, (c) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (d) Granting
Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363; and (e) Scheduling a Final Hearing
Pursuant to Bankruptcy Rule 4001* (the "Motion")[1] dated October 29, 2014, filed by Variant
Holding Company, LLC, as debtor and debtor in possession (the "Debtor") in the above-
captioned chapter 11 case (the "Chapter 11 Case"), seeking, among other things:

      (i)     authorization for the Debtor to obtain, and be obligated in respect of, postpetition
financing in the form of a senior secured superpriority term loan in an aggregate principal
amount of $10,000,000 (the "DIP Loan"), with $3,000,000 available on an interim basis (the
"Initial Advance") for a period through and including the date of the Final Hearing, from BPC

---

[1] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Motion.

VHI, L.P., Beach Point Total Return Master Fund, L.P., and Beach Point Distressed Master Fund, L.P. (the "Beach Point Funds"), through Cortland Capital Market Services LLC as administrative agent for the Beach Point Funds (the "Administrative Agent", and together with the Beach Point Funds, the "DIP Lenders") on the terms and conditions set forth in the Debtor-in-Possession Loan, Security and Guaranty Agreement (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Loan Agreement", and together with any and all other related documents and agreements entered into in connection with or related to the DIP Loan, the "DIP Loan Documents");

(ii)    authorization for the Debtor to enter into the DIP Loan Agreement, the DIP Loan Documents, and that Guaranty of Adequate Protection Obligations (the "Adequate Protection Guaranty"), on the Debtor's own behalf and as the direct or indirect controlling parent company for those entities granting security interests to the DIP Lenders pursuant to the Pledge Agreement (the "Non-Debtor Pledgors") and Laser Focus Holding Company, LLC, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, and Royal Numeric FX Investments, LLC (the "Adequate Protection Guarantors", and together with Numeric Commercial Investments, LLC, the "Guarantors"), and to perform such other and further acts as may be necessary or appropriate in connection with the DIP Loan Documents;

(iii)    the granting of adequate protection of the liens and security interests (the "Prepetition Liens") granted in favor of the Beach Point Funds and the Administrative Agent (together, the "Existing Lenders") under the Existing Loan Documents (as defined below), which Prepetition Collateral (as defined below) is being primed by the liens of the DIP Loan, in accordance with this Interim Order;

(iv)    authorization for the Debtor's use of "cash collateral" (as that term is defined in

section 363(a) of the Bankruptcy Code) constituting Prepetition Collateral (including, without limitation, all cash and other amounts from time to time on deposit or maintained by the Debtor and any cash proceeds of the disposition of the Prepetition Collateral, the "Cash Collateral") on the terms and conditions set forth in this Interim Order, the Final Order (as applicable), and in the DIP Loan Agreement, and the granting of adequate protection to the Existing Lenders with respect to the use of Cash Collateral;

(vi)    authorization for the Debtor to grant security interests, liens, and superpriority claims (including superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lenders, payable from, and having recourse to, all prepetition property, including, but not limited to, all Prepetition Collateral, and postpetition property of the Debtor's estate (the "Estate") and all proceeds thereof (subject to the Carve-Out (as defined below));

(vii)    authorization for (x) the DIP Lenders to terminate the DIP Loan Agreement, and (y) the DIP Lenders and the Existing Lenders to terminate the Debtor's use of Cash Collateral, each upon the occurrence and continuance of an Event of Default (as defined in the DIP Loan Agreement) on terms specified in the DIP Loan Agreement;

(viii)    subject only to and effective upon entry of the Final Order, authorization of the limitation of the Debtor's and its successors' and assigns' right to assert claims to surcharge against the Prepetition Collateral or DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 8 below;

(ix)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor, the Non-Debtor Pledgors, the Guarantors, the

DIP Lenders, and the Existing Lenders to implement and effectuate the terms and provisions of the DIP Loan Documents, this Interim Order, and as later applicable, the Final Order;

(x)    pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this Interim Order to (a) authorize the Debtor to borrow under the DIP Loan Agreement, on an interim basis, the Initial Advance on or after the date of the entry of this Interim Order but before the date of the entry of the Final Order, which such Final Order must be entered on or before November 26, 2014 (the "Interim Period"); (b) authorize the Debtor's use of Cash Collateral; and (c) grant the adequate protection described herein and provided in the DIP Loan Documents;

(xi)    the scheduling of the final hearing (the "Final Hearing") to be held on or before November 26, 2014 to consider entry of the Final Order granting the relief requested in the Motion on a final basis, authorizing the balance of the borrowings under the DIP Loan Documents on a final basis, authorizing the balance of the borrowings under the DIP Loan Documents, and approving the Debtor's notice procedures with respect thereto; and

(xii)    waiver of any applicable stay (including Rule 6004 of the Bankruptcy Rules) and the provision of immediate effectiveness of this Interim Order, and as later applicable, the Final Order.

The Interim Hearing having been held on October 30, 2014; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing, and the entire record herein; and this Court having heard and resolved or overruled any objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, the Estate, and creditors; and the Debtor having provided notice of the Motion as set

forth in the Motion; and it appears that no other or further notice of the Motion or the Interim Hearing is necessary; and after due deliberation and consideration, and sufficient cause appearing therefor; and all objections to the entry of this Interim Order, if any, having been withdrawn, resolved, or overruled as provided in this Interim Order or on the record of the Interim Hearing:

## IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    **Petition**.  On August 28, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, creating the Estate.  The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.  No official committee of unsecured creditors (upon any appointment thereof, the "Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in this Chapter 11 Case.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 364(c), and 364(d), and Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

C.    **Notice**.  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Interim Hearing constitutes appropriate, due, and sufficient

---

[2]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.  Any statements of the Court from the bench at the Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim Order to the extent not inconsistent herewith.

DOCS_DE:195940.2 89703-002

notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

D.    **Findings Regarding The Existing Lenders' Existing Debt and Prepetition Liens**. Pursuant to that Settlement Agreement dated as of October 17, 2014, attached as Exhibit 1 to the *Motion of the Debtor Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving Settlement Agreement with the Beach Point Funds* [D.I. 107] (the "Settlement Agreement"), the Debtor has agreed that, and subject to and effective only upon entry of the Final Order, the Existing Lenders have the following allowed claim secured by the Prepetition Liens, as described below:

a.    As of September 1, 2014, the amount owing to the Beach Point Funds under that Amended and Restated Loan Agreement dated as of October 11, 2013, by and between the Debtor, the Beach Point Funds, and the Administrative Agent (as amended, restated, supplemented, or otherwise modified as of the date hereof, the "Existing Loan Agreement", and together with all other documents, agreements, and instruments delivered to the Existing Lenders in connection with the Existing Loan Agreement, the "Existing Loan Documents"), including without limitation principal, interest, fees, expenses, and costs, was (A) $2,750,000 for attorney's fees and expenses of the Beach Point Funds, and (B) $75,250,000 for unpaid principal, interests, and all other fees, expenses and costs for an aggregate amount of $78,000,000 (the "Beach Point Funds Loan Principal Amount"), and the amount owing to the Administrative Agent for attorney's fees, expenses, and other fees was $38,714 (together with the Beach Point Funds Loan Principal Amount, the "Prepetition Loan Principal Amount"). Any reasonable attorneys' fees and expenses of the Beach Point Funds or the Administrative Agent, and any fee owed or owing to the Administrative Agent (the "Administrative Agent Fees"), including but not limited to the

"Agent Fee" (as defined in the Existing Loan Agreement), that are the obligation of Variant under the Existing Loan Documents, and that are incurred or accrue after September 1, 2014, shall be added to the Prepetition Loan Principal Amount as they are incurred or accrue. The Prepetition Loan Principal Amount and all interest, Administrative Agent Fees, and reasonable attorneys' fees and expenses accrued and incurred after September 1, 2014 shall be referred to herein as the "Prepetition Loan Settlement Amount" or the "Existing Debt".

  b.  The Prepetition Loan Settlement Amount constitutes the legal, valid, and binding obligations of the Debtor, enforceable against it in accordance with the terms of the Settlement Agreement.

  c.  The Debtor's obligation to pay the Prepetition Loan Settlement Amount is secured by the Prepetition Liens, which grant the Existing Lenders security interests in the following property (collectively, the "Prepetition Collateral"):

  i.  Pursuant to Section 3.01 of the Existing Loan Agreement, substantially all of the Debtor's real and personal property, including but not limited to all accounts, general intangibles, including without limitation, payment intangibles, and investment property related to any H14 or Other Property, or FX3 Property (collectively, the "Properties");

  ii.  Pursuant to that Pledge and Security Agreement dated as of September 13, 2013 by and between Laser Focus Holding Company, LLC ("Laser Holding") and the Administrative Agent, among other things, all of Laser Holdings' rights, title, and interests in and to Laser Holding's membership interests in Laser Focus Commercial Investments, LLC;

  iii.  Pursuant to that Pledge and Security Agreement dated as of September 13, 2013 by and between the Debtor, Conix, Inc., and Courtland Gettel (the "Laser Holding Pledgors") and the Administrative Agent, among other things, all of the Laser Holding

Pledgors' rights, title, and interests in and to the Laser Holding Pledgors' membership interests in Laser Holding; and

        iv.      Pursuant to that Pledge and Security Agreement dated as of March 17, 2014 by and between Numeric Commercial Investments, LLC ("Numeric Commercial") and the Administrative Agent, among other things, all of Numeric Commercial's rights, title, and interests in and to Numeric Commercial's membership interests in Tucson Mall Suites, LLC and Spencer Highway Self Storage, LLC.

        d.      As provided in the Settlement Agreement, no portion of the Existing Debt, the Prepetition Liens, the Settlement Agreement, or the Existing Loan Documents (as modified by the Settlement Agreement), or any payment on account thereof, is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law and the Debtor and the Estate do not have, hereby forever release, and are forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Existing Lenders, solely in their capacities as Existing Lenders, respectively, and not in any other capacity or in respect to any other relationship the Existing Lenders may have, or have had, with or in respect to the Debtor, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under the Bankruptcy Code or otherwise.

        e.      As provided in the Settlement Agreement, the liens and security interests granted to, or for the benefit of, the Existing Lenders, including with respect to the Cash Collateral, pursuant to the Existing Loan Documents and in connection with the Existing Debt

constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens on and security interests in the Prepetition Collateral and are not subject to defense, counterclaim, avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity, except insofar as such liens and security interests are subject to the DIP Liens (as defined below), and the Carve-Out.

E.   **Findings Regarding the DIP Loan and Use of Cash Collateral**.

a.   Good cause has been shown for the entry of this Interim Order.

b.   The proposed DIP Loan pursuant to the DIP Loan Agreement and the use of Cash Collateral will allow the Debtor to continue the operations of its business and administer, preserve and increase the value of its Estate.  The ability of the Debtor to finance its operations requires the availability of additional working capital and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, its Estate and its creditors and the possibility for the Debtor's successful reorganization.  Entry of this Interim Order approving the DIP Loan and the use of Cash Collateral will benefit the Debtor and its Estate and creditors.

c.   The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(l), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtor (i) granting to the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this

Interim Order and in the DIP Loan Documents. The only available source of secured credit available to the Debtor, other than the use of Cash Collateral, is the DIP Loan. The Debtor requires both additional financing under the DIP Loan and the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy its postpetition liquidity needs.

        d.      The DIP Lenders are willing to provide the DIP Loan and the Existing Lenders are willing to consent to the use of their Cash Collateral, subject to the terms and conditions set forth in the DIP Loan Agreement and the provisions of this Interim Order, and provided that the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations (as defined below) and other protections granted by this Interim Order, the DIP Loan Documents, and the Adequate Protection Guaranty will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan and the Cash Collateral use approved by this Interim Order. The DIP Lenders have acted in good faith in agreeing to provide the DIP Loan approved by this Interim Order and as further evidenced by the DIP Loan Documents, and the Existing Lenders have acted in good faith in consenting to the Debtor's use of their Cash Collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

        e.      The DIP Loan Documents and the DIP Loan provided for thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtor, the Non-Debtor Pledgors, the Guarantors, the DIP Lenders, and the Existing Lenders, respectively, and the terms of the DIP Loan and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment, on its own behalf and as the direct or indirect controlling

parent company for the Non-Debtor Pledgors and Guarantors, consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. All of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the DIP Loan and the DIP Loan Documents and the rights granted in this Interim Order, including without limitation, all loans made to and guarantees issued for the account of, the Debtor pursuant to the DIP Loan Documents, are being extended or received, as appropriate, by the DIP Lenders and the Existing Lenders and their affiliates (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

  f.  The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The authorization granted herein on an interim basis to use Cash Collateral and to enter into the DIP Loan Documents and to borrow up to an aggregate amount of $3,000,000 through the Interim Advance borrowed under this Interim Order during the Interim Period, is necessary to preserve the going concern value of the Debtor and its Estate. Absent granting the relief set forth in this Interim Order, the Debtor's Estate will be immediately and irreparably harmed. Consummation of the DIP Loan and the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents, as applicable, are therefore in the best interests of the Debtor and its Estate and creditors.

  **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

  1.  **Approval of Motion**. The Motion is granted in accordance with the terms of this Interim Order. Any objection to the Motion with respect to the entry of this Interim Order that

have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied or overruled.

2.     **Authorization of the DIP Loan and the DIP Loan Documents**.  The Debtor is immediately authorized and, subject to the terms of this Interim Order and the terms and conditions of the DIP Loan Agreement, empowered to borrow funds under the DIP Loan in such amount or amounts as may be available to or for the benefit of the Debtor from the DIP Lenders, which shall not exceed $3,000,000, upon entry of this Interim Order and, subject to the entry of the Final Order, the aggregate amount of $10,000,000, in each case for the purposes permitted under the DIP Loan Agreement and this Interim Order or the Final Order, as applicable.

3.     **Authorization of the DIP Loan and the DIP Loan Documents**.

a.     The Debtor, on its own behalf and as the direct or indirect controlling parent company for the Guarantors, is authorized to enter into the DIP Loan Agreement, and the DIP Loan Agreement shall be binding and enforceable against the Debtor and the Guarantors. The Debtor, the DIP Lenders, and the Existing Lenders with respect to the DIP Loan Agreement may finalize, amend, modify, supplement or waive any provision of the DIP Loan Agreement if such amendment, modification, supplement or waiver is permitted under the terms of the DIP Loan Agreement and is not material (in the good faith judgment of the DIP Lenders, Existing Lenders, and the Debtor) without any need to apply to, or receive further approval from, the Court.

b.     The Debtor is hereby authorized to (a) do and perform all acts and to make, execute, and deliver all instruments and documents that may be requisite or necessary for the performance by the Debtor under the DIP Loan Agreement, and (b) pay all principal, interest, reasonable fees and other expenses that may be required or necessary for the Debtor to perform

all of its obligations under this Interim Order and the DIP Loan Agreement (collectively, the "DIP Obligations"). Each officer of the Debtor, and each such other individual as may be so authorized by the Board of Managers of the Debtor, acting singly, is hereby authorized to execute and deliver any and all of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Debtor.

      c.      The Debtor is hereby authorized and directed to pay the fees and other amounts payable under the terms of the DIP Loan Agreement as they come due to the DIP Lenders without further order of this Court, including without limitation, all out-of-pocket costs and expenses of the DIP Lenders (including attorney's fees and expenses) as provided for under the DIP Loan Agreement, in each case, in accordance with Section 5 of the Settlement Agreement and Section 2.02 of the DIP Loan Agreement.

      d.      Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Non-Debtor Pledgors and Guarantors, enforceable against the Non-Debtor Pledgors and Guarantors, as applicable, in accordance with the terms of the DIP Loan Documents and this Interim Order. No obligation, payment, transfer or grant of security interest under the DIP Loan Documents and this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

      e.      Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Loan Agreement, the Debtor shall not in any way prime or otherwise adversely affect the DIP Liens granted under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien

or claim pursuant to sections 364(d) or 507(b) of the Bankruptcy Code or otherwise.

f.    Until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments thereunder are terminated in accordance with the DIP Loan Agreement, the Debtor shall not in any way grant junior encumbrances on the DIP Collateral upon which the DIP Lenders possess liens provided to them under this Interim Order.

4.    **Superpriority Claims**.  Pursuant to section 364(c)(l) of the Bankruptcy Code, subject to the Carve-Out, all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtor (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (with respect to any claims arising under section 506(c) only, subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and the Estate and all proceeds thereof, including, subject to and effective only upon entry of the Final Order, all Avoidance Actions and Avoidance Proceeds (each as defined below).

- 14 -

5.    **Carve-Out**.  For purposes of this Interim Order, the "Carve-Out" shall mean the sum of:  (i) any fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930 of title 28 of the United States Code; and (ii) any and all allowed and unpaid claims of professionals whose retention is approved by the Court during the Chapter 11 Case pursuant to sections 327 and 1103 of the Bankruptcy Code for unpaid fees and expenses prior to the occurrence and continuation of an Event of Default (as defined in the DIP Loan Agreement, an "Event of Default"), whether allowed before or after such Event of Default, in an amount not to exceed such professionals' pro rata share of proceeds from the sale of properties that are deposited into the "Professional Fee Account" pursuant to Sections 5(c) and (d) of the Settlement Agreement as of the date of any Event of Default.  The Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor, any Committee, or any professional in connection with (1) the investigation, initiation or prosecution of any claims (including for the avoidance of liens or security interests) against the DIP Lenders or Existing Lenders, in connection with or related to the Settlement Agreement, the Existing Debt, the Prepetition Liens, the Existing Loan Documents, the DIP Loan, the DIP Liens, or the DIP Loan Documents, or preventing, hindering or delaying the assertion or enforcement of any lien, claim, right or security interest or realization upon any of the DIP Collateral by the DIP Lenders, (2) a request to use Cash Collateral without the prior consent of the DIP Lenders or the Existing Lenders, (3) a request, without prior consent of the DIP Lenders, for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Sections 364(c) or (d) of the Bankruptcy Code that does not indefeasibly repay in full the DIP Obligations and the Prepetition Loan Settlement Amount, or (4) any act that has the effect of materially or adversely modifying or compromising the rights and remedies of the DIP Lenders or Existing

Lenders as set forth herein, in the Settlement Agreement, and in the DIP Loan Documents, or that results in the occurrence of an Event of Default, unless otherwise agreed by the DIP Lenders and Existing Lenders.

6. **DIP Liens**. As security for the DIP Obligations, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lenders of, or over, any DIP Collateral, the following security interests and liens, are by this Interim Order granted by the Debtor and Non-Debtor Pledgors to the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject, only to the Carve-Out (all such liens on and security interests in the DIP Collateral granted to the DIP Lenders, pursuant to this Interim Order and the DIP Credit Documents, the "DIP Liens"):

a. <u>First Lien on Unencumbered Property of the Debtor</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor and Non-Debtor Pledgors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid, perfected and non-avoidable liens, if any (collectively, "Unencumbered Property"), and any proceeds of all of the foregoing. Subject to and effective only upon entry of the Final Order, the Unencumbered Property shall also include the Debtor's claims and causes of action under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), and shall include any proceeds

or property recovered, unencumbered or otherwise, that are the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds").

      b.    <u>Liens Senior to Prepetition Secured Parties' Liens</u>.  Pursuant to section 364(c)(2), (c)(3), and (d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtor and Non-Debtor Pledgors (including, without limitation, Cash Collateral), whether now existing or hereafter acquired.  Such security interests and liens shall be senior in all respects to the interests in such property of the Existing Lenders arising from current and future liens of the Existing Lenders (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of any other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date that were senior in priority to the Prepetition Liens, or to any valid, perfected and unavoidable interests in such property arising out of liens arising subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code that are senior in priority to the Prepetition Liens.

      c.    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and the Estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor.

    7.    **Protection of DIP Lenders' Rights**.

      a.    The DIP Liens, as described above, and security interests granted to the

DIP Lenders herein shall not (i) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's Estate as a result of any Avoidance Actions or (ii) be subordinated to or made *pari passu* with any other lien or security interest under section 364(d) of the Bankruptcy Code or otherwise.

      b.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lenders to exercise, upon the occurrence and during the continuance of such an Event of Default, and giving any notice and opportunity to cure as provided under the DIP Loan Agreement, all rights and remedies of the Lenders provided for in the DIP Loan Documents and this Interim Order.  In no event shall the DIP Lenders or Existing Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to their respective liens and security interests upon and in the DIP Collateral or the Prepetition Collateral, as applicable.  Any delay or failure to exercise rights and remedies by the DIP Lenders under the DIP Loan Documents or this Interim Order shall not constitute a waiver of any DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the secured claims of the Existing Lenders.

      c.     No rights, protections or remedies of the DIP Lenders granted by the provisions of this Interim Order or the DIP Loan Documents shall be limited, modified or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtor's use of Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to use Cash Collateral or (iii) the terms of any other order or stipulation related to the Debtor's

use of Cash Collateral or any other matter or the provision of adequate protection to any party.

8.    **Limitation on Charging Expenses Against Collateral**.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no claim may be asserted against the DIP Lenders or the Existing Lenders, either in their capacity as such, to charge any expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, against the DIP Collateral or the Prepetition Collateral or recover such expenses from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lenders and the Existing Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or the Existing Lenders.

9.    **Use of Cash Collateral**.  Subject to the terms, conditions, and limitations set forth in this Interim Order and the entry of the Final Order, the Debtor is authorized to use Cash Collateral in which the DIP Lenders or the Existing Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in the DIP Loan Documents or this Interim Order.  The Debtor is hereby authorized to use Cash Collateral in any updated DIP Loan Agreement that is amended in accordance with this Interim Order and the DIP Loan Documents without further approval by the Court.  Any dispute in connection with the use of Cash Collateral in accordance with the DIP Loan Documents and this Interim Order shall be heard by the Court. Notwithstanding anything in this Interim Order to the contrary, the Debtor's authority to use Cash Collateral shall automatically terminate (subject to further Order of this Court) without any further action by this Court, the DIP Lenders, or the Existing Lenders, upon the earliest to occur of (the "Cash Collateral Termination Date"):  (a) the date on which an Event of Default shall

have occurred and any applicable Cure Period has passed under the DIP Loan Documents; and (b) such earlier date on which the DIP Obligations shall become due and payable in accordance with the terms of this Interim Order and/or the DIP Loan Documents. Notwithstanding anything herein to the contrary, no Cash Collateral shall be used in a manner that would violate paragraphs 15 or 16 herein.

10. **Optional and Mandatory Prepayments**. The Debtor may voluntarily prepay the principal of the DIP Loan or the Prepetition Loan Settlement Amount, in whole or in part, at any time and from time to time. The Debtor must pay the DIP Loan and the Prepetition Loan Settlement Amount pursuant to the terms of Section 2.02 of the DIP Loan Agreement and Section 5(c) and (d) of the Settlement Agreement.

11. **Adequate Protection**. The Existing Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in the value of the Existing Lenders' interests in the Prepetition Collateral during the Chapter 11 Case including, without limitation, any such diminution during the Chapter 11 Case resulting from the sale, lease or use by the Debtor (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Existing Lenders' security interests and liens in the Prepetition Collateral by the DIP Lenders, pursuant to the DIP Loan Documents, this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Existing Lenders are hereby granted the following adequate protection (collectively, the "Adequate Protection Obligations"):

a.      <u>Adequate Protection Liens</u>. The Existing Lenders are by this Interim Order granted (effective and perfected as of the Petition Date and without the necessity of the

execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all of the DIP Collateral, subject and subordinate only to the DIP Liens and the Carve-Out (the "Adequate Protection Liens"). For the avoidance of doubt, the Adequate Protection Liens shall, subject to and effective only upon entry of the Final Order, include a replacement security interest in and lien upon the Avoidance Actions and the Avoidance Proceeds.

        b.     <u>Adequate Protection Superpriority Claims</u>. The Existing Lenders are by this Interim Order granted allowed superpriority claims against the Debtor (the "Adequate Protection Superpriority Claims") with priority over any and all other administrative expenses, and other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code are to be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds thereof; provided, however, that the Adequate Protection Superpriority Claims shall be subordinate only to the Superpriority Claims and the Carve-Out. For the avoidance of doubt, the Adequate Protection Superiority Claims may be payable out of the Avoidance Proceeds only upon and subject to entry of the Final Order.

        c.     <u>Payments From the Sale of Properties</u>. The Existing Lenders shall receive,

as adequate protection for the Prepetition Liens, payments from the sale of all Properties pursuant to Sections 5(c) and (d) of the Settlement Agreement, and the payment of the Existing Lenders' *pro rata* share of professional and other fees from the Professional Fee Account, which for the avoidance of doubt may be paid without further order of the Court.

       d.    <u>Adequate Protection Guaranty</u>.  The Adequate Protection Guarantors shall provide the Adequate Protection Guaranty.  The guaranty provided by the Guarantors to the DIP Lenders under the DIP Loan Agreement shall have priority over any and all claims against the Adequate Protection Guarantors under the Adequate Protection Guaranty.

       e.    <u>Financial Reporting</u>.  The Debtor shall provide and cause to be provided the Existing Lenders and the DIP Lenders with financial and other reporting as described in the DIP Loan Documents.

    **12.**    <u>**Reservation of Rights of Existing Lenders**</u>.  Under the circumstances, the Court finds that the adequate protection provided in this Interim Order is reasonable and sufficient to protect the interests of the Existing Lenders.  However, the Existing Lenders may, subject to any limitations set forth in the Settlement Agreement, request further or different adequate protection, and the Debtor or any other party may contest any such request; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lenders granted under this Interim Order and the DIP Loan Documents and the Carve-Out.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Existing Lenders or the DIP Lenders.

    **13.**    <u>**Perfection of DIP Liens and Adequate Protection Liens**</u>.

a.    The DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action, in each case, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lenders choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it under this Interim Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the Petition Date.  The Existing Lenders and DIP Lenders, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lenders to further validate, perfect, preserve and enforce the DIP Liens and for the Existing Lenders to further validate, perfect, preserve and enforce the Adequate Protection Liens.  The Debtor shall execute and deliver to the DIP Lenders and/or the Existing Lenders, all such agreements, financing statements, instruments and other documents as the DIP Lenders or the Existing Lenders may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

b.    A certified copy of this Interim Order may, in the discretion of the DIP Lenders or the Existing Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified

copy of this Interim Order for filing and recording. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the DIP Lenders and/or the Existing Lenders to take all actions, as applicable, referenced in this subparagraph (b) and in the immediately preceding subparagraph (a).

14. **Preservation of Rights Granted Under the Order.**

a.      Except as expressly provided herein, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lenders or the Existing Lenders, respectively, shall be granted or allowed while any portion of the DIP Loan (or any refinancing thereof) or the commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's Estate under section 551 of the Bankruptcy Code or (ii) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

b.      Each Guarantor's guaranty of the Debtor's obligations in connection with the DIP Loan and under the Adequate Protection Guaranty (collectively, the "Guaranties"), and any liens granted thereunder by each Guarantor to secure the obligations and liabilities arising pursuant to the Guaranties, shall not constitute a fraudulent conveyance or fraudulent transfer under section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

c.      Unless all DIP Obligations shall have been indefeasibly paid in full in cash on terms and conditions acceptable to the DIP Lenders or pursuant to the terms of the Settlement

Agreement, and the Adequate Protection Obligations shall have been paid in full, the Debtor shall not assert, file or seek, or consent to the filing or the assertion of or joinder in, and it shall constitute an Event of Default under the DIP Loan Agreement and terminate the right of the Debtor to use any and all Cash Collateral if the Debtor asserts, files or seeks, or consents to the filing or the assertion of or joinder in, or if there is entered, (i) any reversal, modification, amendment, stay or vacatur of this Interim Order, without the prior written consent of the DIP Lenders and the Existing Lenders or (ii) without the prior written consent of the DIP Lenders and the Existing Lenders, (A) an order dismissing the Chapter 11 Case under sections 105, 305 or 1112 of the Bankruptcy Code or otherwise; (B) an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (C) an order appointing a chapter 11 trustee in the Chapter 11 Case; (D) an order appointing an examiner with expanded powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in the Chapter 11 Case; or (E) an order granting a change of venue with respect the Chapter 11 Case or any related adversary proceeding.  For the avoidance of doubt, the foregoing is not a comprehensive list of Events of Default set forth in the DIP Loan Agreement.  If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, Adequate Protection Superpriority Claims and other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens granted to the DIP Lenders and, as applicable, the Existing Lenders, pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all of the DIP Obligations and the Adequate Protection Obligations shall have been paid and satisfied in full in accordance with the provisions of the DIP Loan Agreement (and that

such Superpriority Claims, Adequate Protection Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

d.     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lenders or the Existing Lenders, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, the priority or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtor to the DIP Lenders and/or the Existing Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Lenders and/or the Existing Lenders, as the case may be, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lenders and the Existing Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan Documents with respect to all such uses of Cash Collateral and proceeds of the DIP Loan, all DIP Obligations and all Adequate Protection Obligations.

e.     Except as expressly provided in this Interim Order or in the DIP Loan

Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the

Adequate Protection Obligations and all other rights and remedies of the DIP Lenders and the

Existing Lenders granted by the provisions of this Interim Order and the DIP Loan Documents

shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order

converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or dismissing

the Chapter 11 Case, (ii) the entry of an order approving the sale of any DIP Collateral pursuant

to section 363(b) of the Bankruptcy Code (except to the extent permitted by the Settlement

Agreement or DIP Loan Documents), or (iii) except as may otherwise be provided in a Plan of

Reorganization with respect to any allowed claims for diminution, the entry of an order

confirming a Plan of Reorganization in the Chapter 11 Case, and, pursuant to section 1141(d)(4)

of the Bankruptcy Code, the Debtor having waived any discharge as to any remaining DIP

Obligations and Adequate Protection Obligations.  The terms and provisions of this Interim

Order and the DIP Loan Documents shall continue in effect and be binding in this Chapter 11

Case, in any successor case, or in any superseding chapter 7 case under the Bankruptcy Code,

and the DIP Liens, the Adequate Protection Liens, the Superpriority Claims and all other

administrative claims granted pursuant to this Interim Order, the Adequate Protection

Obligations and all other rights and remedies of the DIP Lenders and the Existing Lenders

granted by the provisions of this Interim Order and the DIP Loan Documents shall continue in

full force and effect until the DIP Obligations and the Adequate Protection Obligations are

indefeasibly paid in full in cash.

     **15.**    **Limitation on Use of Loan Proceeds and Collateral**.  Notwithstanding anything

herein or in any other order by this Court to the contrary, none of the proceeds of the DIP Loan

and none of the DIP Obligations, the Cash Collateral, the DIP Collateral or the Carve-Out may

be used for the following purposes: to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Settlement Agreement, the DIP Loan, the DIP Loan Documents, the Existing Debt, or the Existing Loan Documents, or the liens, security interests or claims granted under this Interim Order, the DIP Loan Documents, or the Existing Loan Documents, (ii) investigate, initiate or prosecute any Claims and Defenses or causes of action against any of the DIP Lenders, the Existing Lenders, or their respective agents, affiliates, representatives, attorneys or advisors under or relating to the Settlement Agreement, the DIP Loan Documents, or the Existing Loan Documents, (iii) prevent, hinder or otherwise delay the DIP Lenders' assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order, (iv) seek to modify any of the rights granted to the DIP Lenders or the Existing Lenders hereunder or under the DIP Loan Documents or the Existing Loan Documents, in each of the foregoing cases without such parties' prior written consent, or (v) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (A) approved by an Order of this Court and (B) in accordance with the DIP Loan Agreement and any relevant budget.

16.     **The Initial Advance**. Pursuant to the terms of the DIP Loan Agreement, the Initial Advance may be used by the Debtor without agreement as to any interim budget; provided, however, that (A) $2,000,000 may be used by the Debtor upon certification from the CRO that such funds will only be used for the purpose of (i) paying outstanding payables owing by the direct owners of the Properties, (ii) paying operating expenses relating to any Properties that are experiencing negative cash flow on a current basis, or (iii) making capital expenditures to maintain and preserve the Properties in the ordinary course of business and to remedy any health and safety issues at the Properties or any violations of any state, municipal or other

administrative rule or regulation governing the Properties, and (B) an incremental $1,000,000 (for an aggregate $3,000,000) may be used only for payment of outstanding payables owing by the direct owners of the Properties conditioned upon (x) a certification by the CRO that the work for which such payables relate was completed and that the claims are valid and (y) the delivery to the DIP Lenders of such additional diligence information as reasonably requested by the DIP Lenders.

17.    **Sales of Collateral, Right to Credit Bid**.  (a) Upon entry of this Interim Order, the DIP Lenders with respect to the DIP Loan, and (b) subject to and effective only upon the entry of the Final Order, the Existing Lenders with respect to the Existing Debt, respectively, shall have the right to credit bid up to the full amount of the DIP Obligations or the Existing Debt, as applicable, in connection with any sale of the DIP Collateral or the Prepetition Collateral, respectively, conducted (i) pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code or (ii) pursuant to section 363 of the Bankruptcy Code.  No sale of any DIP Collateral or Prepetition Collateral shall constitute a waiver by any DIP Lender or the Existing Lenders of any deficiency claim under any applicable law, regardless of whether any DIP Lender or the Existing Lender consents to or opposes such sale and regardless of whether the DIP Obligations are credit bid in connection with such sale.  For the avoidance of doubt, as part of the Adequate Protection Obligations, the Existing Lenders shall be allowed to credit bid the full amount of the Existing Debt with respect to any sale of the Prepetition Collateral not in the ordinary course of business pursuant to a plan of reorganization or section 363 of the Bankruptcy Code regardless of and without complying with any other bidding procedures or deadlines that may apply to other potential bidders or buyers.  For the avoidance of doubt, the foregoing credit bid rights extend

only to a sale of the Debtor's assets, and not to any assets of the Debtor's subsidiaries.

18.    **Proofs of Claim.**  The Existing Lenders will not be required to file a proof of claim in the Chapter 11 Case in respect of any claims arising under or related to the Existing Debt or the Existing Loan Documents.  The entry of an order approving the Settlement Agreement shall be deemed to constitute a timely proof of claim for the Existing Lenders, which shall be treated under section 502(a) of the Bankruptcy Code as if the Existing Lenders have filed a proof of claim and shall have an allowed claim with respect to the Existing Debt for all purposes, including for the purposes of credit bidding.  Nothing in this paragraph shall waive, alter or modify the Existing Lenders' right to file, amend and/or supplement, in its sole discretion, a proof of claim(s) in the Chapter 11 Case for any claim allowed herein.

19.    **Modifications of DIP Loan Documents.**  Without further Order of this Court, the Debtor, on its own behalf and as the direct or indirect controlling parent company for the Non-Debtor Pledgors and Guarantors, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the respective DIP Loan Documents, non-material modifications of the DIP Loan Documents (that do not shorten the maturity of the extensions of credit thereunder, increase the commitments thereunder or otherwise do not materially change the terms of the DIP Loan Documents in a manner adverse to the interests of the Debtor) or waivers with respect to the DIP Loan Documents; provided, however, any material modification or amendment to the respective DIP Loan Documents shall be subject to court approval after notice and a hearing.

20.    **Interim Order Governs.**  The DIP Loan Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lenders; provided, however, that in the event of any inconsistency between the provisions of the DIP

Loan Documents and this Interim Order, the provisions of this Interim Order shall govern.

21.    **Binding Effect; Successors and Assigns**.  The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in this Chapter 11 Case, including, without limitation, the DIP Lenders, the Existing Lenders, any Committee appointed in this Chapter 11 Case and the Debtor and its successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Estate the Debtor); provided, however, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Estate.  In determining to make any loan or other financial accommodation under the DIP Loan Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Lenders shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

22.    **Effectiveness**.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

23.    **Retention of Jurisdiction**.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

DOCS_DE:195940.2 89703-002

24.     Except as between the parties to the DIP Loan Documents only (and not as between any other person), notwithstanding anything to the contrary in this Order, or any contract, document or other writing, nothing in this Order, or any contract, document or other writing (including any provision that purports to be preemptory, supervening or superior to) shall in any way operate to, or have the effect of, impairing or altering the contractual rights and remedies of the IMH Parties and Wells Fargo Bank, N.A. as Trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C4 ("Holder" & "Trust"), acting by and through Situs Holdings, LLC in its capacity as special servicer ("Situs"), in any respect concerning any of the Debtor's subsidiaries (including any subsidiary that is a party to the DIP Loan Documents).  Such rights and remedies of the IMH Parties, Holder, Trust, and Situs, shall be determined under the applicable contract, document or other writing under which any such person is a party thereto or beneficiary thereof, as applicable.

25.     **Final Hearing**.  The Final Hearing is scheduled for November 18, 2014 at 1:00 p.m. (prevailing Eastern Time) before this Court.  The Debtor shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee and its counsel, if the same has been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file the same with the Court (with a courtesy copy to the Court's chambers) and serve (so as to be received) such objection no later than November 11, 2014 at 4:00 p.m. (prevailing Eastern Time) upon:  (a) the Debtor, c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, CA 90071, Attn: Bradley D. Sharp, (b) counsel

DOCS_DE:195940.2 89703-002

for the Debtor, (i) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor,

Wilmington, DE 19801, Attn: Peter J. Keane, and (b) Pachulski Stang Ziehl & Jones LLP, 10100

Santa Monica, Blvd., 13th Floor, Los Angeles, CA 90067, Attn: Richard M. Pachulski & Maxim

B. Litvak; (c) counsel to any Committee; (d) counsel for the Beach Point Funds, O'Melveny &

Myers, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Suzzanne S. Uhland &

Michael S. Neumeister, (f) counsel for the Administrative Agent, Holland & Knight LLP, 31

West 52nd Street, New York, NY 10019, Attn: Barbra R. Parlin & Joshua M. Spencer, and (g)

the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Mark

S. Kenney.


Dated: Nov 3, 2014
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE