# Exhibit E

# Pledge Agreement

DOCS_SF:86954.2 89703-002

## PLEDGE AND SECURITY AGREEMENT

**DATE:**                  AS OF FEBRUARY 28, 2013

**DEBTOR:**            ROYAL NUMERIC FX INVESTMENTS, LLC,
a Delaware limited liability company
3915 East Broadway Boulevard, Suite 400
Tucson, Arizona 85711

**SECURED PARTIES:**    ROYAL MULTIFAMILY VENTURES 2013-1, LLC,
a Delaware limited liability company
7001 North Scottsdale Road, Suite 2050
Scottsdale, Arizona 85253

                          ROYAL MULTIFAMILY PROMOTE 2013-1, LLC,
a Delaware limited liability company
7001 North Scottsdale Road, Suite 2050
Scottsdale, Arizona 85253

This **PLEDGE AND SECURITY AGREEMENT**, dated as of February 28, 2013, (this "Pledge"), is executed by ROYAL NUMERIC FX INVESTMENTS, LLC, a Delaware limited liability company (alternatively, "Debtor" or "Company") in favor of ROYAL MULTIFAMILY VENTURES 2013-1, LLC, a Delaware limited liability company ("Preferred Member") and ROYAL MULTIFAMILY PROMOTE 2013-1, LLC, a Delaware limited liability company ("Guarantor Member," together with Preferred Member, each a "Secured Party" and collectively, "Secured Parties").

## RECITALS

On February 28, 2013, Preferred Member became a member of and made a capital contribution to the Company in the amount of FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,0000.00) (the "Contribution") and Guarantor Member became a member of the Company entitled to Guarantor Member Distributions all as more fully set forth in the Operating Agreement. The memberships interest of the Secured Parties in the Company and their rights thereunder are evidenced by and governed by (i) the Certificate of Formation for the Company, the Limited Liability Company Agreement of the Company (the "Operating Agreement"), (ii) the Pledge and Security Agreement dated as of the date hereof ("Pledge by Members") by Numeric Commercial Investments, LLC, a Delaware limited liability company ("Senior Common Member") and FX3 Investors, LLC, a Delaware limited liability company ("Junior Common Member" together with Senior Common Member, collectively, "Sponsor Members") in favor of the Secured Parties, (iii) the Preferred Recourse Guaranty dated the date hereof by Sponsor Members, Numeric Holding Company, LLC, a Delaware limited liability company ("Numeric"), Courtland Gettel and Kathryn Rose Gettel (collectively, the "Gettels") and the Gettel Children's Trust 2 u/a/d November 8, 2012 (the "Trust," together with the Sponsor

Page 1 of 18

INITIALS: _____

2337264.8

Members, Numeric and the Gettels, collectively, the "Guarantors") in favor of the Secured Parties, and (iv) the Payment Guaranty dated as of the date hereof by the Gettels in favor of the Company.

## AGREEMENT

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Debtor hereby agrees with each Secured Party as follows:

1. Definitions and Interpretation. Unless otherwise defined herein, all other capitalized terms used herein and defined in the Operating Agreement shall have the respective meanings given to those terms in the Operating Agreement, and all terms defined in the Delaware Uniform Commercial Code (the "UCC") shall have the respective meanings given to those terms in the UCC.

2. The Pledge. To secure the Obligations as defined in Section 3 hereof, Debtor hereby pledges and assigns to Secured Party, and grants to Secured Party a security interest in, all of Debtor's right, title and interest, whether now existing or hereafter arising in the following property (the "Collateral"):

    a. All of the membership interests in each of the companies listed on **Schedule A** attached hereto and made part hereof (each a "Property Owner" and collectively, the "Property Owners") held by Debtor and evidenced by Certificate No. 1, dated as of February 28, 2013, constituting one hundred percent (100%) of the membership interests in each Property Owner in the form of **Schedule B** attached hereto.

    b. All dividends (including cash dividends), other distributions (including redemption proceeds), or other property, securities or instruments in respect of or in exchange for the Collateral, whether by way of distributions, dividends, recapitalizations, mergers, consolidations, split-ups, combinations or exchanges of membership interests or otherwise;

    c. That certain Sponsor Equity Promissory Note dated as of the date hereof in the amount of $7,228,192.00 made by Senior Common Member in favor of Company (the "Sponsor Equity Note");

    d. The Payment Guaranty;

    e. All instruments, certificated and uncertificated securities, money and general intangibles of, relating to or arising from the foregoing; and

    f. All proceeds of the foregoing ("Proceeds").

Page 2

**INITIALS:** _CA_

2337264.8

When Debtor executes and delivers this Pledge, Debtor will execute and deliver to Secured Parties a letter in the form attached hereto as **Schedule C**. Debtor represents that each Property Owner's representations in such letter are true and complete. Debtor shall cause each Property Owner to comply with each Property Owner's covenants and warranties in such letter, and shall cause each Property to comply with the requirements in the Operating Agreement applicable to each Property Owner.

3. Security for Obligations. The obligations secured by this Pledge (the "Obligations") shall mean and include:

   a. all present and future liabilities and obligations of Debtor and any member of Sponsor Group to any Secured Party under this Pledge, the Pledge by Members, the Preferred Recourse Guaranty, the Sponsor Equity Note, the Payment Guaranty and the Operating Agreement (each of the foregoing a "Transaction Document" and collectively, the "Transaction Documents"); and

   b. all interest, fees, charges, expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by Company and/or any Secured Party, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title II of the United States Code (11 U.S.C. Section 101 et. seq.), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

4. Delivery of Collateral; Financing Statements. All certificates or instruments representing or evidencing the Collateral shall be promptly delivered to each Secured Party and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to each Secured Party. Concurrently with the execution of this Agreement, Secured Party is authorized to file a UCC-I financing statement prepared by Secured Party perfecting the security interest granted by this Agreement.

5. Representations and Warranties. Debtor hereby represents and warrants as follows:

   a. Issuance of Collateral, Etc. The Collateral is owned by Debtor free and clear of any and all liens, pledges, encumbrances or charges, and Debtor has not optioned or otherwise agreed to sell, hypothecate, pledge, or otherwise encumber or dispose of the Collateral.

   b. Security Interest. The pledge of the Collateral creates a valid security interest in the Collateral, which security interest is a perfected and first priority security interest, securing the payment of the Obligations and the obligations hereunder. That portion of the Collateral which is a membership in Property Owner is a security governed by Article 8 of the UCC.

INITIALS: _____
2337264.8

    c. Restatement of Representations and Warranties. On and as of the date any property becomes Collateral, the foregoing representations and warranties shall be deemed restated with respect to such additional Collateral.

6. Further Assurances. Debtor agrees that at any time and from time to time, at Debtor's expense, Debtor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that either Secured Party may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable such Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral.

7. Events of Default. The occurrence of any one or more of the following shall constitute an Event of Default under this Agreement:

    a. the occurrence of a Payment Default, a Material Default or a Control Event under the Operating Agreement;

    b. the occurrence of a default or other failure to perform any obligations under the Transaction Documents by any Sponsor Member or Guarantor which is continuing after the expiration of any applicable cure period;

    c. the Collateral becomes subject to any lien other than the lien held by Secured Parties; and

    d. Debtor defaults in observance or performance of any other term, agreement or condition of this Pledge, and to the extent such default or failure to perform shall be subject to cure, Debtor fails to remedy such default within ten (10) days after written notice by Secured Party to Debtor of such default.

8. Rights Under the UCC. In addition to all other rights granted hereby, and otherwise by law, each Secured Party shall have, with respect to the Collateral, the rights and obligations of a secured party under the UCC.

9. Sale of Collateral. Debtor acknowledges and recognizes that Secured Parties may be unable to effect a public sale of all or a part of the Collateral and may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Collateral for their own account, for investment and not with a view to the distribution or resale thereof. Debtor acknowledges that any such private sales may be at prices and on terms less favorable to Secured Parties than those of public sales, and agrees that so long as such sales are made in good faith to a non affiliated third party such private sales shall be deemed to have been made in a commercially reasonable manner and that Secured Parties have no obligation to delay sale of any Collateral to permit the issuer thereof to register it for public sale under the Securities Act of 1933, as amended or under any state securities law.

Page 4

INITIALS: _____
2337264.8

10. Notice of Foreclosure Sale. The Secured Parties shall give Debtor such notice of any private or public sale of the Collateral as may be required by the UCC. Any sale of the Collateral shall be held at such time or times and at such place or places as The Secured Parties may determine in the exercise of its sale and absolute discretion. Secured Parties may bid (which bid may be, in whole or in part, in the form of cancellation of Obligations) for and purchase for the account of the Secured Parties or any nominee of the Secured Parties the whole or any part of the Collateral.

11. Private Sales. Upon the occurrence and during the continuance of an Event of Default, whether or not any of the Collateral has been effectively registered under the Securities Act of 1933, as amended, or other applicable laws, the Secured Parties may, in their sale and absolute discretion, sell all or any part of the Collateral at private sale in such manner and under such circumstances as the Secured Parties may deem necessary or advisable in order that the sale may be lawfully conducted. Without limiting the foregoing, the Secured Parties may (i) approach and negotiate with a limited number of potential purchasers, and (ii) restrict the prospective bidders or purchasers to Persons who will represent and agree that they are purchasing the Collateral for their own account for investment and not with a view to the distribution or resale thereof.

12. Warranties. The Secured Parties may sell the Collateral without giving any warranties as to the Collateral. The Secured Parties may specifically disclaim any warranties of title or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

13. Disposition of Proceeds of Sale. Subject to any contrary provisions of the UCC, the cash proceeds resulting from the collection, liquidation, sale or other disposition of the Collateral shall be applied, first, to the reasonable costs and expenses (including reasonable attorneys' fees) of processing and preparing for sale, selling, collecting and liquidating the Collateral, and the like; and second, to the satisfaction of the Obligations in such order and manner as the Secured Parties in its sale and absolute discretion may determine. The balance, if any, shall be paid to the Debtor.

14. Compliance with the Exchange Act. Upon the occurrence of an Event of Default and at the Secured Parties' request, Debtor agrees to use Debtor's best efforts to cause the issuer of the Collateral to disseminate publicly all information required to be disseminated pursuant to the Securities Exchange Act of 1934, as amended, in the event that such issuer or Debtor is required to file reports under such Act, or to otherwise make available such information as to permit the public or private sale of the Collateral in accordance with the terms of this Pledge. Debtor further agrees to use Debtor's best efforts to cause such issuer to cooperate with the Secured Parties in taking whatever additional action may be required to effect such public or private sale of the Collateral.

Page 5

INITIALS: _C/L_
2337264.8

15. <u>Notice, Etc.</u> In any case where notice of sale is required, thirty (30) days' notice shall be deemed reasonable notice. The Secured Parties may have resort to the Collateral or any portion thereof with no requirement on the part of Secured Party to proceed first against any other Person or property.

16. <u>Other Remedies.</u> Upon the occurrence and during the continuance of an Event of Default, (i) at the request of the Secured Parties, Debtor shall assemble and make available to Secured Parties all records relating to the Collateral at any place or places specified by Secured Parties, together with such other information as Secured Parties shall request concerning Debtor's ownership of the Collateral and relationship to the issuer of the Collateral; and (ii) Secured Parties or its nominee shall have the right, but shall not be obligated, to vote or give consent with respect to the Collateral or any part thereof.

17. <u>Secured Parties Appointed Attorney-in-Fact.</u> Debtor hereby appoints the Secured Parties as Debtor's attorney-in-fact, with full authority in the place and stead of Debtor and in the name of Debtor or otherwise, from time to time in the Secured Parties' discretion and to the full extent permitted by law after an Event of Default and the expiration of any notice and cure period applicable thereto to take any action and to execute any instrument which the Secured Parties may deem reasonably necessary or advisable to accomplish the purposes of this Pledge in accordance with the terms and provisions hereof, including without limitation, to receive, endorse and collect all instruments made payable to Debtor representing any dividend, interest payment or other distribution in respect of the Collateral or any part thereof and to give full discharge for the same.

    This power of attorney is a power coupled with an interest and shall be irrevocable. The powers conferred on the Secured Parties hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon the Secured Parties to exercise any such powers. The Secured Parties shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and in no event shall the Secured Parties or any of their officers, directors, employees, or agents be responsible to Debtor for any act or failure to act, except for gross negligence or willful misconduct.

18. <u>Miscellaneous.</u>

    a. <u>Notices.</u> Except as otherwise provided herein, all notices, requests, demands, consents, instructions, or other communications to or upon Secured Parties or Debtor under this Agreement shall be in writing and emailed, telecopied, mailed or delivered to each party at the address or telecopier number last given to the other party. All such notices and communications shall be effective (a) when sent by Federal Express or other overnight service of recognized standing, on the business day following the deposit with such service; (b) when mailed by registered or certified mail, first class postage prepaid and addressed as aforesaid

Page 6

INITIALS: _C__
2337264.8

through the United States Postal Service, upon receipt; (c) when delivered by hand or emailed, upon delivery or receipt of email; and (d) when telecopied, upon confirmation of receipt on a business day, otherwise the next business day.

b. <u>Non-waiver</u>. No failure or delay on either Secured Party's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

c. <u>Amendments and Waivers</u>. This Pledge may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Debtor and the Secured Parties. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

d. <u>Assignments</u>. This Pledge shall be binding upon and inure to the benefit of the Secured Parties and Debtor and their respective successors and assigns; provided, however, that Debtor may not assign its rights and duties hereunder without the prior written consent of the Secured Parties.

e. <u>Cumulative Rights, Etc</u>. The rights, powers and remedies of the Secured Parties under this Pledge shall be in addition to all rights, powers and remedies given to Secured Parties by virtue of any applicable law, rule or regulation of any governmental authority, the Operating or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing any Secured Party's rights hereunder. Debtor waives any right to require any Secured Party to proceed against any Person or to exhaust any collateral or to pursue any remedy in any Secured Party's power.

f. <u>Payments Free of Taxes, Etc</u>. All payments made by Debtor under this Pledge shall be made by Debtor free and clear of and without deduction for any and all present and future taxes, levies, charges, deductions and withholdings. In addition, Debtor shall pay upon demand any stamp or other taxes, levies or charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Pledge. Upon request by either Secured Party, Debtor shall furnish evidence satisfactory to the Secured Parties that all requisite authorizations and approvals by, and notices to and filings with, governmental authorities and regulatory bodies have been obtained and made and that all requisite taxes, levies and charges have been paid.

g. <u>Partial Invalidity</u>. If any time any provision of this Pledge is or becomes illegal, invalid or enforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Pledge nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

Page 7

INITIALS: _CA_
2337264.8

h. <u>Expenses</u>. Debtor shall bear its own costs in connection with the preparation, execution and delivery of, and the exercise of its duties under, this Pledge and the other Transaction Documents. Debtor shall pay on demand all reasonable fees and expenses, including reasonable attorneys' fees and expenses, incurred by any Secured Party with respect to the exercise of its duties under, this Pledge and the other Transaction Documents and any amendments or waivers hereof requested by Debtor or in the enforcement or attempted enforcement of this Pledge or in preserving any of any Secured Party's rights and remedies (including, without limitation, all such fees and expenses incurred in connection with any "workout" or restructuring affecting this Agreement, or the other Transactions Documents or the Obligations or any bankruptcy or similar proceeding involving Debtor or any of its Subsidiaries).

i. <u>Counterparts</u>. This Pledge may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts together shall constitute one and the same instrument. Photocopy, facsimile and other digitally imaged and transmitted copies of this Pledge as executed shall be as effective as the original thereof and may be admitted as an original in evidence in any court or any legal proceeding.

j. <u>Governing Law</u>. This Pledge shall be governed by and construed in accordance with the laws of the State of Delaware without reference to conflicts of law rules (except to the extent governed by the UCC).

k. <u>Jury Trial</u>. EACH OF DEBTOR AND EACH SECURED PARTY, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS PLEDGE, AGREEMENT.

l. <u>Termination of Pledge</u>. Subject to the limitation set forth in <u>subsection m</u> below, upon satisfaction or payment in full of all Obligations with respect to either Secured Party as provided in the Operating Agreement, the security interest in the Collateral created by this Pledge shall terminate with respect to such item of Collateral in favor of such Secured Party and thereafter, the remaining Secured Party, if any, shall promptly return or release to Debtor all or any portion the Collateral as specifically provided for in the Operating Agreement.

m. <u>Directing Secured Party</u>. For the purposes of exercising rights and privileges of the Secured Parties hereunder, Preferred Member shall be the designated agent ("<u>Directing Secured Party</u>") for the purpose of taking any action hereunder until such time as Preferred Member's Preferred Equity Investment together with all Distributions due under the Operating Agreement shall be redeemed in full. All actions required hereunder to be taken by Secured Parties hereunder may be taken

Page 8

INITIALS: _CM_
2337264.8

singularly by the Directing Secured Party. Thereafter, the security interest created by this Pledge with respect to the Obligations of Debtor to Preferred Member shall terminate with respect to Preferred Member and Guarantor Member shall be the Directing Secured Party. The security interest created by this Pledge shall not terminate with respect to Guarantor Member until such time as Guarantor Member shall have received all Guarantor Member Distributions together with all other sums to which it is entitled under the Operating Agreement in full. The interest of each Secured Party hereunder in the Collateral shall be adjusted pro-rata in proportion to the outstanding Obligations due such Secured Party, whether or not accrued or payable.

[Remainder of page intentionally left blank.]

Page 9

INITIALS: _____
2337264.8

IN WITNESS WHEREOF, Debtor has caused this Pledge to be executed as of the day and year first above written.

**DEBTOR:**

**ROYAL NUMERIC FX INVESTMENTS, LLC,**
a Delaware limited liability company

By: FX3 Apartments Investors, LLC,
   a Delaware limited liability company
   Its: Manager

   By: Numeric Commercial Investments, LLC,
      a Delaware limited liability company
   Its: Managing Member

      By: Numeric Holding Company, LLC,
         a Delaware limited liability company
         Its: Managing Member

         By: Gettel Children's Trust 2
         Its: Sole Member

            By: /s/ Courtland Gettel
            Its: Trustee

INITIALS: CG
2337264.8

S-1   Pledge and Security Agreement (Company)

## ACKNOWLEDGMENT:

STATE OF ARIZONA           )
                           ) ss
COUNTY OF PIMA             )

On February **25**, 2013, before me, **Shirley Welch**, a Notary Public in and for the State of Arizona, personally appeared COURTLAND GETTEL, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which COURTLAND GETTEL acted, executed the instrument.

_____
Signature: *Shirley Welch*

NOTARY PUBLIC
STATE OF ARIZONA
Pima County
SHIRLEY WELCH
My Commission Expires 08/31/15

My Commission Expires: **8/31/15**

(Space above for official notarial seal)

Pledge and Security Agreement
Dated: **Feb. 25**, 2013
Pages: 18 including signature, acknowledgment and schedule pages
Other Signers: None

S-2     Pledge and Security Agreement (Company)

**INITIALS:** _____
2337264.8

## SCHEDULE A

### PROPERTY OWNERS

Broadmoor Apartments, LLC, a Delaware limited liability company

Chesapeake Apartments, LLC, a Delaware limited liability company

Holly Ridge Apartments, LLC, a Delaware limited liability company

Holly Tree Apartments, LLC, a Delaware limited liability company

Majestic Heights Apartments, LLC, a Delaware limited liability company

Pecan Crossing Apartments, LLC, a Delaware limited liability company

Preston Valley Apartments, LLC, a Delaware limited liability company

Ravenwood Hills Apartments, LLC, a Delaware limited liability company

Remington Oaks Apartments, LLC, a Delaware limited liability company

River Road Terrace Apartments, LLC, a Delaware limited liability company

San Marin Apartments, LLC, Sandridge Apartments, LLC, a Delaware limited liability company

Sonterra Apartments, LLC, a Delaware limited liability company

Toscana Villas Apartments, LLC, a Delaware limited liability company

Schedule A

INITIALS: _____
2337264.8

## SCHEDULE B

## CERTIFICATE OF MEMBERSHIP INTEREST (WITH POWER)

### CERTIFICATE FOR [_____], LLC

Certificate Number 1                                      100 % outstanding
                                                          limited liability company
                                                          interests

As of this [_____], 2013, [_____], LLC, a Delaware limited liability company (the "Company"), hereby certifies that ROYAL NUMERIC FX INVESTMENTS, LLC, a Delaware limited liability company (the "Holder") is the registered owner of 100% of the limited liability company interests in the Company (the "Interests"). THE RIGHTS, POWERS, PREFERENCES, RESTRICTIONS (INCLUDING TRANSFER RESTRICTIONS) AND LIMITATIONS OF THE INTERESTS ARE SET FORTH IN, AND THIS CERTIFICATE AND THE INTERESTS REPRESENTED HEREBY ARE ISSUED AND SHALL IN ALL RESPECTS BE SUBJECT TO THE TERMS AND PROVISIONS OF THE OPERATING AGREEMENT OF THE COMPANY, DATED AS OF _____, 2013, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME (THE "AGREEMENT"). THE TRANSFER OF THIS CERTIFICATE AND THE INTERESTS REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE AGREEMENT. By acceptance of this Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Interests evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all of the terms and conditions of the Agreement. The Company will furnish a copy of the Agreement to the Holder without charge upon written request to the Company at its principal place of business. The Company maintains books for the purpose or registering the transfer of Interests.

Each limited liability company interest in the Company shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of Delaware, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioner on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

This Certificate shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflict of laws.

[Remainder of page intentionally left blank.]

INITIALS: _CA_                                            Schedule B-1
2337264.8

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the day and year first above written.

COMPANY:

[_____], LLC
a Delaware limited liability company

By: Royal Numeric FX Investments, LLC
    a Delaware limited liability company
Its: Sole Member

    By: FX3 Apartments Investors, LLC,
        a Delaware limited liability company
    Its: Manager

    By: Numeric Commercial Investments, LLC,
        a Delaware limited liability company
    Its: Managing Member

        By: Numeric Holding Company, LLC,
                a Delaware limited liability company
                Its: Managing Member

            By: Gettel Children's Trust 2
            Its: Sole Member

            By: _____
                Courtland Gettel
            Its: Trustee

**INITIALS:** _CA_
2337264.8

Schedule B-2

# MEMBERSHIP INTEREST POWER

FOR VALUE RECEIVED, Debtor hereby sells, assigns and transfers unto _____ ONE HUNDRED PERCENT (100%) of the membership interests of [_____], LLC standing in its name on the books of [_____], LLC represented by membership certificate Number 1 herewith, and do hereby irrevocably constitute and appoint _____ as attorney, jointly and severally, to transfer the said membership interests on the books of [_____,] LLC with full power of substitution in the premises.

Dated: _____, 2013   [_____], LLC,
a Delaware limited liability company

By:_____
Name:
Title:

*In presence of*

_____
Name:

INITIALS: _CA_
2337264.8

Schedule B-3

## SCHEDULE C

## ACKNOWLEDGMENT OF PLEDGE

[LETTERHEAD OF EACH PROPERTY OWNER]

_____ _____, 2013

ROYAL MULTIFAMILY VENTURES 2013-1, LLC,
a Delaware limited liability company
7001 North Scottsdale Road, Suite 2050
Scottsdale, Arizona 85253

ROYAL MULTIFAMILY PROMOTE 2013-1, LLC,
a Delaware limited liability company
7001 North Scottsdale Road, Suite 2050
Scottsdale, Arizona 85253

Ladies and Gentlemen:

Reference is made to the Pledge and Security Agreement dated as of the date hereof (the "Pledge Agreement") between Royal Numeric FX Investments, LLC, as the pledgor (the "Debtor"), and you, as Secured Parties. Capitalized terms used but not defined herein have the meanings provided in the Pledge Agreement.

In connection with the pledge of the Collateral to you by Debtor, the undersigned hereby represents, warrants, consents and agrees with you as follows:

      (a)    As set forth in the Property Owner's Operating Agreement, the undersigned has irrevocably elected that all membership interests in the company shall be securities governed by Article 8 of the Uniform Commercial Code. The undersigned has registered on its books and records your security interest in the Collateral and any other Collateral existing as of the date hereof; no other lien on such Collateral or other Collateral is registered on the books and records of the undersigned;

      (b)    The undersigned shall deliver directly to you at your address set forth above, any and all instruments and/or certificates evidencing any right, option or warrant, and all new, additional or substituted securities issued to, or to be received by, Debtor by virtue of its ownership of the Collateral issued by Property Owner or upon exercise by Debtor of any option, warrant or right attached to such Collateral;

      (c)    The Collateral constitute all of the membership interests in the Property Owner; there are no options or rights outstanding to acquire any interests in the Property Owner,

**INITIALS:** _/s/_

2337264.8

Schedule C-1

and the undersigned will not issue any additional membership interests or securities without the prior written consent of Secured Party;

(d) The undersigned has not entered into an agreement with any third party to act on such third party's instructions with respect to the Collateral without further consent of Debtor; and agrees that it will not enter into any such agreement with any third party concerning any Collateral;

(e) After receipt from you of written notice that an Event of Default exists, the undersigned shall pay directly to you any and all cash distributions which might be declared and payable (including any unpaid distributions accrued prior to the date hereof) on any of the Collateral or any of the other Collateral issued by the undersigned, and which but for the provisions of this letter would be paid to Debtor;

(f) In accordance with the Pledge Agreement, when an Event of Default exists, and upon your exercise of applicable remedies pursuant to the Pledge Agreement, upon your written instructions, the undersigned shall register the transfer of such Collateral to you or your nominee, as applicable;

(g) The Collateral have been duly authorized and validly issued and are not subject to, nor will the undersigned at any time permit it to become subject to, any restrictions governing its issuance, transfer, ownership or control other than those currently set forth in its operating agreement; and

(h) The undersigned will comply with any "instructions" (as defined in Section 8-102(a)(12) of the UCC relating to the Collateral without the need for further consent from Debtor provided such instructions are given in accordance with the Operating Agreement.

The undersigned agrees that, if at any time you shall determine to exercise your right to sell all or any of the Collateral issued by the undersigned, the undersigned will, upon your request and at Debtor's expense:

(1) provide you with such other information and projections as may be necessary or, in your reasonable opinion, advisable to enable you to effect the sale of such Collateral, with no representations or warranties and without recourse, and at no expense to Property Owner;

(2) do or cause to be done all such other acts and things as may be reasonably necessary to make the sale of such Collateral or any part thereof valid and binding and in compliance with applicable law, with no representations or warranties and without recourse, and at no expense to Property Owner; and

(3) following a valid transfer of the Collateral to such person, do or cause to be done all such other acts and things as may be necessary to constitute you or your designees or transferees a member of the undersigned.

INITIALS: _____
2337264.8

Schedule C-2

You are hereby authorized, in connection with any sale of the Collateral issued by the undersigned, to deliver or otherwise disclose to any prospective purchaser of such Collateral (i) any information and projections provided to you pursuant to subsection (a) above and (ii) any other information in your possession relating to the undersigned or such Collateral.

Very truly yours,

[_____], LLC
a Delaware limited liability company

By: Royal Numeric FX Investments, LLC
    a Delaware limited liability company
Its: Sole Member

    By: FX3 Apartments Investors, LLC,
        a Delaware limited liability company
    Its: Manager

    By: Numeric Commercial Investments, LLC,
        a Delaware limited liability company
    Its: Managing Member

        By: Numeric Holding Company, LLC,
            a Delaware limited liability company
            Its: Managing Member

            By: Gettel Children's Trust 2
            Its: Sole Member

            By: _____
                Courtland Gettel
            Its: Trustee

**INITIALS:** _____

2337264.8

Schedule C-3