## EXHIBIT 1

**First Amendment to the Debtor-In-Possession
Loan, Security and Guaranty Agreement**

**FIRST AMENDMENT
TO DEBTOR-IN-POSSESSION LOAN, SECURITY AND GUARANTY AGREEMENT**

This **FIRST AMENDMENT TO DEBTOR-IN-POSSESSION LOAN, SECURITY AND GUARANTY AGREEMENT** (this "Amendment") is dated as of March 5, 2015 and entered into by and among Variant Holding Company, LLC, a Delaware limited liability company, as borrower ("Borrower"), Laser Focus Holding Company, LLC, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, Numeric Commercial Investments, LLC, and Royal Numeric FX Investments, LLC (collectively, with any other Person who may guaranty the Obligations, the "Guarantors"), BPC VHI, L.P., a Cayman Islands limited partnership, Beach Point Total Return Master Fund, L.P., a Cayman Islands limited partnership, Beach Point Distressed Master Fund, L.P., a Cayman Islands limited partnership, as lenders (collectively, the "Lenders"), and Cortland Capital Market Services LLC, a Delaware limited liability company, as administrative agent (the "Administrative Agent"), and is made with reference to that certain Debtor-in-Possession Loan, Security and Guaranty Agreement dated as of October 31, 2014 (the "Agreement"), by and between Borrower, the Lenders, the Guarantors, and the Administrative Agent.  Capitalized terms used herein without definition shall have the meanings ascribed to them in the Agreement.

**RECITALS**

**WHEREAS**, the Borrower, the Guarantors, the Lenders, and the Administrative Agent entered into the Agreement on or about October 31, 2014;

**WHEREAS**, the Agreement was approved by the Court in the Chapter 11 Case on an interim basis by entry of an order dated November 3, 2014, and on a final basis by entry of an order dated November 17, 2014;

**WHEREAS,** the Borrower, the Guarantors, the Lenders, and the Administrative Agent desire to amend the Agreement to make those certain amendments as set forth below on the terms and conditions set forth herein;

**NOW, THEREFORE,** in consideration of the premises and the agreements, provisions and covenants herein contained, the Borrower, the Guarantors, the Lenders and the Administrative Agent hereby agree as follows:

**Section 1.    AMENDMENTS TO THE AGREEMENT**

**1.1    Amendments to Section 1:  Definitions**

**A.**    Section 1.01 of the Agreement is hereby amended by adding thereto the following definitions, which shall be inserted in proper alphabetical order:

"Final Amendment Order":  An order of the Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) in the form attached hereto as Exhibit B-4 with any modifications thereto approved by the Administrative Agent and the Lenders in their sole discretion, as the same may be amended, supplemented or otherwise modified from time to time with the express written consent or joinder of the Administrative Agent and the Lenders.

"IMH Settlement Agreement":  That certain Settlement Agreement, dated as of February 27, 2015, by and between IMH, the Borrower, and certain affiliates thereof.

"Interim Amendment Order":  An order of the Court entered in the Chapter 11 Case after an interim hearing under Bankruptcy Rule 4001(e)(2) in the form attached hereto as Exhibit B-3 with any modifications thereto approved by the Administrative Agent and the Lenders in their sole discretion, as the same may be amended, supplemented or otherwise modified from time to time with the express written consent or joinder of the Administrative Agent and the Lenders.

**B.**    Section 1.01 of the Agreement is hereby further amended by deleting each of the definitions of "Commitment", "FX3 Property Net Sale Proceeds", and "Side Letter Agreement" therefrom in their entireties and substituting the following therefor:

"Commitment": The collective commitments of the Lenders to make the Loan to the Borrower pursuant to Article II in an aggregate amount not to exceed $10,750,000; provided, however, that the amount of the Commitment shall be reduced on a dollar-for-dollar basis for any amount received or borrowed by the Loan Parties or their Subsidiaries from the H14 Mortgage Lender on or after the Closing Date; provided, further, however, that any amount, not to exceed $1,500,000 in the aggregate, received by the Loan Parties or their Subsidiaries from the H14 Mortgage Lender that is, as of the Closing Date, held in reserve by the H14 Mortgage Lenders shall not reduce the Commitment.

"FX3 Property Net Sale Proceeds": With respect to any FX3 Property Sale, Cash payments (including any Cash received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise, but only as and when so received) received from such FX3 Property Sale, net of any (i) ordinary direct sales costs necessary to close such FX3 Property Sale, including reasonable broker fees, legal expenses, title fees, escrow fees and other customary closing costs and fees in the jurisdiction where the applicable FX3 Property is located, and the amount necessary to obtain a release of the lien held by the "Senior Lender" against such FX3 Property as set forth on Exhibit E to the Settlement Agreement and Exhibit A to the Existing Loan Agreement, and (ii) any outstanding payables that were incurred in the ordinary course of such FX3 Property owner's business and not paid from proceeds of the Loan; provided, however, that no payment may be made to any Defendant Party, the Non-Settling Non-Debtor Party Defendants or any Affiliates thereof without the prior written consent of the Lenders.

"Side Letter Agreement":  That certain side letter agreement dated as of March 3, 2015 by and among the Loan Parties, the Lenders and the Administrative Agent, as the same may be amended, modified or supplemented from time to time in writing by the parties thereto.

## 1.2    Amendments to Article 3:  General Provisions Concerning the Loans

**A.    Use of Proceeds.**  Section 3.01(a) of the Agreement is hereby amended by deleting it in its entirety and substituting the following therefor:

"(a)    Subject to the provisions of this Section 3.01, the proceeds of the Loan shall be applied in accordance with this Agreement, in the case of the Initial Advance, (x) up to $2,000,000 for the purposes identified in clauses (i), (ii), and (iii) of this Section 3.01(a), provided that the CRO shall certify such use of proceeds, and (y) up to $1,000,000 for

outstanding payables in clause (i) of this Section 3.01(a), provided that the CRO shall certify that the work for which such payables relate was completed and that the claims are valid, and in the case of any Future Advances, the Budget. Without limiting the generality of the foregoing, the proceeds of the Loan shall be used, among other purposes expressly provided for in the Budget, for (i) payment of outstanding payables owing by the direct owners of the Properties, (ii) operating expenses relating to Properties that are experiencing negative cash flow on a current basis, (iii) capital expenditures to maintain and preserve the Properties in the ordinary course of business and to remedy any health and safety issues at the Properties or any violations of any state, municipal or other administrative rule or regulation governing the Properties, and (iv) funding the "Payment" (as defined in the IMH Settlement Agreement) to IMH, to the extent not otherwise funded by an alternative source; provided that, for the avoidance of doubt, no portion of the Loan or any cash collateral shall be used, directly or indirectly, to (A) finance or make any distribution to the equity holders of the Borrower; (B) make any payment or prepayment that is prohibited under this Agreement, including any payment or prepayments in respect of Prepetition Debt; (C) make any payment in settlement of any claim, action proceeding, before any court, arbitrator or other governmental body; (D) pay any fees or expenses incurred in connection with the initiation or prosecution or any claims, causes of action or other litigation against the Administrative Agent or any Lender or in connection with invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part, or taking or attempting to take any other action to render unenforceable the Liens, claims or interests of the Administrative Agent, any Lender or the lender in connection with the Existing Loan Agreement; or (E) make a payment to any Defendant Party, the Non-Settling Non-Debtor Party Defendants or any Affiliates thereof without the prior written consent of the Lenders. Nothing herein shall in any way prejudice or prevent the Administrative Agent or any Lender from objecting to any request, motion or application in the Chapter 11 Case, including applications for compensation for services rendered or reimbursement of expenses."

## 1.3    Amendments to Article 6:  Covenants

A.    **Negative Covenants.**  Section 6.02(h) of the Agreement is hereby amended by deleting it in its entirety and substituting the following therefor:

"(h)    Limitation on Repayments. Except as provided in the Settlement Agreement and the IMH Settlement Agreement, solely as to the Borrower, (i) make any payment or prepayment on or redemption or acquisition for value (including, without limitation, by way of depositing with the trustee with respect thereto money or securities before due for the purpose of paying when due) of any Prepetition Debt or other pre-Petition Date obligations of such Person, (ii) pay any interest on any Prepetition Debt of such Person (whether in cash, in kind securities or otherwise) except as pursuant to the Settlement Approval Order, or (iii) make any payment or create or permit any Lien pursuant to any provision of the Bankruptcy Code, or apply to the Court for the authority to do any of the foregoing, in each case, other than in respect of the Existing Loan Agreement."

## 1.4    Additional Exhibits

A.    **Exhibit B-3 and B-4**.  Exhibits B-3 and B-4 attached hereto shall be added as Exhibits B-3 and B-4 to the Agreement.

### Section 2.    CONDITIONS TO EFFECTIVENESS

Section 1 of this Amendment shall become effective only upon the receipt by the Administrative Agent and the Lenders of an executed copy of this Amendment, and upon the Interim Amendment Order being entered by the Court and being in full effect and unstayed (the date of satisfaction of such conditions being referred to herein as the "Amendment Effective Date").

### Section 3.    REPRESENTATIONS AND WARRANTIES

A.    **Loan Party Representations and Warranties.**  Each of the Loan Parties represents and warrants as follows:

(i)    Authorization.  The execution, delivery and performance by each Loan Party of this Amendment and the incurrence of all obligations hereunder, are within such Loan Party's corporate powers and (i) have been duly authorized by all necessary corporate action and (ii) have been, or as a condition to the effectiveness of this Amendment will be, duly authorized by the Court.

(ii)    No Conflict.  The execution, delivery and performance by each Loan Party of this Amendment do not (i) violate such Loan Party's certificate of formation or operating agreement, or (ii) violate any law or regulation (including Regulations T, U and X) or any order, judgment or decree of any court (including, without limitation, the Court) or governmental agency body binding on such Loan Party, or (iii) result in a breach of or a default under, or result in or require the imposition of a Lien pursuant to any contract or an applicable order of the Court binding on the such Loan Party.

(iii)    Governmental Consents.  No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body, except for the Court, is required for the due execution, delivery and performance by the Loan Parties of this Amendment.

(iv)    Validity.  This Amendment and the Agreement as amended hereby are legal, valid, and binding obligations of each Loan Party, enforceable against each Loan Party in accordance with each Loan Documents' terms, except as enforcement may be limited by applicable laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

(v)    Incorporation of Representations and Warranties From Agreement.  The representations and warranties contained in Section 5 of the Agreement are and will be true, correct and complete in all material respects on and as of the Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and

warranties specifically relate to an earlier date, in which case they were true, correct and complete in all material respects on and as of such earlier date.

**B.**    **Borrower and Guarantor Representations and Warranties**.  Each of Borrower and the Guarantors represents and warrants as follows:

(i)    <u>Absence of Default</u>.  Other than those set forth in <u>Schedule 1</u>, no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Potential Event of Default.

**Section 4.**    **MISCELLANEOUS**

**A.**    **Reference to and Effect on the Agreement and the Other Loan Documents.**

(i)    On and after the Amendment Effective Date, each reference in the Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Agreement, and each reference in the other Loan Documents to the "Loan Agreement", "thereunder", "thereof" or words of like import referring to the Credit Agreement shall mean and be a reference to the Agreement as amended by this Amendment.

(ii)    Except as specifically amended by this Amendment, the Agreement and the other Loan Documents shall remain in full force and effect and are hereby ratified and confirmed.

(iii)    The execution, delivery and performance of this Amendment shall not, except as expressly provided herein, constitute a waiver of any provision of, or operate as a waiver of any right, power or remedy of the Lenders under the Agreement or any of the other Loan Documents.

**B.**    **Fees and Expenses**.  The Borrower acknowledges that all costs, fees and expenses as described in Section 13.05 of the Agreement incurred by the Lenders and their counsel with respect to this Amendment and the documents and transactions contemplated hereby shall be for the account of Borrower.

**C.**    **Headings**.  Section headings in this Amendment are included for convenience of reference only and shall not be given any substantive effect.

**D.**    **Applicable Law**.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD REQUIRE APPLICATION OF ANOTHER LAW.

**E.**    **Counterparts; Effectiveness**.  This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF,** the parties hereto have caused this Amendment to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

BORROWER:

**Variant Holding Company, LLC**

_____

Bradley D. Sharp
Chief Restructuring Officer


GUARANTORS:

**Numeric Commercial Investments, LLC**

By:     Variant Holding Company, LLC
Its:     Managing Member

_____

Bradley D. Sharp
Chief Restructuring Officer

**Royal Numeric FX Investments, LLC**

By:     FX3 Apartments Investments, LLC
Its:     Manager

     By:     Numeric Commercial Investments, LLC
     Its:     Managing Member

          By:     Variant Holding Company, LLC
          Its:     Managing Member

     _____

     Bradley D. Sharp
     Chief Restructuring Officer

**Laser Focus Holding Company, LLC**

By:     Variant Holding Company, LLC
Its:     Managing Member

_____

Bradley D. Sharp
Chief Restructuring Officer

**Laser Focus Commercial Investments, LLC**

By: Laser Focus Holding Company, LLC
Its: Managing Member

  By: Variant Holding Company, LLC
  Its: Managing Member

    _____
    Bradley D. Sharp
    Chief Restructuring Officer

**Houston 2 Apartments, LLC**

By: Laser Focus Commercial Investments, LLC
Its: Managing Member

  By: Laser Focus Holding Company, LLC
  Its: Managing Member

    By: Variant Holding Company, LLC
    Its: Managing Member

    _____
    Bradley D. Sharp
    Chief Restructuring Officer

**Houston 14 Apartments, LLC**

By: Laser Focus Commercial Investments, LLC
Its: Managing Member

  By: Laser Focus Holding Company, LLC
  Its: Managing Member

    By: Variant Holding Company, LLC
    Its: Managing Member

    _____
    Bradley D. Sharp
    Chief Restructuring Officer

LENDERS:

**Beach Point Total Return Master Fund, L.P.**
**Beach Point Distressed Master Fund, L.P.**

By:    Beach Point Capital Management LP
Its:    Investment Manager

Lawrence M. Goldman
Chief Administrative Officer & General Counsel

**BPC VHI, L.P.**

By:    BPC AS LLC
Its:    General Partner

Lawrence M. Goldman
Chief Administrative Officer & General Counsel

ADMINISTRATIVE AGENT:

**Cortland Capital Market Services LLC**

Emily Ergang Pappas
Associate Counsel

LENDERS:

**Beach Point Total Return Master Fund, L.P.**
**Beach Point Distressed Master Fund, L.P.**

By:     Beach Point Capital Management LP
Its:     Investment Manager

_____
Lawrence M. Goldman
Chief Administrative Officer & General Counsel

**BPC VHI, L.P.**

By:     BPC AS LLC
Its:     General Partner

_____
Lawrence M. Goldman
Chief Administrative Officer & General Counsel

ADMINISTRATIVE AGENT:

**Cortland Capital Market Services LLC**

Emily Ergang Pappas
Associate Counsel

**EXHIBIT B-3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| VARIANT HOLDING COMPANY, LLC, | ) Case No. 14-12021-BLS |
| | ) |
| Debtor. | ) |
| | ) |

## INTERIM ORDER APPROVING FIRST AMENDMENT TO DEBTOR-IN-POSSESSION LOAN, SECURITY AND GUARANTY AGREEMENT AND SCHEDULING A FINAL HEARING

Upon the motion of Variant Holding Company, LLC (the "Debtor") dated March 5, 2015 (the "Motion")[1] for entry of an order, pursuant to §§ 105, 363, 364(c) and (d), 503(b) and 507 of the Bankruptcy Code, and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the First Amendment to the Debtor-In-Possession Loan, Security and Guaranty Agreement (the "Amendment"), dated as of March 5, 2015, by and among the Debtor, as borrower, Laser Focus Holding Company, LLC, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, Numeric Commercial Investments, LLC, and Royal Numeric FX Investments, LLC (collectively, the "Guarantors"), BPC VHI, L.P., a Cayman Islands limited partnership, Beach Point Total Return Master Fund, L.P., a Cayman Islands limited partnership, Beach Point Distressed Master Fund, L.P., a Cayman Islands limited partnership, as lenders (collectively, the "Lenders"), and Cortland Capital Market Services LLC, a Delaware limited liability company, as administrative agent (the "Administrative Agent"); and (ii) requesting pursuant to Bankruptcy Rule 4001 that a final hearing (the "Final Hearing") on the Motion be held on or before March [___], 2015 to consider entry of a final order approving the Amendment; the Court hereby finds, based on the record presented to this Court, that:

- 1 -

(a)     Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the interim hearing for such Motion constitutes appropriate, due, and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules;

(b)     Good cause has been shown for the entry of this Interim Order;

(c)     The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents, as amended by the Amendment.  The Debtor is unable to obtain adequate unsecured credit allowable under section 502(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the DIP Lenders the liens and protections afforded to them under the Final DIP Order (defined below).  The Debtor requires the additional financing provided under the Amendment pursuant to the terms therein and under this Interim Order to satisfy its postpetition liquidity needs; and

(d)     All of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the DIP Loan and the DIP Loan Documents, as amended by the Amendment, and the rights granted in this Interim Order, are being extended or received, as appropriate, by the DIP Lenders and their affiliates (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Motion.

OMM_US:73306465.4

B-3

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted, on an interim basis, in accordance with the terms of this Interim Order.  Any objection to the Motion with respect to the entry of this Interim Order that has not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied or overruled.

2.      The Debtor is immediately authorized to enter into the Amendment, and to consummate any and all transactions contemplated thereby, and the Amendment and transactions contemplated thereunder are approved in their entirety.

3.      The Debtor is expressly authorized to obtain an extension of its postpetition financing, on the terms and subject to the conditions set forth in the Amendment, the DIP Loan Documents, the Final DIP Order, and this Interim Order, in the aggregate amount of $10,750,000.

4.      The rights and remedies of the Lenders and the Administrative Agent in respect of the obligations of the Debtor under the DIP Loan Agreement, granted and approved under the *Final Order (a) Authorizing Debtor to Obtain Postpetition Financing and to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (b) Authorizing Debtor to Use Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (d) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363* [D.I. 182] (the "Final DIP Order") are hereby reaffirmed and shall continue in full force and effect with respect to the DIP Loan Agreement, as amended by the Amendment.  To the extent the Final DIP Order relies upon the definition of any term as used in the DIP Loan Agreement, the Final DIP Order shall be deemed modified to the extent the definition of such term is modified by the Amendment.

5.      This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or

- 3 -

9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

6.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

7.     The Final Hearing is scheduled for [_____], 2015 at [_____ _].m (prevailing Eastern Time) before this Court. The Debtor shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee and its counsel, if the same has been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file the same with the Court (with a courtesy copy to the Court's chambers) and serve (so as to be received) such objection no later than [_____], 2015 at [_____].m. (prevailing Eastern Time) upon: (a) the Debtor, c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, CA 90071, Attn: Bradley D. Sharp, (b) counsel for the Debtor, (i) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Peter J. Keane, and (b) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica, Blvd., 13th Floor, Los Angeles, CA 90067, Attn: Richard M. Pachulski & Maxim B. Litvak; (c) counsel to any Committee; (d) counsel for the Beach Point Funds, O'Melveny & Myers, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Suzzanne S. Uhland & Michael S. Neumeister, (f) counsel for the Administrative Agent, Holland & Knight LLP, 31 West 52nd Street, New York, NY 10019, Attn: Barbra R. Parlin & Joshua M. Spencer, and (g) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Mark S. Kenney.

- 4 -

Dated: [_____], 2015
        Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

OMM_US:73306465.4

**EXHIBIT B-4**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| VARIANT HOLDING COMPANY, LLC, | ) Case No. 14-12021-BLS |
|  | ) |
| Debtor. | ) |
|  | ) |

## FINAL ORDER APPROVING FIRST AMENDMENT TO DEBTOR-IN-POSSESSION LOAN, SECURITY AND GUARANTY AGREEMENT

Upon the motion of Variant Holding Company, LLC (the "Debtor") dated March 5, 2015 (the "Motion")[1] for entry of an order, pursuant to §§ 105, 363, 364(c) and (d), 503(b) and 507 of the Bankruptcy Code, and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the First Amendment to the Debtor-In-Possession Loan, Security and Guaranty Agreement (the "Amendment"), dated as of March 5, 2015, by and among the Debtor, as borrower, Laser Focus Holding Company, LLC, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, Numeric Commercial Investments, LLC, and Royal Numeric FX Investments, LLC (collectively, the "Guarantors"), BPC VHI, L.P., a Cayman Islands limited partnership, Beach Point Total Return Master Fund, L.P., a Cayman Islands limited partnership, Beach Point Distressed Master Fund, L.P., a Cayman Islands limited partnership, as lenders (collectively, the "Lenders"), and Cortland Capital Market Services LLC, a Delaware limited liability company, as administrative agent (the "Administrative Agent"); the Court having entered an order approving the Motion on an interim basis; the Court hereby finds, based on the record presented to this Court, that:

(a)    Under the circumstances, the notice given by the Debtor of the Motion, the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the Motion.

OMM_US:73310313.1

relief requested therein, and the interim hearing for such Motion constitutes appropriate, due, and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules;

(b)      Good cause has been shown for the entry of this Final Order;

(c)      The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents, as amended by the Amendment.  The Debtor is unable to obtain adequate unsecured credit allowable under section 502(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the DIP Lenders the liens and protections afforded to them under the Final DIP Order (defined below).  The Debtor requires the additional financing provided under the Amendment pursuant to the terms therein and under this Final Order to satisfy its postpetition liquidity needs; and

(d)      All of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the DIP Loan and the DIP Loan Documents, as amended by the Amendment, and the rights granted in this Final Order, are being extended or received, as appropriate, by the DIP Lenders and their affiliates (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

## IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted, on a final basis, in accordance with the terms of this Final Order.  Any objection to the Motion with respect to the entry of this Final Order that has not been withdrawn, waived or settled, and all reservations of rights included therein, are

- 2 -

hereby denied or overruled.

2.      The Debtor is immediately authorized to enter into the Amendment, and to consummate any and all transactions contemplated thereby, and the Amendment and transactions contemplated thereunder are approved in their entirety.

3.      The Debtor is expressly authorized to obtain an extension of its postpetition financing, on the terms and subject to the conditions set forth in the Amendment, the DIP Loan Documents, the Final DIP Order, and this Final Order, in the aggregate amount of $10,750,000.

4.      The rights and remedies of the Lenders and the Administrative Agent in respect of the obligations of the Debtor under the DIP Loan Agreement, granted and approved under the *Final Order (a) Authorizing Debtor to Obtain Postpetition Financing and to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (b) Authorizing Debtor to Use Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (d) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363* [D.I. 182] (the "Final DIP Order") are hereby reaffirmed and shall continue in full force and effect with respect to the DIP Loan Agreement, as amended by the Amendment.  To the extent the Final DIP Order relies upon the definition of any term as used in the DIP Loan Agreement, the Final DIP Order shall be deemed modified to the extent the definition of such term is modified by the Amendment.

5.      This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

- 3 -

6.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

Dated: [_____], 2015
     Wilmington, Delaware

_____

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

- 4 -

## **<u>SCHEDULE 1</u>**

1. Lack of delivery of a final acceptable budget pursuant to Section 4.03(i)
2. Lack of delivery of an updated quarterly budget and related variance report pursuant to Section 4.03(j)