IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S SUPPLEMENTAL MOTION FOR ORDER: (I) AUTHORIZING DEBTOR TO CAUSE ITS NON-DEBTOR SUBSIDIARIES TO SELL THEIR ASSETS PURSUANT TO THE REINSTATED AND AMENDED PORTFOLIO PURCHASE AND SALE AGREEMENT RELATING TO THE TEXAS/EAST COAST PORTFOLIO; AND (II) AUTHORIZING DEBTOR TO TAKE ALL NECESSARY AND APPROPRIATE ACTIONS IN CONNECTION WITH THE FOREGOING**

Variant Holding Company, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case, hereby files this supplemental motion (the "Supplemental Motion")[2] for entry of an order: (i) authorizing the Debtor to cause its non-debtor subsidiaries to sell the Texas/East Coast Portfolio (as defined below) pursuant to the terms of that certain *Portfolio Purchase and Sale Agreement* dated March 5, 2015, attached hereto as **Exhibit A** (the "Original PSA"), as amended and modified by that certain *Reinstatement and Fourth Amendment to Portfolio Purchase and Sale Agreement* dated as of May 14, 2015, attached hereto as **Exhibit B** (the "Fourth Amendment" and together with the Original PSA, the "Reinstated PSA"),[3] to Birch Owner LLC (the "Buyer"), as assignee of LRP Property Company, LLC (the "Original Buyer"), for the purchase price of $205,000,000 in the aggregate, and (ii) authorizing

---

[1] The last four digits of the Debtor's federal tax identification number are (4044). The Debtor's service address is: Variant Holding Company, LLC, c/o Development Specialists, Inc., 333 S. Grand Ave, Suite 4070, Los Angeles, CA 90071-1544.

[2] On March 4, 2015, the Debtor filed the Original Motion (as defined below).

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Reinstated PSA.

the Debtor to take all reasonable and appropriate actions that it determines are necessary in connection therewith. In support of this Supplemental Motion, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The Debtor previously obtained this Court's approval to cause its subsidiaries (collectively, the "<u>Subsidiaries</u>" or the "<u>Sellers</u>") to sell the bulk of their real estate assets to the Original Buyer for $275,000,000 in the aggregate, pursuant to the terms of two purchase and sale agreements.[4] *See* Docket No. 279. One sale agreement dealt with the Subsidiaries' Las Vegas Portfolio and the other dealt with the Texas/East Coast Portfolio. The closing of the sale of the Subsidiaries' Las Vegas Portfolio occurred on March 26, 2015 for $40,000,000, as had been agreed and approved by this Court. The Original PSA for the Texas/East Coast Portfolio, however, was terminated following the expiration of the Buyer's due diligence period.

2. Due to certain deficiencies identified with respect to the Texas/East Coast Portfolio, the Buyer sought a significant downward adjustment of the purchase price. Specifically, the Buyer identified deteriorating operating performance, deferred capital expenditures, and uncertain market conditions impacting the Texas/East Coast Portfolio as the bases for a price adjustment. The Buyer and the Debtor engaged in extensive arms' length negotiations over a revised purchase price. Ultimately, the parties agreed on a purchase price reduction for the Subsidiaries' Texas/East Coast Portfolio from $235,000,000 to $205,000,000, as reflected in the Fourth Amendment. There are no further due diligence conditions in the Reinstated PSA, and a holdback in the amount of $2,000,000 that was incorporated in the

---

[4] The original PSAs were attached to the Original Motion as Exhibits A and B, respectively.

Original PSA has been eliminated. The only other material contingency that remains pending, in addition to this Court's approval of the Reinstated PSA, is that certain governmental consents must be obtained for the transfer of some of the properties under the Reinstated PSA. The Debtor is confident that such consents will be timely obtained.

3. Notably, the Reinstated PSA has the support of the Beach Point Funds, which is now the fulcrum security. With the price reduction of $30,000,000 reflected in the Reinstated PSA, the Debtor does not expect that there will be sufficient proceeds available from the sale to repay the Beach Point Funds in full or to make distributions to unsecured creditors, much less equity holders of the Debtor. However, given the present state of the Texas/East Coast Portfolio, the carrying costs associated with any further delay in closing the sale, and the lack of any readily available alternatives, the Debtor believes that the sale of the Texas/East Coast Portfolio under the terms of the Reinstated PSA represents the highest and best offer for these assets, is supported by sound business judgment, and should be approved by this Court.

**Jurisdiction**

4. This Court has jurisdiction over this Supplemental Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (M), and (O).

5. Venue of these proceedings and this Supplemental Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code").

3

**Factual Background**

A. **General Background**

7. On August 28, 2014 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing this chapter 11 case. The Debtor continues in the possession of its properties, and is operating and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's case.

8. The Debtor and its direct and indirect subsidiaries are a commercial real estate company with indirect ownership interests in approximately 28 apartment complexes and other real property interests in Arizona, Georgia, Maryland, Nevada, South Carolina, Texas and Virginia. The Debtor is the ultimate parent within the organization.

B. **The Original Motion**

9. On March 4, 2015, the Debtor filed the *Debtor's Motion for Order: (I) Authorizing Debtor to Cause Its Non-Debtor Subsidiaries to Sell Their Assets Pursuant to the Portfolio Purchase and Sale Agreements; and (II) Authorizing Debtor to Take All Necessary and Appropriate Actions in Connection With The Foregoing* [Docket No. 255] (the "Original Motion"). Pursuant to the Original Motion, the Debtor proposed to cause the Subsidiaries to sell the bulk of their real estate assets to the Original Buyer for $275,000,000 in the aggregate, pursuant to the terms of two portfolio purchase and sale agreements, one for the sale of the Subsidiaries' Las Vegas Portfolio (three properties) in the amount of $40,000,000 and one for the sale of the Subsidiaries' Texas/East Coast Portfolio (twenty-three properties) in the amount of $235,000,000.

10. On March 11, 2015, the Court approved the Original Motion and entered the *Order: (I) Authorizing Debtor to Cause Its Non-Debtor Subsidiaries to Sell Their Assets Pursuant to the Portfolio Purchase and Sale Agreements; and (II) Authorizing Debtor to Take All Necessary and Appropriate Actions in Connection With the Foregoing* [Docket No. 279].

11. As mentioned above, the closing of the sale of the Subsidiaries' Las Vegas Portfolio occurred on March 26, 2015 for $40,000,000, as agreed pursuant to the original purchase and sale agreement and approved by this Court.

12. The sale of the Subsidiaries' Texas/East Coast Portfolio under the Original PSA did not close. The Buyer had 45 days to conduct due diligence under the Original PSA. Per the request of the Buyer, this time period was extended by the Debtor to April 24, 2015, when the Original PSA terminated. The Buyer required a significant price reduction in order to move forward to closing. The parties engaged in extensive, arms' length negotiations in an effort to reach a deal.

C. **The Reinstated PSA**

13. On May 14, 2015, the parties executed the Fourth Amendment, which reinstated the Original PSA subject to certain revised terms, including a reduction of the purchase price payable by the Buyer for the Texas/East Coast Portfolio from $235,000,000 under the Original PSA to $205,000,000 under the Reinstated PSA. A holdback of $2,000,000 under the Original PSA has been eliminated under the Reinstated PSA, as have any due diligence conditions. The only other material contingency that remains pending, in addition to this Court's approval of the Reinstated PSA, is that certain governmental consents must be obtained for the transfer of some of the properties under the Reinstated PSA. The Debtor is confident that such consents will be timely obtained.

5

14. As noted, the Reinstated PSA reflects a price reduction of $30,000,000 for the Subsidiaries' Texas/East Coast Portfolio. The Debtor agreed to such reduction and believes that it is reasonable under the circumstances for the following principal reasons:

- Upon the appointment of the Debtor's Chief Restructuring Officer on August 28, 2014, the properties in the Texas/East Coast Portfolio were highly distressed and in poor operating condition. Income from rental receipts received by the property manager were insufficient to address daily maintenance, deferred capital expenditures, unit turns for move-outs, or basic improvements for the properties. General upkeep services for the properties had been terminated. Rental income received by the property manager was used to pay payroll, utilities, fees, and emergency repairs to maintain minimum services.

- Site managers were instructed not to turn units due to a lack of cash to pay the costs required. This resulted in relatively no unit turns or make ready apartment units available for new move tenants. Also due the lack of funds, no evictions were being filed across the portfolio. Tenants were staying in units without paying for a long period of time giving an illusion of higher occupancy.

- Due to the allegations in a state court complaint filed by the Beach Point Funds, credit lines with secured lenders were frozen. Upon his appointment, the Chief Restructuring Officer initiated immediate communication with the secured lenders to discuss the path forward with the assets, availability of credit lines, and immediate life safety concerns.

- The operating performance of the Texas/East Coast Portfolio has continued its decline since the Buyer originally underwrote the portfolio using income statements and occupancy reports as of October 31, 2014. Since then, as of March 31, 2015, occupancy for the Texas/East Coast Portfolio, excluding one vacant property, has decreased from 62.4% to 56.9%. Such occupancy decline has contributed to a revenue decrease of approximately $1,900,000 and a net operating income decrease of approximately $1,530,000, when comparing the trailing twelve months ending October 31, 2014 to the trailing twelve months ending March 31, 2015. Assuming the above-mentioned decrease in net operating income of $1,530,000 and conservative capitalization rates of 7.5% - 8.5%, this would result in a decrease in value of the Texas/East Coast Portfolio by approximately $18,000,000 to $20,400.000.

- Through the use of debtor-in-possession financing, the Debtor has been able to stabilize the properties and basic maintenance is now being performed. There are not, however, sufficient funds available to resolve the significant deferred capital expenditures required for the Texas/East Coast Portfolio.

- During its due diligence period, the Buyer commissioned a property condition report by a nationally recognized third party engineering firm, which concluded that the present physical condition of the properties would require estimated capital expenditures totaling in excess of $79,000,000, which is over $32,000,000 more than the Buyer's initial budget for capital expenditures based on its review of the portfolio in September and October 2014.

- The decline in operating performance and property conditions at the Texas/East Coast Portfolio have directly and adversely impacted the Buyer's ability to secure favorable debt financing for the transaction. Lenders have either declined to participate or demanded a higher interest rate to mitigate the greater risk, widening their debt quotes by 250 basis points or more since the execution of the Original PSA. Assuming $200,000,000 in debt financing for the portfolio acquisition and associated capital expenditures and an increase of 250 basis points, the higher interest expense will decrease cash flow by $10,000,000 over the next two years, significantly impacting the Buyer's return and thus portfolio valuation.

- External market impacts have also reduced the value of the Texas/East Coast Portfolio. Recent volatility in debt markets due to the uncertainty around the availability of funding for government-sponsored entity financing, plus the uncertainty surrounding potential consequences on commercial real estate in Houston, Texas (where a significant number of the properties in the Texas/East Coast Portfolio are located) from the drop in oil prices since October 2014, have all contributed to increased execution risk.

- The Debtor has obtained updated opinions of value from the real estate brokers handling the sale of the Texas/East Coast Portfolio (Marcus & Millichap and Berkadia). It is the brokers' view, based on current market conditions, that the value of the Texas / East Coast Portfolio is currently approximately $197,000,000, nearly $8,000,000 less than the current purchase price of $205,000,000 contemplated by the Reinstated PSA.

15. In addition to the factors noted above, the Reinstated PSA is supported by the practical reality that the Debtor cannot afford any further delay. Even with all of the deferred maintenance expenses, the Texas/East Coast Portfolio is currently operating at a cash loss of over $1,000,000 per month. Further, the Debtor is incurring over $1,500,000 in monthly interest charges associated with the debt owed to the Beach Point Funds. Hence, with each passing day, the Debtor is incurring additional liabilities that will further dilute the proceeds of any sale.

7

16. Unfortunately, under the Reinstated PSA, the Debtor does not expect to have sufficient proceeds to pay its secured creditor, the Beach Point Funds, in full. As such, there will be no proceeds available from the sale for distribution to unsecured creditors, much less equity holders of the Debtor. The Beach Point Funds have consented to the sale.

## Relief Requested

17. Based on the foregoing facts, the Debtor is requesting that this Court enter an order substantially in the form attached hereto as **Exhibit C**: (i) authorizing the Debtor to cause its Subsidiaries to sell the Texas/East Coast Portfolio pursuant to the terms of the Reinstated PSA at a purchase price of $205,000,000, and (ii) authorizing the Debtor to take all necessary and appropriate actions that it determines are reasonably necessary in connection therewith.

## Basis for Relief

### Sound Business Reasons Exist for Causing the Debtor's Subsidiaries to Sell The Texas/East Coast Portfolio Pursuant to the Reinstated PSA

18. Section 363(b) of the Bankruptcy Code requires court approval for actions taken by a debtor outside the ordinary course of business. Case law provides that there must be sound business reasons for such actions. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). In this regard, courts normally defer to the debtor's business judgment so long as there is a legitimate business justification. *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)). Further, section 105(a) provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19. Here, the Debtor submits that causing the Subsidiaries to sell the Texas/East Coast Portfolio to the Buyer under the Reinstated PSA at a purchase price of $205,000,000 is supported by sound business reasons.

20. First, there are compelling economic factors justifying the reduced purchase price for the Texas/East Coast Portfolio reflected in the Reinstated PSA. Due to a lack of funding for deferred capital expenditures, the operational performance and physical condition of the properties has continued to deteriorate since October 2014 when the Buyer originally underwrote the portfolio. These factors, along with external market conditions, have increased the risk of the transaction, reduced profit margins, and limited the availability of debt financing for the Buyer.

21. Second, the Reinstated PSA represents the highest and best offer currently available to the Debtor and is actually higher than current broker estimates for the value of the Texas/East Coast Portfolio. The Debtor would expect that any alternative purchaser would require the same due diligence conditions that the Buyer previously insisted upon and which led to the price reduction reflected in the Reinstated PSA.

22. Third, any further delay would require the Debtor and the Subsidiaries to incur additional losses and/or interest expense, which would likely eliminate any benefit that could possibly be obtained from an alternative purchaser. The Texas/East Coast Portfolio is currently losing over $1,000,000 in cash per month, a loss that the Debtor can no longer sustain. In addition, the Debtor is incurring over $1,500,000 of monthly interest charges associated with the Beach Point Funds' debt. This is another cost that the Debtor cannot afford, especially given that there are already insufficient proceeds expected from the Reinstated PSA to pay the Beach

9

Point Funds in full. Notably, the Beach Point Funds have consented to the sale under the Reinstated PSA.

23. Finally, as with the Original PSA, the effectiveness of the Reinstated PSA is specifically conditioned upon this Court's entry of an order approving this Supplemental Motion. For the reasons set forth above, the Debtor urges the Court to approve the Reinstated PSA because it will maximize the value of the Texas/East Coast Portfolio for the benefit of this estate.

24. Based on the foregoing, the Debtor seeks authority pursuant to sections 105 and 363 of the Bankruptcy Code to cause its Subsidiaries to consummate the contemplated sale of the Texas/East Coast Portfolio under the Reinstated PSA at a purchase price of $205,000,000, and to take all necessary and appropriate actions that the Debtor determines are reasonably necessary in connection therewith.

### Notice

25. Notice of this Supplemental Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtor's principal secured lenders; (c) the creditors holding the 20 largest unsecured claims; (d) counsel to the Buyer; and (e) those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

26. No prior request for the relief sought in this Supplemental Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court (i) grant this Supplemental Motion and authorize the Debtor to cause the Sellers to sell the Texas/East Coast Portfolio to the Buyer pursuant to the terms of the Reinstated PSA, (ii) authorize the Debtor to take actions that it determines are reasonably necessary in connection with the foregoing; and (iii) grant such other and further relief as is just and proper.

Dated:  May 15, 2015                          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Richard M. Pachulski (CA Bar No. 90073)
Maxim B. Litvak (CA Bar No. 215852)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  rpachulski@pszjlaw.com
         mlitvak@pszjlaw.com
         pkeane@pszjlaw.com

Counsel to the Debtor and Debtor in Possession