IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

VARIANT HOLDING COMPANY, LLC;

Debtor.

Chapter 11

No. 14-12021-BLS

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY PENDING APPEAL OF FINAL ORDER APPROVING FOURTH DIP FINANCING LOAN

### INTRODUCTION

Conix WH Holdings, LLC ("Conix WH"), Conix, Inc. ("Conix"), Numeric Holdings Company, LLC, ("Numeric"), Walker's Dream Trust ("Walker's"), Forward Progress, LLC ("Forward Progress"), and Variant Royalty Group, LP ("Variant Royalty", and collectively with Conix WH, Conix, Numeric, Walker's, and Forward Progress, the "Equity Holders"), through undersigned counsel, move this Court pursuant to Fed.R.Bankr.P. 8007 for entry of an order granting a stay pending the Equity Holders' appeal of the *Final Order Approving Fourth Amendment and Permitted Amendments to Debtor-In-Possession Loan, Security and Guaranty Agreement* (the "4th DIP Order") (DE 531).

This Court has jurisdiction to consider the stay relief requested in this motion (the "Motion") pursuant to 28 U.S.C. § 1334(b) and Federal Rule of Bankruptcy Procedure 8007.

The Equity Holders seek a stay pending appeal of this Court's 4th DIP Order, which authorized the Debtor to immediately borrow funds at 14% interest and to then hold those funds in a reserve for the sole benefit of the bankruptcy estate's professionals.

## BACKGROUND

1. On 8/28/2014, Debtor, Variant Holding Company, LLC ("Debtor"), filed its voluntary petition for relief under Chapter 11.

2. One year later, on 8/28/2015, the Debtor filed its *Debtor's Motion For Entry Of Interim And Final Orders Approving Fourth Amendment To Debtor-In-Possession Loan, Security & Guaranty Agreement And Scheduling A Final Hearing* [Docket No. 487] (the "4th Financing Motion"). Through the 4th Financing Motion, the Debtor, for the first time, sought authority to borrow beyond what was needed for operating the properties. Instead, the Debtor sought authority to borrow funds at 14% interest, and place those funds in a reserve fund to secure the future payment of accrued professionals' fees.

3. The majority of the funds to be borrowed (approximately $9 million of the $10.7 million) are for the sole benefit of the Debtor's professionals, including the Debtors counsel and the CRO. (*See 9/23/15 Transcript, p.* 3:18-22).

4. At the time the 4th Financing Motion was filed, and the 4th DIP Order was entered, there was no pending interim or final request for allowance and payment of professional fees.

5. Thus, considering the likelihood of success on the merits of the appeal, the prejudice to the Equity Holders, and the lack of prejudice to the Estate, a stay of this 4th DIP Order, pending resolution of the Equity Holders' appeal, is just and proper.

## II.   LEGAL ARGUMENT

The granting of a stay pending appeal "is by its design a flexible tool which permits a bankruptcy court to uniquely tailor relief to the circumstances of the case, so that the appellate process will neither undo nor overwhelm the administration of the bankruptcy case." *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 229 (Bankr. N.D. Tex. 2002). Under Federal Rule of Bankruptcy Procedure 8007, a motion for a stay of the judgment, order, or

decree of a bankruptcy judge must first be presented to the bankruptcy judge. The general purpose of such an order would be to "protect the rights of all parties in interest." Fed. R. Bankr.P. 8005.

In determining whether a stay should issue pursuant to Bankruptcy Rule 8007, the Court should apply the familiar factors of: (i) the Equity Holders' likelihood of success on the merits of the appeal, (ii) whether the Defendants will be irreparably harmed if the stay is not granted, (iii) the harm to the Debtor and its Estate if a stay is granted, and (iv) the public interest. *In re Eagle Enters., Inc.*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001); *In re Beach First Nat'l Bancshares, Inc.*, 2011 WL 2441501 (Bankr. D.S.C. 2011); *FDIC v. Imperial Capital Bancorp, Inc.*, 2011 WL 5600542 (S.D. Cal. 2011); *In re Hagel*, 184 B.R. 793, 798–99 (9th Cir. BAP 1995).

### A. The Equity Holders Are Likely to Succeed on the Merits of their Appeal.

In order to show likelihood of success on the merits, an appellant seeking a stay pending appeal must show "that she has a substantial case for relief on the merits." *Leiva–Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). A movant need not, however, "demonstrate that it is more likely than not that [he or she] will win on the merits." *Id.* at 966. The Supreme Court has held that "[i]t is not enough that the chance of success on the merits be 'better than negligible,'" and that "[m]ore than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here, the Equity Holders have a substantial case for relief on the merits.

It was the Debtor's burden to demonstrate that the borrowing was reasonable, necessary, and in the best interests of the estate and its creditors. The Debtor and its CRO failed to meet this burden, and thus the Equity Holders' have a substantial case for relief on appeal.

The CRO testified that the Debtor intended to borrow $9 million at 15% interest to fund a reserve for estate professionals, but the Debtor could present no basis as to whether the amounts to be borrowed were reasonable, necessary, or in the best interests of the estate. Only the testimony of the CRO was offered, and he admitted that he had not reviewed billings to determine if they were reasonable, necessary and in the best interests of the estate. (*9/21/2015 Hearing Transcript,* p.63:24 – p.64:20, p. 69:4-11).

The Debtor failed to establish the exercise of reasonable business judgment. The Debtor's CRO, Brad Sharp, and other estate professionals are interested parties and the primary beneficiaries of the 4th DIP Order. Because the CRO is not disinterested, the Court erred in deferring to his justifications. *See In re LA Dodgers LLC*, 457 B.R. 308, 313 (Bankr.D.Del. 2011). The CRO failed to establish any independent justification for the proposed financing. The Debtor's Professionals are acting in their own best interests, and not as fiduciaries promoting the best interests of the bankruptcy estate. Through the Financing Motion the Debtor seeks to immediately borrow funds at a 14% interest rate even though there is no exigency or even a need to borrow the funds now. The rationale from Mr. Sharp as to why funds were going to be borrowed now, was based on a feared default on November 1, and the ability of Beach Point to cease funding upon such event. This explanation alone, demonstrates a conflict in the exercise of business judgment.

The CRO has also refused to disclose his dealings with Beach Point, the Estate's largest Secured Creditor and the proposed DIP lender, which dealings formed the business justification for the 4th Financing Motion. Further, how could the Financing Agreement possibly be an arms length transaction, if all details are not disclosed, and Mr. Sharp refuses to answer questions about other negotiations based on a claimed common interest privilege.

The Debtor failed to demonstrate the necessity or authority to modify the Beach Point Settlement Agreement. The 4th DIP Order would modify the Settlement Agreement by using DIP proceeds to pay estate professionals. (*See, e.g., 9/21/2015 Hearing Transcript,* p. 52:1- p. 56:7). The payment structure created by the 4th DIP Order significantly impairs the

Equity Holders who guaranteed the Beach Point indebtedness. (*9/21/2915 Hearing Transcript*, p. 57:5-8). The terms of the Beach Point Settlement Agreement cannot be modified without the consent of all parties to the agreement that are materially impacted by the modification, which, in this case, includes the Equity Holders. Despite the Equity Holders objections to the 4th Financing Motion and without any valid basis for the Debtor unilaterally modifying the Settlement Agreement, the Court entered its 4th DIP Order modifying the Settlement Agreement.

The 4th DIP Order provides security for fees that were previously incurred in violation of 11 U.S.C. §364. *In re Olde Block Owner, LLC*, 448 B.R. 482, 495 (Bankr.N.D.Ill. 2011). The CRO and other estate professionals' administrative claims for fees – all of which were incurred as unsecured administrative claims – will now be secured by the DIP proceeds and a reserve fund. The Estate's Professionals fees for the last year of this case were incurred without requiring security. In fact, such Professionals did not file a fee application or otherwise seek payment prior to entry of the 4th DIP Order. The Debtor could not demonstrate any need for elevating the estate professionals' fees, and thus there was no justification for the borrowing under §364. *Id.*

There is a substantial likelihood that the Appeal will be resolved in the Equity Holders' favor, and as such, a stay of the bankruptcy proceedings is warranted.

### B. The Equity Holders Will be Irreparably Injured if the Stay is Not Granted.

The second consideration in the determination of whether to grant a stay is whether irreparable harm could result if the stay is not granted. "The loss of appellate review itself is a form of irreparable injury." *Mountain Paradise Vill., Inc. v. Fed. Nat. Mortgage Ass'n*, 2013 U.S.Dist. LEXIS 148837, at *5 (D.Nev. October 15, 2013). In other words, where any successful outcome to the Equity Holder's appeal would likely be rendered moot, irreparable harm could likely result if the stay is not granted. *Id.* The required degree of irreparable harm increases as the probability of success decreases." *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

The 4th DIP Order effectively converts accrued administrative claims – for which there is no recourse against the Equity Holders – into indebtedness to Beach Point that certain Equity Holders and others may have guaranteed.

The Equity Holders will also be irreparably injured by accruing interest on the borrowed fund. The 4th DIP Order authorizes the Debtor to borrow approximately $9 million, not for operating expenses but to secure the eventual payment of accrued fees of estate professionals. Once borrowed, interest will being accruing at 14% per annum. Once borrowed, repayment of these funds (and accruing interest) would not only take priority over any payment to the Equity Holders from an eventual sale of assets, but will increase the deficiency guaranteed by the Equity Holders on a dollar-for-dollar basis. (*See 9/21/2015 Hearing Transcript*, p. 47:18-20). In other words, every dollar of interest that accrues is an additional dollar of exposure on the Equity Holders' guarantees of the Debtor's loans from Beach Point.

### C. A Stay Will not Harm the Debtor

No harm to Variant will result from a stay of the 4th DIP Order. Variant sought entry of the 4th DIP Order primarily to create a reserve fund that secures the eventual payment of the Debtor's professionals. While the Debtors' professionals have not been paid their fees since the petition date, they hold administrative priority claims for such fees, and there is presently no interim or final orders approving fees incurred and directing payment. At great expense to the bankruptcy estate, the Debtor is elevating the professionals' accrued fees to secured claims. The Debtor's CRO testified that he and the rest of the Debtor's professionals would continue to represent the Debtor even without the 4th DIP Order being entered. (*9/21/2015 Hearing Transcript*, p. 49:4- p. 50:11). In effect, whether or not the 4th DIP Order is entered will not affect the estate professionals continuing to represent the estate.

The Debtor has made no apparent progress towards proposing – let alone confirming

– a plan of reorganization, and has no strategy in place for selling the subsidiary assets. (*9/21/2015 Hearing Transcript, p. 33:3-5*). . There is no urgency in borrowing funds to secure eventual payment of estate professionals.

### D. Public Interest Weighs Decidedly in Favor of Granting a Stay.

There is a strong public interest in ensuring that the Courts and bankruptcy process are used for the benefit of all creditors and not solely to advantage estate professionals at the expense of creditors and equity holders. Incurring debt, without any justification other than to ensure that funds are placed in reserve to ensure payment of estate professionals in light of a pending drop-dead date and potential foreclosure contravenes this public interest. Entering a stay preserves the status quo with the estate professionals retaining administrative claims, where they share pro-rata with other administrative claimants in the event of a default and foreclosure. *In re American Resource Management Corp.*, 51 B.R. 713, 721 (Bankr.D.Utah 1985). Granting a stay is necessary to preserve the intent and purposes of the bankruptcy code, and is therefore consistent with this important public interest.

### E. The Equity Holders Should Not Be Required To Pay a Bond.

Rule 8005 does not condition a stay pending appeal on the posting of a *supersedeas* bond. *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 229 (Bankr. N.D. Tex. 2002). Whether the proponent of a stay pending appeal is required to post a bond is within the Court's discretion. *S. Edge LLC v. JPMorgan Chase Bank, N.A.*, 2011 WL 1626567, at *6 (D. Nev. Apr. 28, 2011). Here, the Court should exercise its discretion not to require the Equity Holders to post a bond. As discussed above, there is no prejudice to the Debtor, as its professionals are committed to continue representing the Debtor whether or not the reserve is funded, and there are no pending interim or final orders approving professional's fees.

## III. CONCLUSION

For the foregoing reasons, this Court should grant a stay pending resolution of the Equity Holders' appeal of the 4th DIP Order.

DATED: October 13, 2015            CIARDI CIARDI & ASTIN.

*[signature]*

Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 North King Street
Wilmington, Delaware 19081
Telephone: (302) 658-1000
Facsimile: (302) 658-1300
Email: jmclaughlin@ciardilaw.com

-and-

Michael McGrath (AZ Bar No. 6019)
(*Pro hac vice* application pending)
MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Telephone: (520) 624-8886
Facsimile: (520) 798-1037
Email: mmcgrath@mcrazlaw.com
       ecf@mcrazlaw.com

*Co-Counsel to Conix WH Holdings, LLC, Conix, Inc., Numeric Holdings Company, LLC, Walker's Dream Trust, Variant Royalty Group, LP and Forward Progress, LLC*