IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC, et al.,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF SUBSIDIARY DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO EMPLOY AND RETAIN DEVELOPMENT SPECIALISTS, INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL PERSONNEL, AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED SERVICES, *NUNC PRO TUNC* AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession other than Variant (defined below) (collectively, the "Subsidiary Debtors") file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Subsidiary Debtors to retain Development Specialists, Inc. ("DSI"), pursuant to the terms and conditions of that certain letter agreement between DSI and Variant dated August 28, 2014 (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Variant Holding Company, LLC (4044); Laser Focus Holding Company, LLC (9153); Laser Focus Commercial Investments, LLC (9326); Houston 2 Apartments, LLC (8886); 10400 Sandpiper Apartments, LLC (6556); 10301 Vista Apartments, LLC (8886); Houston 14 Apartments, LLC (7563); 12500 Plaza Apartments, LLC (7563); Pines of Westbury, Ltd (7563); 201 Ashton Oaks Apartments, LLC (7563); 13875 Cranbrook Forest Apartments, LLC (7563); 5900 Crystal Springs Apartments, LLC (7563); 7170 Las Palmas Apartments, LLC (7563); 11911 Park Texas Apartments, LLC (7563); 1201 Oaks of Brittany Apartments, LLC (7563); 3504 Mesa Ridge Apartments, LLC (7563); 667 Maxey Village Apartments, LLC (7563); 17103 Pine Forest Apartments, LLC (7563); 7600 Royal Oaks Apartments, LLC (7563); 4101 Pointe Apartments, LLC (7563); The Oaks at Stonecrest Apartments, LLC (5589); Numeric Commercial Investments, LLC (9443); FX3 Apartment Investors, LLC (4055); Royal Numeric FX Investments, LLC (6908); Broadmoor Apartments, LLC (7888); Chesapeake Apartments, LLC (5716); Holly Ridge Apartments, LLC (7117); Holly Tree Apartments, LLC (4288); Preston Valley Apartments, LLC (3356); Ravenwood Hills Apartments, LLC (8264); River Road Terrace Apartments, LLC (6396); Sandridge Apartments, LLC (3592); Majestic Heights Apartments, LLC (2174); Sonterra Apartments, LLC (6220); Toscana Villas Apartments, LLC (8873). The Debtors' service address is: Variant Holding Company, LLC, c/o Development Specialists, Inc., 333 S. Grand Ave, Suite 4070, Los Angeles, CA 90071-1544.

DOCS_DE:201455.7 89703/002

"Engagement Letter"),[2] as modified by the amended engagement letter dated September 19, 2014 (the "Amended Engagement Letter"),[3] the Professional Fee Letter Agreement in connection with the *Final Order Approving Fourth Amendment to Debtor-in-Possession Loan, Security & Guaranty Agreement and Scheduling a Final Hearing* [Docket No. 531], the Variant DSI Retention Order (as defined below), and that certain letter agreement between DSI and the Subsidiary Debtors dated January 12, 2016 (the "Subsidiary Engagement Letter"), to (i) provide Bradley D. Sharp ("Mr. Sharp") as Chief Restructuring Officer ("CRO") of the Subsidiary Debtors, (ii) provide additional personnel (the "Additional Personnel"), (iii) provide financial advisory and restructuring-related services to the Subsidiary Debtors, in each instance *nunc pro tunc* as of the Petition Date (defined below); and (iv) granting certain related relief. In support of this Motion, the Subsidiary Debtors rely upon the declaration of Mr. Sharp, a Senior Managing Director of DSI (the "Sharp Declaration"), attached hereto as **Exhibit B** and incorporated herein by reference, and respectfully represents as follows:

## Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Subsidiary Debtors confirm their consent pursuant

---

[2] A copy of the Engagement Letter is attached as Exhibit A to the *Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc as of the Petition Date* (the "Motion") [Docket No. 4] (the "Variant DSI Retention Motion"), as modified and approved by the *Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing Debtor to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services for Such Debtor, Nunc Pro Tunc as of the Petition Date* [Docket No. 154].

[3] A copy of the Amended Engagement Letter is attached as Exhibit 3 to the *Supplement to Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc as of the Petition Date* (the "Supplement") [Docket No. 63].

to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## Background

4. On August 28, 2014, Debtor Variant Holding Company, LLC ("Variant") filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing its chapter 11 case. Variant's chapter 11 case is administered under Case No. 14-12021 (BLS). Variant continues in the possession of its properties, and is operating and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Variant's chapter 11 case.

5. On January 12, 2016 (the "Petition Date"), each of the Subsidiary Debtors other than Variant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Subsidiary Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Subsidiary Debtors' chapter 11 cases.

6. Variant and the Subsidiary Debtors are a commercial real estate company with direct and indirect ownership interests in 23 real properties in various states (the "Properties"). Variant is the ultimate parent within the organization.

**DSI's Engagement and Qualifications**

7. DSI was originally retained after the filing of Variant's chapter 11 case to provide restructuring services in support of Variant's obligations as a chapter 11 debtor-in-possession. DSI's retention and Mr. Sharp's appointment as CRO to Variant was approved pursuant to the *Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing Debtor to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services for Such Debtor, Nunc Pro Tunc as of the Petition Date* [Docket No. 154] (the "Variant DSI Retention Order").

8. With the filing of the Subsidiary Debtors' cases, the Subsidiary Debtors have determined that obtaining the ongoing services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance their ability to (a) operate and meet their administrative obligations in these cases and (b) preserve and maximize the value of their assets. As such, the Subsidiary Debtors have chosen to utilize DSI personnel as appropriate and have appointed Mr. Sharp of DSI to the position of CRO. Specifically, subject to the terms of the Subsidiary Engagement Letter, the Subsidiary Debtors propose to utilize DSI personnel as appropriate and Mr. Sharp as CRO, effective as of the Petition Date. DSI has been engaged by Variant as financial advisor since August 7, 2014.

9. Prior to the Petition Date, the Subsidiary Debtors' operating agreements were amended to appoint Mr. Sharp as CRO of each of the Subsidiary Debtors, subject to the supervision of Variant's board. Variant is the ultimate parent, and party in control, of the Subsidiary Debtors. The board of managers of Variant consists of Messrs. R. Todd Neilson, M. Freddie Reiss, or Michael VanderLey. Variant's board has approved Mr. Sharp's retention at the Subsidiary Debtors.

10. DSI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, DSI has provided (a) restructuring and turnaround advisory services for the following companies: Namco Capital Group, Inc., Estate Financial Mortgage Fund, LLC, Reynaldo's Mexican Food Manufacturer, Inc., Rouge Industries, and Vista Hospitals; and (b) financial advisory services to companies, secured creditors, committees or trustees in the following matters: Dana Corporation, Dreier, LLP, London Fog, Precision Tool & Die Machine Company, and United Producers, Inc..

11. Further, as a result of prepetition work performed on behalf of the Subsidiary Debtors and its work on behalf of Variant since the commencement of Variant's chapter 11 case in August 2014, DSI has acquired significant knowledge of the Subsidiary Debtors and is familiar with the Subsidiary Debtors' financial affairs, debt structure, operations and related matters. Accordingly, DSI has developed relevant experience regarding the Subsidiary Debtors that will assist it in providing effective and efficient services to the Subsidiary Debtors in these cases.

12. As such, the Subsidiary Debtors believe that DSI is well qualified and able to advise the Subsidiary Debtors in a cost-effective, efficient and timely manner. The Subsidiary Debtors have been advised by DSI that it will endeavor to coordinate with the other professionals retained in these bankruptcy cases to eliminate unnecessary duplication or overlap of work. Therefore, the Subsidiary Debtors submit that the retention and employment of DSI is in the best interests of their estates, creditors and other stakeholders in these cases.

### Services to Be Provided by DSI

13. Consistent with the terms of the Subsidiary Engagement Letter, Mr. Sharp as CRO and the Additional Personnel are charged with assisting the Subsidiary Debtors with

their various operational, administrative and financial needs arising in connection with these chapter 11 cases. More specifically, but without limitation, the anticipated services include the following:

    (a)    providing Mr. Sharp to act as Chief Restructuring Officer of the Subsidiary Debtors. Mr. Sharp will report to the Bankruptcy Court, as well as complying with the Subsidiary Debtors' corporate governance requirements;

    (b)    implementing and prosecuting the chapter 11 cases, including, but not limited to, disposition of assets, negotiations with creditors, reconciliation of claims and confirmation of a plan;

    (c)    in addition, other services may include:

        (i) assisting the Subsidiary Debtors in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

        (ii) advising and assisting the Subsidiary Debtors, the Subsidiary Debtors' counsel and other professionals in responding to third party due diligence requests, including with respect to potential sales of the Subsidiary Debtors' assets.

        (iii) attending meetings and assisting in communications with parties in interest in these cases and their professionals, including the Subsidiary Debtors' secured lenders, any official committee(s) appointed in these chapter 11 cases and the Office of the United States Trustee (the "U.S. Trustee");

        (iv) providing litigation advisory services with respect to accounting matters, along with expert witness testimony on case related issues; and,

        (v) rendering such other general business consulting or such other assistance as Subsidiary Debtors' counsel may deem necessary and which are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these cases.

### DSI's Fees

14.     As set forth in the Subsidiary Engagement Letter, for DSI's services rendered in connection with the restructuring advisory function of the scope of services, the

Subsidiary Debtors have agreed to compensate DSI on an hourly basis. As set forth in the Subsidiary Engagement Letter, the hourly rates, effective 2016, for Mr. Sharp and the Additional Personnel are as follows:

a) Bradley D. Sharp — $595.00/hr.
b) R. Brian Calvert — $590.00/hr.
c) Eric J. Held — $450.00/hr.
d) Matthew P. Sorenson — $380.00/hr.
e) Jeffery S. Gasbarra — $320.00/hr.
f) Shelly L. Cuff — $280.00/hr.
g) William G. Brandt — $175.00/hr.
h) Mandana Yedidsion — $125.00/hr.

15. In addition to the fees outlined above, DSI will bill the Subsidiary Debtors for reimbursement of reasonable costs and expenses incurred on the Subsidiary Debtors' behalf during the engagement. Such costs and expenses may include, among others, charges for messenger services, photocopying, travel expenses, long distance telephone charges, postage and other charges customarily invoiced by consulting firms. Airfare for international flights will be charged at the business class fare.

16. Notwithstanding anything to the contrary in the Subsidiary Engagement Letter, DSI is not seeking any "success," deferred, "back end" or similar fees from the Subsidiary Debtors for this engagement.

17. As of the Petition Date, DSI has received the sum of $850,000 on account of work performed, or to be performed, for the Subsidiary Debtors. Variant paid this compensation to DSI from proceeds of Variant's debtor-in-possession financing facility, and such compensation has been allocated by DSI to its work on behalf of the Subsidiary Debtors.

DSI is current with respect to the Subsidiary Debtors as of the Petition Date, but has not yet completed a final reconciliation as of the Petition Date. Upon final reconciliation of the amount actually incurred prepetition, any balance remaining from the payments to DSI will be credited to the Subsidiary Debtors and utilized as DSI's retainer to apply to postpetition fees and expenses approved by this Court.

18. Because DSI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. DSI will, however, submit certain reports described below and as provided for in the Variant DSI Retention Order entered previously by the Court.

### Reporting Requirements

19. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Subsidiary Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol") (the "Protocol"), DSI intends to file with the Court and serve on the Subsidiary Debtors, the U.S. Trustee and any statutory committee(s) appointed in these cases (collectively, the "Committee" and, together with the Subsidiary Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all DSI personnel assigned to this engagement. The Staffing Report (and DSI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

20. In addition, DSI will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis. The Compensation Reports would summarize the service provided,

identify the compensation earned, itemize expenses incurred and provide for an objection period. All such compensation would be subject to review by this Court if an objection is filed.

21. The Staffing Reports and Compensation Reports will be in the same forms that have been filed by DSI since its retention in Variant's chapter 11 case.

### Indemnification and Liability Limitation Provisions

22. The Subsidiary Engagement Letter contains standard indemnification and limitation of liability language with respect to DSI's services. Notwithstanding any provisions of the Subsidiary Engagement Letter to the contrary, in accordance with the Protocol, DSI has agreed otherwise, as set forth below.

23. Notwithstanding anything to the contrary in the Subsidiary Engagement Letter, the Subsidiary Debtors are permitted to indemnify those persons acting as executive officers only on the same terms as provided to the Subsidiary Debtors' other officers and directors under the corporate bylaws and applicable state law, in addition to insurance coverage under the Subsidiary Debtors' director and officer insurance policies.

24. There will be no other indemnification of DSI or any of its affiliates.

25. Finally, notwithstanding any provisions of the Subsidiary Engagement Letter to the contrary, DSI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to DSI's engagement in these cases.

**Legal Basis for Relief Requested**

A.    **The Subsidiary Debtors Have Exercised Sound and Prudent Business Judgment.**

26.    Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

27.    The retention of corporate officers, including in conjunction with the retention of associated turnaround and advisory firms to provide related services, is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re FCC Holdings, Inc.*, Case No. 14-11987 (CSS) (Sept. 3, 2014) (authorizing retention of advisory firm which had been serving as restructuring advisors for the debtors during the five-month period prior to the petition date and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re Mineral Park, Inc.*, Case No. 14-11996 (KJC) (Aug. 26, 2014) (authorizing retention of advisory firm and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re QCE Finance LLC*, Case No. 14-10543 (PJW) (Apr. 25, 2014) (authorizing retention of advisory firm which had been serving as chief administrative advisors and providing other services to the debtors for approximately five months prior to the petition date and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re USEC, Inc.*, Case No. 14-10475 (CSS) (Apr. 9, 2014) (authorizing retention of advisory firm which had been providing the services of a chief restructuring officer to the debtors for approximately five months prior to the

petition date and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re Archbrook Laguna Holdings LLC*, No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Calpine Corp.*, No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and chief financial officer pursuant to section 363 of the Bankruptcy Code).

28. Based upon the forgoing, the Subsidiary Debtors submit that retaining DSI to provide Mr. Sharp as CRO and the Additional Personnel, and the financial advisory and restructuring-related services, upon the terms set forth in the Subsidiary Engagement Letter, this Motion and any order approving this Motion, would enable the Subsidiary Debtors to most efficiently administer these cases and preserve and maximize the value of the estates. The Subsidiary Debtors require the assistance of qualified and experienced personnel to assist in these matters. Thus, the Subsidiary Debtors believe that it would be in the best interests of their estates, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective as of the Petition Date.

29. The Subsidiary Debtors believe that DSI's fee structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to DSI for comparable engagements. In addition, given the numerous issues DSI may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), DSI's commitment to the variable level of time and effort necessary to address all such related issues as

they arise and the market prices for DSI's services for engagements of this nature in an out-of-court context, the Subsidiary Debtors believe that the DSI fee arrangement is fair and reasonable.

**B.     The Proposed Retention Comports with the Bankruptcy Code and the Protocol.**

30.     DSI will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because the Subsidiary Debtors are seeking to retain DSI and a CRO pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, DSI is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, the Subsidiary Debtors requested that fees and expenses of DSI incurred in the performance of the above-described services be treated as an administrative expense of the Subsidiary Debtors' chapter 11 estates and be paid by the Subsidiary Debtors in the ordinary course of business, without the need for DSI to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

31.     In addition, because the Subsidiary Debtors are not seeking to retain DSI as a professional under section 327 of the Bankruptcy Code, there is no requirement that DSI, Mr. Sharp or any of the Additional Personnel be disinterested. Additional information about DSI's connections to parties in interest in these cases is described in the Sharp Declaration.

**C.     The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code.**

32.     Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental*

*Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Communications Corp. v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

### No Prior Request

33. Except as noted above regarding Variant's retention of DSI and appointment of Mr. Sharp as CRO, no prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

### Notice

34. The Subsidiary Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) Variant's and the Subsidiary Debtors' principal secured lenders; (c) the creditors holding the 20 largest unsecured claims against the Subsidiary Debtors (as applicable, on a consolidated basis); (d) the creditors holding the 20 largest unsecured claims against Variant; and (e) those persons who have previously requested notice pursuant to Bankruptcy Rule 2002 in Variant's case.

[Remainder of page intentionally left blank]

WHEREFORE, the Subsidiary Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) granting the relief sought herein and (b) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: ~~December 10, 2015~~
       January 14, 2016

VARIANT HOLDING COMPANY, LLC,
By its Board of Managers, as the ultimate parent
and party in control of the Subsidiary Debtors

By: *[signature]*

R. Todd Neilson
Manager

_____
M. Freddie Reiss
Manager

_____
Michael VanderLey
Manager

WHEREFORE, the Subsidiary Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (a) granting the relief sought herein and (b) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: ~~December ___, 2015~~ January 14, 2016

VARIANT HOLDING COMPANY, LLC,
By its Board of Managers, as the ultimate parent and party in control of the Subsidiary Debtors

By:

_____
R. Todd Neilson
Manager

_____/s/ M. Freddie Reiss_____
M. Freddie Reiss
Manager

_____
Michael VanderLey
Manager

14

WHEREFORE, the Subsidiary Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) granting the relief sought herein and (b) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: ~~December    2015~~
January 14, 2016

VARIANT HOLDING COMPANY, LLC,
By its Board of Managers, as the ultimate parent and party in control of the Subsidiary Debtors

By: _____

R. Todd Neilson
Manager


_____
M. Freddie Reiss
Manager

*(signature)*
_____
Michael VanderLey
Manager