# EXHIBIT A

# BUDGET

**Variant Holding Company, LLC**
**Weekly Cash Flow Forecast - FX3**
**8 - Week Budget**

| Week Ending: | 15-Jan Week 1 | 22-Jan Week 2 | 29-Jan Week 3 | 5-Feb Week 4 | 12-Feb Week 5 | 19-Feb Week 6 | 26-Feb Week 7 | 4-Mar Week 8 | Total Week 1-8 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Unrestricted Cash Balance | - | - | - | - | - | - | $114,686 | - | - |
| Cash Receipts to Lockbox Acct. | 985,899 | | | | | 1,050,636 | | | 2,036,535 |
| Interest | (518,272) | | | | | (246,986) | | | (765,258) |
| Tax Reserve | (143,744) | | | | | (143,744) | | | (287,488) |
| Insurance Reserve | (159,656) | | | | | (159,656) | | | (319,311) |
| Replacement Reserve | (56,458) | | | | | | | | (56,458) |
| Servicing Fees & Other | (250) | | | | | (250) | | | (500) |
| Lender Professional Fees | - | | | | | (110,000) | | | (110,000) |
| Waterfall Funding to Operating Acct. | 107,518 | - | - | - | - | 390,000 | - | - | 497,518 |
| Other (Replacement Reserves) | - | - | - | - | - | - | - | - | - |
| Total Property Receipts | 107,518 | - | - | - | - | 390,000 | - | - | 497,518 |
| | | | | | | | | | |
| Property Level Disbursements | | | | | | | | | |
| Payroll Expenses | (80,300) | - | (80,300) | - | (80,300) | - | (80,300) | - | (321,200) |
| Advertising & Marketing | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (20,000) |
| General & Admin Expenses | (107,127) | (42,500) | - | (77,127) | (50,000) | - | - | (77,127) | (353,881) |
| Repairs & Maintenance | (24,717) | - | - | - | (53,917) | (234,814) | - | - | (313,448) |
| Utilities | (32,500) | (32,500) | (32,500) | (39,500) | (32,500) | (32,500) | (32,500) | (39,500) | (274,000) |
| Reserve for Utilities | - | - | (65,000) | | | | | | (65,000) |
| Capital Improvements | - | | | | | | | | - |
| Accrued Payables | (418,821) | | | | | | | | (418,821) |
| Lender Professional Fees (from DIP) | - | | | | (377,500) | | | | (377,500) |
| Miscellaneous (Taxes/Insurance/Legal) | (5,500) | (5,500) | (5,500) | (110,241) | (5,500) | (5,500) | (19,500) | (5,500) | (162,741) |
| Total Property Disbursements | (671,465) | (83,000) | (185,800) | (229,368) | (602,217) | (275,314) | (134,800) | (124,627) | (2,306,591) |
| Net Property Receipts/(Disbursements) | (563,946) | (83,000) | (185,800) | (229,368) | (602,217) | 114,686 | (134,800) | (124,627) | (1,809,072) |
| | | | | | | | | | |
| Chapter 11 Activity | | | | | | | | | |
| Debtors' Professional Fees / Retainers | - | | | | | | | | - |
| Creditors' Comm. Prof. Fees / Retainers | - | | | | | | | | - |
| Bankruptcy Filing Fees | (18,887) | | | | | | | | (18,887) |
| US Trustee Fees | - | | | | | | | | - |
| Total Chapter 11 Disbursements | (18,887) | - | - | - | - | - | - | - | (18,887) |
| Cash Balance after Ch. 11 Expenses | (582,833) | (83,000) | (185,800) | (229,368) | (602,217) | 114,686 | (20,114) | (124,627) | (1,827,959) |
| DIP Borrowing | 582,833 | 83,000 | 185,800 | 229,368 | 602,217 | - | 20,114 | 124,627 | 1,827,959 |
| Ending Unrestricted Cash Balance | - | - | - | - | - | $114,686 | - | - | - |

# EXHIBIT B

## POST-PETITION LOAN DOCUMENT EXCEPTIONS

- Loan Agreement,[1] § 4.1.30 (Special Purpose Entity/Separateness) – Subject to the proviso below, the FX3 Portfolio Debtors are not obligated to comply with Section 4.1.30 and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable); provided, that the FX3 Portfolio Debtors shall not take any action or engage in any transaction (including, without limitation, by filing any motion or application seeking approval in the Bankruptcy Case or otherwise consenting thereto) that would constitute a violation of this provision to the extent the same involves a transaction with a third party that is out of the ordinary course of business for the FX3 Portfolio Debtors (including, without limitation, any transaction seeking to merge, consolidate or combine any FX3 Portfolio Debtor into or with any other Person) except a transaction that is otherwise permitted by or consented to in this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.1 (Existence; Compliance with Legal Requirements) – The FX3 Portfolio Debtors shall only be obligated to keep the Properties in good working order and repair, and to make reasonably necessary repairs (which shall include all life safety repairs described on <u>Exhibit C</u> to this Order or the Final Order (as applicable)), to the extent of funds available under the Budget approved in connection with this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.2 (Taxes and Other Charges) – The FX3 Portfolio Debtors shall only be required to pay Taxes and Other Charges to the extent permitted under the Bankruptcy Code or any order entered by the Bankruptcy Court. Further, the requirement that "Borrower shall not suffer and shall promptly cause to be paid and discharged any Lien or charge whatsoever which may be or become a Lien or charge against the Properties . . . ." is not required to be complied with during the Bankruptcy Case as long as the FX3 Portfolio Debtors do not grant, consent to the granting of or otherwise take any affirmative action to create a Lien on any of the Properties, except as otherwise permitted by or consented to in this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.5 (Notice of Default) – The FX3 Portfolio Debtors shall be required only to advise the Noteholder of any "Default or Event of Default" that would constitute an Event of Default under this Order or the Final Order (as applicable) including any Default or Event of Default under the Loan Documents, except as modified hereby. The FX3 Portfolio Debtors will endeavor to "promptly advise Lender of any material adverse change in Borrower's condition, financial or otherwise," but the failure

---

[1] As used herein, the term "<u>Loan Agreement</u>" means the Amended and Restated Loan Agreement, dated as of March 16, 2006, originally executed by and between Alliance PP2 FX3 Limited Partnership and Column Financial, Inc., as amended by the Amendment to Amended and Restated Loan Agreement dated February 28, 2013 and the Assignment, Assumption and Loan Modification Agreement dated February 28, 2013. Other terms used, but not defined, herein shall have the meanings set forth in this Order or the Final Order, or the Loan Agreement, as applicable.

1

to do so shall not constitute an Event of Default under this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.7 (Perform Loan Documents) – This section shall be modified during the Bankruptcy Case to only require the FX3 Portfolio Debtors to observe, perform and satisfy the terms of this Order or the Final Order (as applicable) and any provisions in the Loan Documents that would constitute an Event of Default or a Default which could result in an Event of Default under the Loan Documents if not observed, performed, or satisfied, except as modified hereby.
- Loan Agreement, § 5.1.11 (Financial Statements and Books and Records)
  - (a) – The FX3 Portfolio Debtors are not required to maintain books and records in accordance with GAAP or other agreed upon procedures set forth in reports prepared by Meyners and Company.
  - (b) – Financial statements provided under the Loan Documents or otherwise during the Bankruptcy Case are not required to be audited.
  - (c) – This section shall be modified to require the FX3 Portfolio Debtors to provide the reporting required by this Order or the Final Order (as applicable).
  - (e) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.11(e), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
  - (f) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.11(f), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
  - (g) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.11(g), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
  - (h) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.11(h), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
  - (i) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.11(i), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.14 (Costs of Enforcement) – All fees, costs, expenses, or other charges shall only be paid in connection with the Bankruptcy Case to the extent permitted by or consented to in this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.17 (Performance by Borrower) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.17 to the extent that the requirement for compliance with certain obligations under the Loan Documents has been eliminated, limited or otherwise modified pursuant to this Exhibit B (collectively, the "Modified Obligations"), and any violation of this provision shall not constitute an Event of Default

2

under the Loan Documents or this Order or the Final Order (as applicable) to the extent applicable to the Modified Obligations.

- Loan Agreement, § 5.1.18 (Confirmation of Representations) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.18, and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.21 (Alterations) – The FX3 Portfolio Debtors' obligations under Section 5.1.21 shall be performed solely to the extent that funds therefor have been provided for in the Budget or are otherwise required to be performed pursuant to <u>Exhibit C</u> attached to this Order or the Final Order (as applicable) (the "<u>Required Alterations</u>"), and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable) provided that the FX3 Portfolio Debtors are in compliance with their obligation to perform the Required Alterations as provided in this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.22 (Operation of Property) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.22 to the extent that any action in violation of Section 5.1.22 is prohibited by the Bankruptcy Code.
- Loan Agreement, § 5.1.23 (Annual Budget) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.23, and any violation of this provision shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- Loan Agreement, § 5.1.24 (Guarantor Financial Statements) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.1.24, and any violation of this provision (including as a result of any act or omission of the Guarantors) shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- Loan Agreement, § 5.2.2 (Liens) – The FX3 Portfolio Debtors shall not be in default with respect to any existing Liens that are in violation of Section 5.2.2. Any Liens created subsequent to the Petition Date and allowed by the Bankruptcy Court which are not otherwise permitted by or consented to in this Order or the Final Order (as applicable) or under the Loan Documents shall be in violation of Section 5.2.2.
- Loan Agreement, § 5.2.3 (Dissolution) – The FX3 Portfolio Debtors shall not be in default under Section 5.2.3 to the extent that any action in violation of Section 5.2.3 is authorized by the Bankruptcy Court; provided, that the FX3 Portfolio Debtors shall not take any action or engage in any transaction (including, without limitation, by filing any motion or application seeking approval in the Bankruptcy Case or otherwise consenting thereto) that would constitute a violation of this provision to the extent that such transaction would be outside of the ordinary course of business of the FX3 Portfolio Debtors (including, without limitation, any transaction seeking to merge, consolidate or combine any FX3 Portfolio Debtor into or with any other Person), except a transaction that is otherwise permitted by or consented to in this Order or the Final Order (as applicable).
- Loan Agreement, § 5.2.5 (Debt Cancellation; Indebtedness) – The FX3 Portfolio Debtors are not obligated to comply with (a) Section 5.2.5(a) to the extent that they are authorized

3

to take actions pursuant to an order of the Bankruptcy Court that would be in violation of Section 5.2.5(a), or (b) Section 5.2.5(b) to the extent that they are authorized to take actions pursuant to an order of the Bankruptcy Court that would be in violation of Section 5.2.5(b) so long as the FX3 Portfolio Debtors do not voluntarily incur, create, consent to or otherwise permit any Indebtedness to exist other than Permitted Indebtedness, except as otherwise permitted by or consented to in this Order or the Final Order (as applicable).

- Loan Agreement, § 5.2.8 (Principal Place of Business) – The FX3 Portfolio Debtors' principal place of business is as set forth on the petitions commencing the Bankruptcy Case.
- Loan Agreement, § 5.2.10 (Transfers) – The FX3 Portfolio Debtors are not obligated to comply with Section 5.2.10 to the extent that they are authorized to take actions pursuant to an order of the Bankruptcy Court that would be in violation of Section 5.2.10; provided, that the FX3 Portfolio Debtors shall not make or grant, consent to the making or granting of, or otherwise take any affirmative action to effectuate any Transfer or take any other affirmative action in violation of Section 5.2.10.
- Loan Agreement, § 7 (Reserve Funds) – The FX3 Portfolio Debtors are not obligated to comply with Article 7 (except Section 7.2 – Tax and Insurance Escrow Fund), and any violation of this provision (except Section 7.2) shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- Loan Agreement, § 8.1.1(a) (Events of Default)
    - (ii) – The FX3 Portfolio Debtors shall only be required to pay Taxes and Other Charges to the extent permitted under the Bankruptcy Code or any order entered by the Bankruptcy Court, and only the failure to pay such Taxes or Other Charges shall violate Section 8.1.1(a)(ii).
    - (iii) – Section 8.1.1(a)(iii) shall take into account that the FX3 Portfolio Debtors are in the process of obtaining flood coverage for the Properties, which coverage shall be obtained within 30 days following entry of this Order.
    - (iv) – Transfers authorized to be made pursuant to an order of the Bankruptcy Court shall not violate Section 8.1.1(a)(iv); provided, that the FX3 Portfolio Debtors shall not make or grant, consent to the making or granting of, or otherwise take any affirmative action to effectuate any transfer or encumbrance or take any other affirmative action that would constitute a violation of Section 8.1.1(a)(iv), except as otherwise permitted by or consented to in this Order or the Final Order (as applicable).
    - (vii) – The FX3 Portfolio Debtors are not obligated to comply with Section 8.1.1(a)(vii), and any violation of this provision resulting from such non-compliance shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order.
    - (ix) – The FX3 Portfolio Debtors are not obligated to comply with Section 8.1.1(a)(ix) to the extent that the FX3 Portfolio Debtors' obligation to comply with the provisions referenced in Section 8.1.1(a)(ix) has otherwise been modified in this <u>Exhibit B</u>, and any violation of this provision arising from such non-compliance shall not constitute an Event of Default under the Loan Documents or

this Order or the Final Order (as applicable). Further, Section 8.1.1(a)(ix)(B) is superseded by the cure provisions in this Order or the Final Order (as applicable).

- (x) – This provision shall be replaced with the notice and cure provisions of this Order or the Final Order (as applicable).
- (xi) – The FX3 Portfolio Debtors are not obligated to comply with Section 8.1.1(a)(xi), and any violation of this provision resulting from such non-compliance shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).
- (xii) – This provision shall not apply in the event that there is a material default under the Management Agreement or any Replacement Management Agreement that the FX3 Portfolio Debtors cannot cure without violating the Bankruptcy Code.
- (xiii) – This provision shall be replaced with the notice and cure provisions of this Order or the Final Order (as applicable).
- (xv) – The FX3 Portfolio Debtors are not obligated to comply with Section 8.1.1(a)(xv), and any violation of this provision (including as a result of any act or omission of the Guarantors) shall not constitute an Event of Default under the Loan Documents or this Order or the Final Order (as applicable).

5

## EXHIBIT C

## POST-PETITION DEFAULT CURE OBLIGATIONS

Approximately $91,000 to address potential life and safety repairs for the Properties for purposes of this Interim Order.

The FX3 Portfolio Debtors and the Noteholder will make reasonable efforts during the term of this Interim Order to reach consensual resolution as to any additional life and safety repairs that will need to be made to the Property.

If the parties reach agreement on any additional life and safety repairs to be made to the Property, the additional amounts needed to be spent to address any such additional life and safety repairs will be reflected in a revised Exhibit C, which the FX3 Portfolio Debtors will file with the Court, or will be included with the Final Order. Such revised Exhibit C, to the extent filed for purposes of this Interim Order, shall be deemed Exhibit C to this Interim Order without any further approval of the Court.

If the parties fail to reach agreement on any additional life and safety repairs to the Property, all rights of the parties are reserved, including, without limitation, the right of the Noteholder to object to the final order approving debtor in possession financing or to object to further use of cash collateral, and the right of the FX3 Portfolio Debtors to seek the use Cash Collateral on terms and conditions different from what is reflected in this order.