IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VARIANT HOLDING COMPANY, LLC, et al.,[1] | Case No. 14-12021 (BLS) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER (A) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING AND TO GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(C) AND 364(D); (B) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (D) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; (E) APPROVING ASSUMPTION OF BEACH POINT SETTLEMENT AGREEMENT; AND (F) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon *Debtors' Motion for Entry of Interim and Final Orders (a) Authorizing Debtors to Obtain Postpetition Financing and to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (b) Authorizing Debtors to Use Cash Collateral, (c) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (d) Granting*

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Variant Holding Company, LLC (4044); Laser Focus Holding Company, LLC (9153); Laser Focus Commercial Investments, LLC (9326); Houston 2 Apartments, LLC (8886); 10400 Sandpiper Apartments, LLC (6556); 10301 Vista Apartments, LLC (8886); Houston 14 Apartments, LLC (7563); 12500 Plaza Apartments, LLC (7563); Pines of Westbury, Ltd (7563); 201 Ashton Oaks Apartments, LLC (7563); 13875 Cranbrook Forest Apartments, LLC (7563); 5900 Crystal Springs Apartments, LLC (7563); 7170 Las Palmas Apartments, LLC (7563); 11911 Park Texas Apartments, LLC (7563); 1201 Oaks of Brittany Apartments, LLC (7563); 3504 Mesa Ridge Apartments, LLC (7563); 667 Maxey Village Apartments, LLC (7563); 17103 Pine Forest Apartments, LLC (7563); 7600 Royal Oaks Apartments, LLC (7563); 4101 Pointe Apartments, LLC (7563); The Oaks at Stonecrest Apartments, LLC (5589); Numeric Commercial Investments, LLC (9443); FX3 Apartment Investors, LLC (4055); Royal Numeric FX Investments, LLC (6908); Broadmoor Apartments, LLC (7888); Chesapeake Apartments, LLC (5716); Holly Ridge Apartments, LLC (7117); Holly Tree Apartments, LLC (4288); Preston Valley Apartments, LLC (3356); Ravenwood Hills Apartments, LLC (8264); River Road Terrace Apartments, LLC (6396); Sandridge Apartments, LLC (3592); Majestic Heights Apartments, LLC (2174); Sonterra Apartments, LLC (6220); Toscana Villas Apartments, LLC (8873) (collectively, the "Debtors"). The Debtors' service address is: Variant Holding Company, LLC, c/o Development Specialists, Inc., 333 S. Grand Ave, Suite 4070, Los Angeles, CA 90071-1544.

*Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363; (e) Approving Assumption of Beach Point Settlement Agreement Pursuant to 11 U.S.C. § 365; and (f) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Motion") dated January 14, 2016, filed by Variant Holding Company, LLC ("Variant") and by those other Debtors that are subsidiaries of Variant (the "Subsidiary Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking, among other things:

(i)       authorization for the Borrowers,[2] pursuant to that *Amended and Restated Debtor-in-Possession Loan, Security and Guaranty Agreement* dated as of January 14, 2016 (as amended, supplemented, or otherwise modified and in effect from time to time, the "DIP Agreement", and together with any and all other related documents and agreements entered into in connection with or related to the DIP Loan (as defined below), the "DIP Loan Documents"), by and between the Borrowers, the Guarantors (together with the Borrowers, the "Loan Parties"),[3] BPC VHI, L.P., Beach Point Total Return Master Fund, L.P., and Beach Point Distressed Master Fund, L.P. (the "Beach Point Funds"), and Cortland Capital Market Services LLC as administrative agent for the Beach Point Funds (the "Administrative Agent", and together with the Beach Point Funds, the "DIP Lenders"), to obtain and be obligated in respect of postpetition superpriority secured financing, subject, as to priority only, to the Carve-Out (as

---

[2] The "Borrowers" consist of the following Debtors:  Variant Holding Company, LLC; 10400 Sandpiper Apartments, LLC; 10301 Vista Apartments, LLC; Pines of Westbury, Ltd; 201 Ashton Oaks Apartments, LLC; 13875 Cranbrook Forest Apartments, LLC; 5900 Crystal Springs Apartments, LLC; 7170 Las Palmas Apartments, LLC; 11911 Park Texas Apartments, LLC; 1201 Oaks of Brittany Apartments, LLC; 3504 Mesa Ridge Apartments, LLC; 667 Maxey Village Apartments, LLC; 17103 Pine Forest Apartments, LLC; 7600 Royal Oaks Apartments, LLC; 4101 Pointe Apartments, LLC; The Oaks at Stonecrest Apartments, LLC; Broadmoor Apartments, LLC; Chesapeake Apartments, LLC; Holly Ridge Apartments, LLC; Holly Tree Apartments, LLC; Preston Valley Apartments, LLC; Ravenwood Hills Apartments, LLC; River Road Terrace Apartments, LLC; Sandridge Apartments, LLC; Majestic Heights Apartments, LLC; Sonterra Apartments, LLC; and Toscana Villas Apartments, LLC.

[3] The "Guarantors" consist of the following Debtors: Laser Focus Holding Company, LLC; Laser Focus Commercial Investments, LLC; Houston 2 Apartments, LLC; Houston 14 Apartments, LLC; 12500 Plaza Apartments, LLC; Numeric Commercial Investments, LLC; FX3 Apartment Investors, LLC; and Royal Numeric FX Investments, LLC.

defined below), the Liens granted pursuant to the Cash Collateral Orders (as defined below) and the Mortgage Loan Documents[4] (collectively, the "Senior Liens"), and any Existing Non-Affiliate Mechanic's Liens, as follows:

(a)     a "Tranche A Loan" in the principal amount of $3,321,601.50, which amount has already been advanced or accrued by the DIP Lenders under that *Debtor-in-Possession Loan, Security and Guaranty Agreement* dated as of October 31, 2014 by and between Variant, the Guarantors (as defined therein), the DIP Lenders, and the Administrative Agent (as amended, supplemented, or otherwise modified and in effect from time to time, the "HoldCo DIP Agreement"), and allocated to Variant, with Variant as the only borrower under the Tranche A Loan;

(b)     a "Tranche B1 Loan" in the principal amount of $19,075,507.95, which amount has already been advanced or accrued by the DIP Lenders under the HoldCo DIP Agreement, and allocated to the Subsidiary Borrowers, with the Borrowers as borrowers under the Tranche B1 Loan; and

(c)     a "Tranche B2 Loan" (together with the Tranche B1 Loan, the "Tranche B Loan," and the Tranche A Loan and the Tranche B Loan, collectively, the "DIP Loan") in an aggregate principal amount of $20,000,000 of additional postpetition financing, subject to increase for any Permitted Cure Advances (as defined below), with the Borrowers as borrowers under the Tranche B2 Loan;

(ii)     authorization for the Guarantors to guaranty the Borrowers' obligations under the DIP Loan;

(iii)     authorization for the Loan Parties to enter into the DIP Agreement and the DIP Loan Documents and to perform such other and further acts as may be necessary or appropriate

---

[4] Capitalized terms not otherwise defined herein shall have the meanings afforded to them in the DIP Agreement.

in connection with the DIP Loan Documents;

(iv)    authorization for the Loan Parties to assume pursuant to Section 365 of the
Bankruptcy Code that *Settlement Agreement* dated as of October 17, 2014 (the "Settlement
Agreement"), by and between Variant, the Guarantors (as defined in the Settlement Agreement,
the "Existing Loan Guarantors"), those direct and indirect subsidiaries of Variant listed on
Exhibit A thereto, and those individuals and entities listed on Exhibit B thereto on the one hand,
and the Beach Point Funds, the Administrative Agent, and those individuals and entities listed on
Exhibit C thereto on the other hand, to the extent such Settlement Agreement constitutes an
executory contract;

(v)    authorization for the Borrowers' use of "cash collateral" (as that term is defined in
section 363(a) of the Bankruptcy Code) constituting Prepetition Collateral (as defined below)
(including, without limitation, all cash and other amounts from time to time on deposit or
maintained by the Debtors and any cash proceeds of the disposition of the Prepetition Collateral,
the "Cash Collateral") on the terms and conditions set forth in this "Interim Order," the Final
Order (as defined below, as applicable), and in the DIP Agreement;

(vi)    authorization for the Debtors to grant security interests, liens, and superpriority
claims (including superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code,
liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens
pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lenders, subject, as to priority
only, to the Carve-Out, the Senior Liens, and any Existing Non-Affiliate Mechanic's Liens,
payable from, and having recourse to, all prepetition property, including, but not limited to, all
Prepetition Collateral (as defined below), and postpetition property of the Debtors' respective
estates (collectively, the "Estates") and all proceeds thereof;

(vii)    reaffirmation of (a) the findings, holdings, rights, liens, claims, interests, and protections provided under that *Final Order (A) Authorizing Debtor to Obtain Postpetition Financing and to Grant Security Interest and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Authorizing Debtor to Use Cash Collateral; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (D) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363; and (E) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (as amended, supplemented, or otherwise modified and in effect from time to time, the "HoldCo Final Borrowing Order") pursuant to the terms set forth herein; (b) the Court's granting of adequate protection liens and super-priority claims to the Existing Lenders in connection with the Existing Debt (as defined below); (c) the Court's granting of super-priority claims and liens to the DIP Lenders in connection with the HoldCo DIP Agreement; and (d) the rights and obligations of the Existing Lenders and Adequate Protection Guarantors (as defined below) under that Adequate Protection Guaranty (as defined below);

(viii)    authorization for (x) the DIP Lenders to terminate the DIP Agreement, and (y) the DIP Lenders and the Existing Lenders to terminate the Debtors' use of Cash Collateral, each upon the occurrence and continuance of an Event of Default on terms specified in the DIP Agreement;

(ix)    subject only to and effective upon entry of the Final Order, authorization of the limitation of the Debtors' and their successors' and assigns' right to assert claims to surcharge against the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 8 below;

(x)    modification of the automatic stay imposed under section 362 of the Bankruptcy

Code to the extent necessary to permit the Loan Parties, the DIP Lenders, and the Existing Lenders to implement and effectuate the terms and provisions of the DIP Loan Documents, this Interim Order, and as later applicable, the Final Order;

(xi)     pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this Interim Order to (a) authorize the Debtors to borrow under the DIP Agreement, on an interim basis, the Initial Advance on or after the date of the entry of this Interim Order but before the date of the entry of the Final Order, which such Final Order must be entered on or before February 15, 2016 (the "Interim Period"); (b) authorize the Debtors' use of Cash Collateral; and (c) approve the assumption of the Settlement Agreement;

(xii)    the scheduling of the final hearing (the "Final Hearing") to be held on or before February 15, 2016, to consider entry of the an order granting the relief requested in the Motion on a final basis (the "Final Order"), authorizing the balance of the borrowings under the DIP Loan Documents on a final basis, and approving the Debtors' notice procedures with respect thereto; and

(xiii)   waiver of any applicable stay (including Bankruptcy Rule 6004) and the provision of immediate effectiveness of this Interim Order, and as later applicable, the Final Order.

The Interim Hearing having been held on January 19, 2016; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing, and the entire record herein; and this Court having heard and resolved or overruled any objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, the Estates, and creditors; and the Debtors having provided notice of the Motion as set

- 6 -

forth in the Motion; and it appears that no other or further notice of the Motion or the Interim

Hearing is necessary; and after due deliberation and consideration, and sufficient cause

appearing therefor; and all objections to the entry of this Interim Order, if any, having been

withdrawn, resolved, or overruled as provided in this Interim Order or on the record of the

Interim Hearing:

### IT IS HEREBY FOUND AND DETERMINED THAT:[5]

A.    **Petition**.  On August 28, 2014 (the "HoldCo Petition Date"), Variant filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code, and on January 12, 2016

(the "Subsidiary Petition Date", together with the HoldCo Petition Date, as applicable, the

"Petition Date"), each of the Subsidiary Debtors filed separate voluntary petitions for relief under

chapter 11 of the Bankruptcy Code, creating the Estates.  Each Debtor continues to operate its

business and manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.  No

official committee of unsecured creditors (upon any appointment thereof, the "Committee"), as

provided for under section 1102 of the Bankruptcy Code, has been appointed in the Chapter 11

Cases.  The Chapter 11 Cases are being jointly administered, and are not currently substantively

consolidated.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and

the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are Bankruptcy

---

[5]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings
of fact pursuant to Bankruptcy Rule 7052.  Any statements of the Court from the bench at the Interim Hearing
shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated
by reference into this Interim Order to the extent not inconsistent herewith.

Code sections 105, 361, 362, 363, 364(c), and 364(d), and Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

  **C.**   **Notice**. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing constitutes appropriate, due, and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and the Local Rules, and no further notice of the relief granted herein is necessary or required.

  **D.**   **Findings Regarding The Existing Lenders' Existing Debt and Prepetition Liens**. As found in the HoldCo Final Borrowing Order and other orders of this Court, and reaffirmed by this Interim Order, the Existing Lenders have the following allowed claim secured by the Prepetition Liens, as described below:

    a.   As of September 1, 2014, the amount owing to the Beach Point Funds under that *Amended and Restated Loan Agreement* dated as of October 11, 2013, by and between Variant, the Beach Point Funds, and the Administrative Agent (together with the Beach Point Funds, the "Existing Lenders") (as amended, restated, supplemented, or otherwise modified as of the date hereof, the "Existing Loan Agreement", and together with all other documents, agreements, and instruments delivered to the Existing Lenders in connection with the Existing Loan Agreement, the "Existing Loan Documents"), including without limitation principal, interest, fees, expenses, and costs, was (A) $2,750,000 for attorney's fees and expenses of the Beach Point Funds, and (B) $75,250,000 for unpaid principal, interests, and all other fees, expenses and costs for an aggregate amount of $78,000,000 (the "Beach Point Funds Loan Principal Amount"), and the amount owing to the Administrative Agent for attorney's fees, expenses, and other fees was $38,714 (together with the Beach Point Funds Loan Principal Amount, the "Prepetition Loan Principal Amount"). Any reasonable attorneys' fees and

expenses of the Beach Point Funds or the Administrative Agent, and any fee owed or owing to the Administrative Agent (the "Administrative Agent Fees"), including but not limited to the "Agent Fee" (as defined in the Existing Loan Agreement), that are the obligation of Variant under the Existing Loan Documents, and that are incurred or accrue after September 1, 2014, shall be added to the Prepetition Loan Principal Amount as they are incurred or accrue.  The Prepetition Loan Principal Amount and all interest, Administrative Agent Fees, and reasonable attorneys' fees and expenses accrued and incurred after September 1, 2014 shall be referred to herein as the "Prepetition Loan Settlement Amount" or the "Existing Debt".

    b.  The Prepetition Loan Settlement Amount constitutes the legal, valid, and binding obligations of Variant and the Existing Loan Guarantors, enforceable against them in accordance with the terms of the Settlement Agreement.

    c.  Variant's obligation to pay the Prepetition Loan Settlement Amount is secured by the Prepetition Liens, which grant the Existing Lenders security interests in the following property (collectively, the "Prepetition Collateral"):

    i.  Pursuant to Section 3.01 of the Existing Loan Agreement, substantially all of Variant's real and personal property, including but not limited to all accounts, general intangibles, including without limitation, payment intangibles, and investment property related to any H14 or Other Property, or FX3 Property (collectively, the "Properties");

    ii.  Pursuant to that Pledge and Security Agreement dated as of September 13, 2013 by and between Laser Focus Holding Company, LLC ("Laser Holding") and the Administrative Agent, among other things, all of Laser Holdings' rights, title, and interests in and to Laser Holding's membership interests in Laser Focus Commercial Investments, LLC;

    iii.  Pursuant to that Pledge and Security Agreement dated as of

- 9 -

September 13, 2013 by and between Variant, Conix, Inc., and Courtland Gettel (the "Laser Holding Pledgors") and the Administrative Agent, among other things, all of the Laser Holding Pledgors' rights, title, and interests in and to the Laser Holding Pledgors' membership interests in Laser Holding; and

        iv.      Pursuant to that Pledge and Security Agreement dated as of March 17, 2014 by and between Numeric Commercial Investments, LLC ("Numeric Commercial") and the Administrative Agent, among other things, all of Numeric Commercial's rights, title, and interests in and to Numeric Commercial's membership interests in Tucson Mall Suites, LLC and Spencer Highway Self Storage, LLC.

        d.      No portion of the Existing Debt, the Prepetition Liens, the Settlement Agreement, or the Existing Loan Documents (as modified by the Settlement Agreement), or any payment on account thereof, is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law and the Debtors and their Estates do not have, hereby forever release, and are forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Existing Lenders, solely in their capacities as Existing Lenders, respectively, and not in any other capacity or in respect to any other relationship the Existing Lenders may have, or have had, with or in respect to the Debtors, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under the Bankruptcy Code or otherwise.

        e.      The liens and security interests granted to, or for the benefit of, the

Existing Lenders, including with respect to the Cash Collateral, pursuant to the Existing Loan Documents and in connection with the Existing Debt constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens on and security interests in the Prepetition Collateral and are not subject to defense, counterclaim, avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity, except insofar as such liens and security interests are subject to the DIP Liens (as defined below), and the Carve-Out.

f.    That certain *Guaranty of Adequate Protection Obligations* dated as of October 31, 2014 (the "Adequate Protection Guaranty"), by and among Laser Holding, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, and Royal Numeric FX Investments, LLC (the "Adequate Protection Guarantors"), and the DIP Lenders, constitutes a legal, valid, binding, and enforceable obligation of each of the Adequate Protection Guarantors, and is not subject to avoidance as a fraudulent conveyance or fraudulent transfer under section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

E.    **Findings Regarding the DIP Loan and Use of Cash Collateral**.

a.    Good cause has been shown for the entry of this Interim Order.

b.    Funds borrowed under the Tranche A Loan were used by Variant to fund the business and operations of Variant during its pending chapter 11 case.

c.    Funds borrowed under the Tranche B1 Loan were used by Variant,

through intercompany loans to the Subsidiary Borrowers, to fund the business, maintenance, and operations of each of the Debtors that is a Borrower under the DIP Agreement. The intercompany loans between Variant and each Borrower are included within the Prepetition Collateral and were also pledged to the DIP Lenders as collateral for the obligations under the HoldCo DIP Agreement.

d.      Pursuant to the Settlement Agreement, the Loan Parties granted to the Existing Lenders and DIP Lenders a direct interest in and right to proceeds from the sale of the Properties. Under the HoldCo Final Borrowing Order, this interest in and right to proceeds from the sale of the Properties was granted, in part, as adequate protection for the Existing Lenders' Prepetition Liens. The Loan Parties' interest in and right to proceeds from the sale of the Properties under the Settlement Agreement is subject to and vulnerable to diminution in value during the pendency of the Chapter 11 Cases, and in order to preserve the benefit of the Existing Lenders' and DIP Lenders' bargain, the Debtors' obligations under the Settlement Agreement are reaffirmed and, to the extent the Settlement Agreement constitutes an executory contract under Section 365 of the Bankruptcy Code, assumed.

e.      The proposed DIP Loan pursuant to the DIP Agreement and the use of Cash Collateral will allow the Debtors to operate their business and administer, preserve and increase the value of their Estates. The ability of the Debtors to finance their operations requires the availability of additional working capital and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, the Estates and its creditors and the possibility for the Debtors' successful reorganization. Entry of this Interim Order approving the DIP Loan and the use of Cash Collateral will benefit the Debtors, the Estates, and the Debtors' creditors.

f.     The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense. Defaults have occurred under the Settlement Agreement and the HoldCo DIP Agreement, entitling the Administrative Agent, the Existing Lenders, and the DIP Lenders to exercise remedies contained therein. The Administrative Agent, the Existing Lenders, and the DIP Lenders have agreed to forbear from exercising their remedies under the Settlement Agreement and HoldCo DIP Agreement, subject to the terms of a letter agreement dated as of January 14, 2016 (the "Beach Point Forbearance Agreement"). The Beach Point Forbearance Agreement is only effective upon entry of this Interim Order. In the absence of the Debtors entering into the DIP Loan Documents, and the granting of the rights, remedies and protections to the DIP Lenders and pursuant to this Interim Order, the DIP Lenders would be able to enforce their rights under the Settlement Agreement and the HoldCo DIP Agreement, to the detriment of the Debtors' creditors and equity holders. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(l), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code without the Debtors (i) granting to the DIP Lenders, subject to the Carve-Out and junior only to the Senior Liens and any Existing Non-Affiliate Mechanic's Liens as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and in the DIP Loan Documents, and (ii) granting to the DIP Lenders the DIP Liens to secure the DIP Obligations (defined below). The most favorable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Loan. The Debtors require both additional financing under the Tranche B2 Loan and the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy its postpetition

liquidity needs.

g.      The Court has entered orders authorizing the Subsidiary Borrowers' use of cash collateral that constitutes the Mortgage Lenders' collateral (collectively, the "Cash Collateral Orders").  Pursuant to these Cash Collateral Orders, the Mortgage Lenders have been granted certain adequate protection of their pre-existing liens in the form of replacement liens and periodic payments of certain postpetition obligations accruing after the Subsidiary Petition Date.  The Subsidiary Debtors are authorized to borrow under the Tranche B2 Commitment amounts included in the Interim Budget to pay adequate protection payments contemplated under the Cash Collateral Orders.

h.      The Cash Collateral Orders provide that events of default arise thereunder if the Borrowers make disbursements or expenditures in excess of certain variance amounts under the Budget (the "Permitted Variances").  A material inducement to the DIP Lenders agreeing to make the DIP Loan to the Borrowers is to be able to cure, in their sole and absolute discretion, any such defaults under the Cash Collateral Orders by advancing additional funds under the DIP Loan.  Such ability to cure provides substantial benefit to the Debtors' Estates, as it provides a potential source of capital, without causing defaults under the Cash Collateral Orders, to improve the Properties or fund the Debtors' operating and maintenance expenses during the Chapter 11 Cases if funds in excess of the Budget are deemed necessary or appropriate by the Borrowers.  In the event of any disbursement or expenditure by the Borrowers in excess of any Permitted Variance, the DIP Lenders may advance up to, in the aggregate, $2,000,000, in addition to the Tranche B2 Commitment, without further order of this Court, up to the amount of such excess disbursement or expenditure (each, a "Permitted Cure Advance").  Each Permitted Cure Advance, upon being loaned to the Debtors, shall be deemed a Tranche B2

Loan for all purposes under the DIP Agreement, and shall increase the amount of the Tranche B2

Loan by the amount of each Permitted Cure Advance.  The Loan Parties are authorized to amend

the DIP Loan Agreement as reasonably necessary to account for any Permitted Cure Advance.

        i.      Liens have been filed against certain of the Properties by Conix, Inc. and

Forward Progress Enterprises, LLC (the "Texas Constitutional Liens").  The Texas

Constitutional Liens are not entitled to adequate protection.  As found by this Court in the

HoldCo Chapter 11 Case on June 1, 2015 pursuant to that *Order Denying Motion for Payment of*

*Property Level Claims From Proceeds of Sale of Property of Non-Debtor Entities*, Conix, Inc.

and Forward Progress Enterprises, LLC are precluded under the Settlement Agreement from

being paid from any proceeds generated from a sale of the Properties until the Prepetition Loan

Settlement Amount, which is subordinated to the obligations under the DIP Agreement, is paid in

full.  There is also a bona fide dispute as to the validity of the Texas Constitutional Liens.  As a

result, the Texas Constitutional Liens are not entitled to any adequate protection in connection

with the priming of such liens pursuant to the terms hereof.

        j.      Further, to the extent any lien, claim or interests on the Properties are

entitled to adequate protection, there is adequate protection for the holders of such liens, claims

or interests on the Properties sufficient to permit the Debtors to grant the DIP Lenders priming

liens pursuant to the terms hereof.  In connection with entry of the DIP Agreement, the Borrower

has entered into the Stalking Horse Purchase Agreement, pursuant to which the Beach Point

Funds, or an Affiliate thereof, have agreed to acquire the Properties for $190,000,000, subject to

overbids.  Pursuant to the Stalking Horse Purchase Agreement, if the Beach Point Funds acquire

the Properties, they shall, up to an aggregate amount of $190,000,000, (i) assume or satisfy all

claims allowed against the Borrowers that are not prohibited from being paid prior to satisfaction

of the Prepetition Loan Settlement Amount, and (ii) waive distributions on account of their claims under the DIP Agreement and the Existing Debt.

      k.      The DIP Lenders are willing to provide the DIP Loan and the Existing Lenders are willing to consent to the use of their Cash Collateral, subject to the terms and conditions set forth in the DIP Agreement and the provisions of this Interim Order, and provided that the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations (as defined below) and other protections granted by this Interim Order, the DIP Loan Documents, and the Adequate Protection Guaranty will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan and the Cash Collateral use approved by this Interim Order. The DIP Lenders have acted in good faith in agreeing to provide the DIP Loan, including but not limited to any Permitted Cure Advances, approved by this Interim Order and as further evidenced by the DIP Loan Documents, and the Existing Lenders have acted in good faith in consenting to the Debtors' use of their Cash Collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

      l.      The DIP Loan Documents and the DIP Loan provided for thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Lenders, and the Existing Lenders, respectively, and the terms of the DIP Loan and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. All of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Loan and the DIP Loan Documents and the rights granted in this Interim Order,

including without limitation, all loans made to and guarantees issued for the account of, the Debtors pursuant to the DIP Loan Documents, are being extended or received, as appropriate, by the DIP Lenders and the Existing Lenders and their affiliates (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

m.    The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 400l(c)(2).  The authorization granted herein on an interim basis to use Cash Collateral, to assume the Settlement Agreement, to enter into the DIP Loan Documents, and to borrow up to an aggregate amount of $6,000,000 through the Interim Advance borrowed under this Interim Order during the Interim Period, is necessary to preserve the going concern value of the Debtors, the Properties, and their Estates.  Absent granting the relief set forth in this Interim Order, the Estates will be immediately and irreparably harmed. Consummation of the DIP Loan and the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents, as applicable, are therefore in the best interests of the Debtors, the Estates, and creditors.

**F.  Findings Regarding Assumption of the Settlement Agreement**

a.    The Settlement Agreement is valid and binding, in full force and effect, and enforceable against the Debtors in accordance with its terms.

b.    To the extent the Settlement Agreement constitutes an executory contract within the meaning of Section 365(a) of the Bankruptcy Code, the assumption of the Settlement

Agreement is in the best interests of the Debtors, the Estates, and creditors, and represents the exercise of sound and prudent business judgment by the Debtors.   The Loan Parties' reaffirmation and assumption of the Settlement Agreement is material consideration for the DIP Lenders' agreement to enter into the DIP Agreement, and to forbear on exercising its rights and remedies under the Settlement Agreement and the HoldCo DIP Agreement.

    c.   Therefore, the Settlement Agreement may be assumed by the Debtors.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  **Approval of Motion**.  The Motion is granted in accordance with the terms of this Interim Order.  Any objection to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied or overruled.  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, for purposes of this Interim Order, Debtor Oaks at Stonecrest, LLC ("Oaks") shall not be party to the DIP Agreement, the DIP Loan, or the DIP Loan Documents in any way and shall not be subject to the terms of the DIP Loan Documents or this Interim Order, except that the findings regarding assumption of the Settlement Agreement at Recital F herein and approval of the assumption of the Settlement Agreement at paragraph 18 herein shall be binding on, and enforceable against, Oaks; provided, however, that the foregoing is without prejudice to any rights and remedies of Arbor Realty SR, Inc. and any successors and assigns (collectively, "Arbor") under the Bankruptcy Code and any applicable non-bankruptcy law or under any other order entered by the Court, including but not limited to the right to object to any sale motion or proposed chapter 11 plan.

2.  **Authorization of the DIP Loan and the DIP Loan Documents**.

a.      Variant was authorized under the HoldCo Final Borrowing Order to borrow the Tranche A Loan and Tranche B1 Loan from the DIP Lenders, and the Court hereby reaffirms such authorization.

b.      Laser Focus Holding Company, LLC, Laser Focus Commercial Investments, LLC, Houston 14 Apartments, LLC, Houston 2 Apartments, LLC, Numeric Commercial Investments, LLC, and Royal Numeric FX Investments, LLC were authorized under the HoldCo Final Borrowing Order to guaranty the Tranche A Obligations and the Tranche B1 Obligations, and the Court hereby reaffirms such authorization.

c.      The Borrowers are immediately authorized and, subject to the terms of this Interim Order and the terms and conditions of the DIP Agreement, empowered to borrow and assume liability for the Tranche B1 Obligations, and FX3 Apartments Investors, LLC's and 12500 Plaza Apartments, LLC, are immediately authorized and, subject to the terms of this Interim Order and conditions of the DIP Agreement, empowered to guaranty the Tranche B1 Obligations.

d.      The Borrowers are immediately authorized and, subject to the terms of this Interim Order and the terms and conditions of the DIP Agreement, empowered to borrow funds under the Tranche B2 Loan in such amount or amounts as may be available to or for the benefit of the Borrowers from the DIP Lenders, which shall not exceed $6,000,000, upon entry of this Interim Order and, subject to the entry of the Final Order, the aggregate amount of $20,000,000, in each case for the purposes permitted under the Interim Budget or the Budget, the DIP Agreement, and this Interim Order or the Final Order, each as applicable, and the Guarantors are immediately authorized and, subject to the terms of this Interim Order and conditions of the DIP Agreement, empowered to guaranty the Tranche B2 Obligations.

e.      The Borrowers are authorized, and subject to the terms of this Interim Order and the terms and conditions of the DIP Agreement, empowered to borrow Permitted Cure Advances up to an aggregate amount not to exceed $2,000,000 to fund any expenditures or disbursements in excess of the Permitted Variances under the Cash Collateral Orders, which Permitted Cure Advances shall be made in the DIP Lenders' sole and absolute discretion.

f.      The Debtors are authorized to enter into the DIP Agreement, and the DIP Agreement shall be binding and enforceable against the Debtors.  The Debtors, the DIP Lenders, and the Existing Lenders with respect to the DIP Agreement may finalize, amend, modify, supplement or waive any provision of the DIP Agreement if such amendment, modification, supplement or waiver is permitted under the terms of the DIP Agreement and is not material (in the good faith judgment of the DIP Lenders, Existing Lenders, and the Debtors), without any need to apply to, or receive further approval from, the Court.

g.      The Debtors are hereby authorized to (a) do and perform all acts and to make, execute, and deliver all instruments and documents that may be requisite or necessary for the performance by the Debtors under the DIP Agreement, and (b) pay all principal, interest, reasonable fees and other expenses that may be required or necessary for the Debtors to perform all of its obligations under this Interim Order and the DIP Agreement (collectively, the "DIP Obligations").  Each officer of the Debtors, and each such other individual as may be so authorized by the governing body of each Debtor, acting singly, is hereby authorized to execute and deliver any and all of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name and on behalf of the Debtors.

h.      The Debtors are hereby authorized to pay the fees and other amounts payable under the terms of the DIP Agreement as they come due to the DIP Lenders without

further order of this Court, including without limitation, all out-of-pocket costs and expenses of

the DIP Lenders (including attorney's fees and expenses) as provided for under the DIP

Agreement, in each case, in accordance with Section 5 of the Settlement Agreement and Section

2.02 of the DIP Agreement; provided, however, that Variant shall be solely responsible for any

fees, costs and expenses of the DIP Lenders to the extent they constitute Tranche A Obligations

under the DIP Agreement.

        i.      No obligation, payment, transfer or grant of security interest under the DIP

Loan Documents and this Interim Order shall be stayed, restrained, voidable, or recoverable

under the Bankruptcy Code or any applicable law (including, without limitation, under section

502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or

counterclaim.

        j.      Until such time as all DIP Obligations are indefeasibly paid in full in cash

and the commitments thereunder are terminated in accordance with the DIP Agreement, the

Debtors shall not in any way prime or otherwise adversely affect the DIP Liens granted under

this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu*

lien or claim pursuant to sections 364(d) or 507(b) of the Bankruptcy Code or otherwise.

        k.      Until such time as all DIP Obligations are indefeasibly paid in full in cash

and the commitments thereunder are terminated in accordance with the DIP Agreement, the

Debtors shall not in any way grant junior encumbrances on the DIP Collateral upon which the

DIP Lenders possess liens provided to them under this Interim Order.

    **3.**      **Superpriority Claims**.

        a.      Pursuant to section 364(c)(l) of the Bankruptcy Code, effective as of the

HoldCo Petition Date pursuant to the HoldCo Final Borrowing Order, all of the Tranche A

Obligations shall constitute allowed senior administrative expense claims against Variant (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations and all other claims against Variant, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (with respect to any claims arising under section 506(c) only, subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, subject, as to priority only, to the Carve-Out, (the "Tranche A Superpriority Claims") whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of Variant and its estate and all proceeds thereof, including, all Tranche A Avoidance Actions and Tranche A Avoidance Proceeds (each as defined below).

      b.      Pursuant to section 364(c)(l) of the Bankruptcy Code, all of the Tranche B2 Obligations shall constitute allowed senior administrative expense claims against the Debtors (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without

limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (with respect to any claims arising under section 506(c) only, subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, subject, as to priority only, to the Carve-Out and the super-priority claims of Mortgage Lenders under the Cash Collateral Orders (the "Tranche B2 Superpriority Claims", and together with the Tranche A Superpriority Claims, the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtors and the Estates and all proceeds thereof, including, subject to entry of the Final Order, all Tranche B Avoidance Actions and Tranche B Avoidance Proceeds (each as defined below).

        c.      The granting of allowed senior administrative expenses claims against the Guarantors with respect to the Tranche A Obligations and against the Subsidiary Debtors with respect to the Tranche B1 Obligations is subject to entry of the Final Order.

    **4.**    **Carve-Out**.  For purposes of this Interim Order, the "Carve-Out" shall mean the sum of:  (i) any fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930 of title 28 of the United States Code; and (ii) any Professional Fee Advances actually made by the Lenders and paid to the professionals for which such Professional Fee Advances were made, pursuant to the terms of the DIP Agreement and the Professional Fee Letter Agreement.  The Carve-Out shall not include, apply to, or be available

for any fees or expenses incurred by any party, including the Debtors, any Committee, or any professional in connection with (1) the investigation, initiation or prosecution of any claims (including for the avoidance of liens or security interests) against the DIP Lenders or Existing Lenders, in connection with or related to the Settlement Agreement, the Existing Debt, the Prepetition Liens, the Existing Loan Documents, the DIP Loan, the DIP Liens, or the DIP Loan Documents, or preventing, hindering or delaying the assertion or enforcement of any lien, claim, right or security interest or realization upon any of the DIP Collateral by the DIP Lenders, (2) a request to use Cash Collateral without the prior consent of the DIP Lenders or the Existing Lenders, (3) a request, without prior consent of the DIP Lenders, for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Sections 364(c) or (d) of the Bankruptcy Code that does not indefeasibly repay in full the DIP Obligations and the Prepetition Loan Settlement Amount, or (4) any act that has the effect of materially or adversely modifying or compromising the rights and remedies of the DIP Lenders or Existing Lenders as set forth herein, in the Settlement Agreement, and in the DIP Loan Documents, or that results in the occurrence of an Event of Default, unless otherwise agreed by the DIP Lenders and Existing Lenders.

5.    **Tranche A Liens**.  As security for the Tranche A Obligations, effective and perfected as of the HoldCo Petition Date and without the necessity of the execution by Variant (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lenders of, or over, any Tranche A Collateral (as defined below), the following security interests and liens, were, by the HoldCo Final Borrowing Order, and are by this Interim Order granted by Variant to the DIP Lenders (all property identified in clauses (a), (b) and (c) below

being collectively referred to as the "Tranche A Collateral"), subject, as to priority only, to the

Carve-Out (all such liens on and security interests in the Tranche A Collateral granted to the DIP

Lenders, pursuant to the HoldCo Final Borrowing Order and this Interim Order and the DIP

Credit Documents, the "Tranche A Liens"):

   a. <u>First Lien on Unencumbered Property of Variant</u>.  Pursuant to section

364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first

priority senior security interest in and lien upon all pre- and post-petition property of Variant,

whether existing on the HoldCo Petition Date or thereafter acquired, that, on or as of the HoldCo

Petition Date or the date acquired (if acquired after the HoldCo Petition Date) is not subject to

valid, perfected and non-avoidable liens, if any (collectively, "Tranche A Unencumbered

Property"), and any proceeds of all of the foregoing.  The Tranche A Unencumbered Property

shall also include Variant's claims and causes of action under sections 544, 545, 547, 548, 549

and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code

(collectively, "Tranche A Avoidance Actions"), and shall include any proceeds or property

recovered, unencumbered or otherwise, that are the subject of successful Tranche A Avoidance

Actions, whether by judgment, settlement or otherwise ("Tranche A Avoidance Proceeds").

   b. <u>Liens Senior to Prepetition Secured Parties' Liens</u>.  Pursuant to section

364(c)(2), (c)(3), and (d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior priming security interest in and lien upon all pre- and post-

petition property of Variant (including, without limitation, Cash Collateral), whether now

existing or hereafter acquired.  Such security interests and liens shall be senior in all respects to

the interests in such property of the Existing Lenders arising from current and future liens of the

Existing Lenders (including, without limitation, adequate protection liens granted hereunder).

c.    Liens Senior to Certain Other Liens.  The Tranche A Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Variant and its estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the HoldCo Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of Variant.

6.    **Tranche B2 Liens.**  As security for the Tranche B2 Obligations, effective and perfected as of the Subsidiary Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lenders of, or over, any Tranche B2 Collateral (as defined below), the following security interests and liens, are by this Interim Order granted by the Debtors to the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Tranche B2 Collateral", and together with the Tranche A Collateral, the "DIP Collateral"), subject, as to priority only, to the Carve-Out, the Senior Liens, and any Existing Non-Affiliate Mechanic's Liens (all such liens on and security interests in the Tranche B2 Collateral granted to the DIP Lenders, pursuant to this Interim Order and the DIP Credit Documents, the "Tranche B2 Liens", and together with the Tranche A Liens, the "DIP Liens"):

a.    First Lien on Unencumbered Property of the Debtors.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Subsidiary Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid,

perfected and non-avoidable liens, if any (collectively, "Tranche B2 Unencumbered Property"), and any proceeds of all of the foregoing.  Subject to and effective only upon entry of the Final Order, the Tranche B2 Unencumbered Property shall also include the Debtors' claims and causes of action under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Tranche B2 Avoidance Actions", and together with the Tranche A Avoidance Actions, the "Avoidance Actions"), and shall include any proceeds or property recovered, unencumbered or otherwise, that are the subject of successful Tranche B Avoidance Actions, whether by judgment, settlement or otherwise ("Tranche B2 Avoidance Proceeds").

        b.    <u>Liens Senior to Prepetition Secured Parties' Liens</u>.  Pursuant to section 364(c)(2), (c)(3), and (d)(l) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, Cash Collateral), whether now existing or hereafter acquired, junior only to the Senior Liens and any Existing Non-Affiliate Mechanic's Liens.

        c.    <u>Liens Senior to Certain Other Liens</u>.  Except as otherwise set forth herein, the Tranche B2 Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and the Estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

        d.    The granting of liens of the same scope and priority as the Tranche B2 Liens to secure the Tranche B1 Obligations is subject to entry of the Final Order.

7.    **Protection of DIP Lenders' Rights**.

a.    The DIP Liens, as described above, and security interests granted to the DIP Lenders herein shall not (i) be subject to any lien or security interest that is avoided and preserved for the benefit each of the Debtor's Estates as a result of any Avoidance Actions or (ii) be subordinated to or made *pari passu* with any other lien or security interest under section 364(d) of the Bankruptcy Code or otherwise.

b.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lenders to exercise, upon the occurrence and during the continuance of such an Event of Default, and giving any notice and opportunity to cure as provided under the DIP Agreement, all rights and remedies of the DIP Lenders provided for in the DIP Loan Documents and this Interim Order, subject to the provisions of the FX3 Intercreditor Agreement and the H14 Intercreditor Agreement.  In no event shall the DIP Lenders or Existing Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to their respective liens and security interests upon and in the DIP Collateral or the Prepetition Collateral, as applicable.  Any delay or failure to exercise rights and remedies by the DIP Lenders under the DIP Loan Documents or this Interim Order shall not constitute a waiver of any DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.  Further, pursuant to the HoldCo Final Borrowing Order and this Interim Order, in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the secured claims of the Existing Lenders.

c.    No rights, protections or remedies of the DIP Lenders granted by the provisions of this Interim Order or the DIP Loan Documents shall be limited, modified or

impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtors' use of Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to use Cash Collateral or (iii) the terms of any other order or stipulation related to the Debtors' use of Cash Collateral or any other matter or the provision of adequate protection to any party.

8.      **Limitation on Charging Expenses Against Collateral**.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no claim may be asserted against the DIP Lenders or the Existing Lenders, either in their capacity as such, to charge any expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, against the DIP Collateral or the Prepetition Collateral or recover such expenses from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lenders and the Existing Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or the Existing Lenders.

9.      **Use of Cash Collateral**.  Subject to the terms, conditions, and limitations set forth in this Interim Order and the entry of the Final Order, the Debtors are authorized to use Cash Collateral in which the DIP Lenders or the Existing Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in the DIP Loan Documents or this Interim Order.  The Debtors are hereby authorized to use Cash Collateral in any updated DIP Agreement that is amended in accordance with this Interim Order and the DIP Loan Documents without further approval by the Court.  Any dispute in connection with the use of Cash Collateral in accordance with the DIP Loan Documents and this Interim Order shall be heard by the Court. Notwithstanding anything in this Interim Order to the contrary, the Debtors' authority to use

Cash Collateral shall automatically terminate (subject to further Order of this Court) without any further action by this Court, the DIP Lenders, or the Existing Lenders, upon the earliest to occur of (the "Cash Collateral Termination Date"):  (a) the date on which an Event of Default shall have occurred and any applicable cure period has passed under the DIP Loan Documents; and (b) such earlier date on which the DIP Obligations shall become due and payable in accordance with the terms of this Interim Order and/or the DIP Loan Documents.  Notwithstanding anything herein to the contrary, no Cash Collateral shall be used in a manner that would violate paragraph 17 herein, any budget delivered under the DIP Agreement, or the terms or provisions of any Cash Collateral Orders.

10.    **Optional and Mandatory Prepayments**.  The Debtors may voluntarily prepay the principal of the DIP Loan or the Prepetition Loan Settlement Amount, in whole or in part, at any time and from time to time.  The Debtors must pay the DIP Loan and the Prepetition Loan Settlement Amount pursuant to the terms of Section 2.02 of the DIP Agreement and Section 5(c) and (d) of the Settlement Agreement.  Once amounts owing under the DIP Loan are repaid or prepaid, they cannot be reborrowed.

11.    **Adequate Protection**.  The Existing Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in the value of the Existing Lenders' interests in the Prepetition Collateral during the Chapter 11 Cases including, without limitation, any such diminution during the Chapter 11 Cases resulting from the sale, lease or use by Variant (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Existing Lenders' security interests and liens in the Prepetition Collateral by the DIP Lenders, pursuant to the DIP Loan Documents, the Interim

Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Existing Lenders were, by the HoldCo Final Borrowing Order, and hereby are granted certain adequate protection (as defined in the HoldCo Final Borrowing Order, the "Adequate Protection Obligations") with respect to the Existing Lenders' interests in the Prepetition Collateral.  The Adequate Protection Obligations set forth in the HoldCo Final Borrowing Order are hereby preserved, reaffirmed, and to the extent necessary granted to the Existing Lenders.  For the avoidance of doubt, the Adequate Protection Obligations do not grant any liens directly on or against the Properties, and do not create any direct claim or liability against the Subsidiary Borrowers.

12.    **Financial Reporting**.  The Debtors shall provide and cause the Existing Lenders and the DIP Lenders to be provided with financial and other reporting as described in the DIP Loan Documents.

13.    **Reservation of Rights of Existing Lenders**.  Under the circumstances, the Court finds that the adequate protection provided in this Interim Order is reasonable and sufficient to protect the interests of the Existing Lenders.  However, the Existing Lenders may, subject to any limitations set forth in the Settlement Agreement, request further or different adequate protection, and the Debtors or any other party may contest any such request; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lenders granted under this Interim Order and the DIP Loan Documents and the Carve-Out.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Existing Lenders or the DIP Lenders.

14.    **Perfection of DIP Liens**.

a.    The DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action, in each case, in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lenders choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it under this Interim Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, with respect to the Tranche A Collateral, as of the HoldCo Petition Date, and with respect to the Tranche B2 Collateral, as of the Subsidiary Petition Date.  For the avoidance of doubt, nothing in this Interim Order shall alter or affect the validity or priority of the liens granted to the DIP Lenders against the Tranche A Collateral, effective as of the HoldCo Petition Date, to secure the Tranche A Obligations or the Tranche B1 Obligations pursuant to the HoldCo Final Borrowing Order.  The Existing Lenders and DIP Lenders, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lenders to further validate, perfect, preserve and enforce the DIP Liens.  The Debtors shall execute and deliver to the DIP Lenders and/or the Existing Lenders, all such agreements, financing statements, instruments and other documents as the DIP Lenders or the Existing Lenders may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed, with respect to the Tranche A Collateral, as of the HoldCo Petition Date, and with

respect to the Tranche B2 Collateral, as of the Subsidiary Petition Date.

b.    None of the Debtors nor the Existing Lenders or DIP Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or any other waiver or consent to enter into control agreements, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action to validate, perfect, preserve and enforce the DIP Liens.

c.    A certified copy of this Interim Order may, in the discretion of the DIP Lenders or the Existing Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording.  For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the DIP Lenders and/or the Existing Lenders to take all actions, as applicable, referenced in this subparagraph (b) and in the immediately preceding subparagraph (a).

15.    **Preservation of Rights Granted Under the Order.**

a.    Except as expressly provided herein, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lenders or the Existing Lenders, respectively, shall be granted or allowed while any portion of the DIP Loan (or any refinancing thereof) or the commitments thereunder or the DIP Obligations or the Adequate

Protection Obligations remain outstanding, and the DIP Liens shall not be, except as to the Senior Liens and any Existing Non-Affiliate Mechanic's Liens, (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' Estates under section 551 of the Bankruptcy Code or (ii) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

   b.  Each Guarantor's guaranty of the Debtors' obligations in connection with the DIP Loan (collectively, the "Guaranty"), and any liens granted thereunder by each Guarantor to secure the obligations and liabilities arising pursuant to the Guaranty, shall not constitute a fraudulent conveyance or fraudulent transfer under section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

   c.  Unless all DIP Obligations shall have been indefeasibly paid in full in cash on terms and conditions acceptable to the DIP Lenders or pursuant to the terms of the Settlement Agreement, and the Adequate Protection Obligations shall have been paid in full, the Debtors shall not assert, file or seek, or consent to the filing or the assertion of or joinder in, and it shall constitute an Event of Default under the DIP Agreement and terminate the right of the Debtors to use any and all Cash Collateral if any of the Debtors assert, file or seek, or consent to the filing or the assertion of or joinder in, or if there is entered, (i) any reversal, modification, amendment, stay or vacatur of this Interim Order, without the prior written consent of the DIP Lenders and the Existing Lenders or (ii) without the prior written consent of the DIP Lenders and the Existing Lenders, (A) an order dismissing any Chapter 11 Case under sections 105, 305 or 1112 of the Bankruptcy Code or otherwise; (B) an order converting any Chapter 11 Case to a case under

chapter 7 of the Bankruptcy Code; (C) an order appointing a chapter 11 trustee in any Chapter 11

Case; (D) an order appointing an examiner with expanded powers beyond those set forth in

sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in any Chapter 11 Case; or (E)

an order granting a change of venue with respect to any Chapter 11 Case or any related adversary

proceeding.  For the avoidance of doubt, the foregoing is not a comprehensive list of Events of

Default set forth in the DIP Agreement.  If an order dismissing any Chapter 11 Case under

section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall

provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the

Superpriority Claims and other administrative claims granted under this Interim Order and the

DIP Liens and adequate protection liens granted to the DIP Lenders and, as applicable, the

Existing Lenders, pursuant to this Interim Order shall continue in full force and effect and shall

maintain their priorities as provided in this Interim Order until all of the DIP Obligations and the

Adequate Protection Obligations shall have been paid and satisfied in full in accordance with the

provisions of the DIP Agreement (and that such Superpriority Claims and the other

administrative claims granted under this Interim Order, the DIP Liens and adequate protection

liens granted under this Interim Order shall, notwithstanding such dismissal, remain binding on

all parties in interest) and (y) this Court shall retain jurisdiction notwithstanding such dismissal,

for the purposes of enforcing the claims, liens and security interests referred to in clause (x)

above.

       d.     If any or all of the provisions of this Interim Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the

validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations

incurred prior to the actual receipt of written notice by the DIP Lenders or the Existing Lenders,

as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, the priority or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Agreement with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtors to the DIP Lenders and/or the Existing Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Lenders and/or the Existing Lenders, as the case may be, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lenders and the Existing Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan Documents with respect to all such uses of Cash Collateral and proceeds of the DIP Loan, all DIP Obligations and all Adequate Protection Obligations.

e.      Except as expressly provided in this Interim Order or in the DIP Loan Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, and all other rights and remedies of the DIP Lenders and the Existing Lenders granted by the provisions of this Interim Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or dismissing any Chapter 11 Case, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the Settlement Agreement or DIP Loan Documents), or (iii) except as may otherwise be provided in a Plan of Reorganization with respect to any allowed claims for diminution, the entry of an order confirming a Plan of Reorganization in any Chapter

11 Case, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived any discharge as to any remaining DIP Obligations and Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Loan Documents shall continue in effect and be binding in any Chapter 11 Case, in any successor case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the adequate protection liens, the Superpriority Claims and all other administrative claims granted pursuant to this Interim Order, the Adequate Protection Obligations and all other rights and remedies of the DIP Lenders and the Existing Lenders granted by the provisions of this Interim Order and the DIP Loan Documents shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash.

16.     **Preservation and Reaffirmation of Rights Granted Under the HoldCo Final Borrowing Order**. Except as expressly set forth herein, nothing in this Interim Order shall be deemed to alter, modify, or waive, the findings, holdings, rights, liens, claims, interests, and protections provided under the HoldCo Final Borrowing Order, all of which such findings, holdings, rights, liens, claims, interests, and protections are hereby reaffirmed. Further, nothing in this Interim Order or the DIP Loan Documents shall be deemed to alter, modify, or waive the rights and obligations under that "Letter Agreement Regarding Payment and Satisfaction of Professional Fees and Expenses," dated as of August 28, 2015, by and among, Variant, certain of the Guarantors, the DIP Lenders, PSZJ, DSI, and Greenberg Traurig LLP.

17.     **Limitation on Use of Loan Proceeds and Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, none of the proceeds of the DIP Loan and none of the DIP Obligations, the Cash Collateral, the DIP Collateral or the Carve-Out may be used for the following purposes: to (i) object, contest or raise any defense to, the validity,

perfection, priority, extent or enforceability of any amount due under the Settlement Agreement,

the DIP Loan, the DIP Loan Documents, the Existing Debt, or the Existing Loan Documents, or

the liens, security interests or claims granted under this Interim Order, the DIP Loan Documents,

or the Existing Loan Documents, (ii) investigate, initiate or prosecute any claims and defenses or

causes of action against any of the DIP Lenders, the Existing Lenders, or their respective agents,

affiliates, representatives, attorneys or advisors under or relating to the Settlement Agreement,

the DIP Loan Documents, or the Existing Loan Documents, (iii) prevent, hinder or otherwise

delay the DIP Lenders' assertion, enforcement or realization on the Cash Collateral or the DIP

Collateral in accordance with the DIP Loan Documents or this Interim Order, (iv) seek to modify

any of the rights granted to the DIP Lenders or the Existing Lenders hereunder or under the DIP

Loan Documents, or the Existing Loan Documents, in each of the foregoing cases without such

parties' prior written consent, or (v) pay any amount on account of any claims arising prior to the

Petition Date unless such payments are (A) approved by an Order of this Court and (B) in

accordance with the DIP Agreement and any relevant budget.

18.    **Assumption of the Settlement Agreement**.  The Settlement Agreement is hereby

assumed by the Debtors, and is a binding agreement and obligation against the Debtors and the

Estates.  The proposed assumption of the Settlement Agreement satisfies the requirements of the

Bankruptcy Code including, *inter alia*, section 365(a) of the Bankruptcy Code.  Nothing herein

shall be deemed to alter, modify, or waive any parties' obligations under the Settlement

Agreement.

19.    **The Initial Advance**.  Pursuant to the terms of the DIP Agreement, the Initial

Advance may be used by the Debtors solely in accordance with the Interim Budget, subject to

any variances permitted under the DIP Agreement.

DOCS_SF:89346.8 89703/002

20.     **Sales of Collateral, Right to Credit Bid**.  Upon entry of this Interim Order, the DIP Lenders with respect to the DIP Loan, and the Existing Lenders with respect to the Existing Debt, respectively, shall, unless the Court for cause orders otherwise, have the right to credit bid or waive any right to distribution on account of such debt up to the full amount of the DIP Obligations or the Existing Debt, as applicable, in connection with any sale conducted (i) pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code or (ii) pursuant to section 363 of the Bankruptcy Code.  No sale shall constitute a waiver by any DIP Lender or the Existing Lenders of any deficiency claim under any applicable law, regardless of whether any DIP Lender or the Existing Lender consents to or opposes such sale and regardless of whether the DIP Obligations are credit bid in connection with such sale.

21.     **Proofs of Claim**.  The Existing Lenders will not be required to file a proof of claim in the Chapter 11 Cases in respect of any claims arising under or related to the Existing Debt, the Existing Loan Documents, or the Settlement Agreement.  The Court's Settlement Approval Order shall be deemed to constitute a timely proof of claim for the Existing Lenders against each of the Debtors in each of the Chapter 11 Cases, which shall be treated under section 502(a) of the Bankruptcy Code as if the Existing Lenders have filed a proof of claim.  Further, the Existing Lenders shall have an allowed claim pursuant to the terms of the Settlement Agreement against Variant for all purposes, including for the purposes of credit bidding. Nothing in this paragraph shall waive, alter or modify the Existing Lenders' right to file, amend and/or supplement, in its sole discretion, a proof of claim(s) in the Chapter 11 Cases for any claim allowed herein.

22.     **Modifications of DIP Loan Documents**.  Without further Order of this Court,

the Debtors and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the respective DIP Loan Documents, non-material modifications of the DIP Loan Documents (that do not shorten the maturity of the extensions of credit thereunder, increase the commitments thereunder or otherwise do not materially change the terms of the DIP Loan Documents in a manner adverse to the interests of the Debtors) or waivers with respect to the DIP Loan Documents; provided, however, any material modification or amendment to the respective DIP Loan Documents shall be subject to court approval after notice and a hearing.

23.    **Interim Order Governs**.  The DIP Loan Documents and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders; provided, however, that in the event of any inconsistency between the provisions of the DIP Loan Documents and this Interim Order, the provisions of this Interim Order shall govern.

24.    **Cash Collateral Orders Govern**.  In the event of any inconsistency between the provisions of the DIP Loan Documents, this Interim Order, and the Cash Collateral Orders, the provisions of the Cash Collateral Orders shall govern.

25.    **Intercreditor Agreements**.  Nothing in this Interim Order shall affect, modify, or otherwise alter the rights and obligations of (i) the DIP Lenders and the FX3 Noteholder pursuant to the FX3 Intercreditor Agreement, or (ii) the DIP Lenders and the H14 Mortgage Lender pursuant to the H14 Intercreditor Agreement.

26.    **Binding Effect; Successors and Assigns**.  The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Lenders, the Existing Lenders, any Committee appointed in the Chapter 11 Cases and the Debtors and their successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the

Estates or the Debtors); provided, however, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Estates. In determining to make any loan or other financial accommodation under the DIP Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Lenders shall not, solely by reason thereof, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

27.    **Effectiveness**. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Subsidiary Petition Date immediately upon entry hereof, except that the findings, holdings, rights, liens, claims, interests, and protections provided under the HoldCo Final Borrowing Order shall remain effective as of the HoldCo Petition Date. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.    **Retention of Jurisdiction**. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

29.    **Final Hearing**. The Final Hearing is scheduled for ___Feb. 11___, 2016 at ___10:00___ a.m (prevailing Eastern Time) before this Court. The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties

having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee and its counsel, if the same has been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file the same with the Court (with a courtesy copy to the Court's chambers) and serve (so as to be received) such objection no later than ___Feb. 4___, 2016 at 4:00 p.m. (prevailing Eastern Time) upon: (a) the Debtors, c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, CA 90071, Attn: Bradley D. Sharp, (b) counsel for the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Peter J. Keane, and (b) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica, Blvd., 13th Floor, Los Angeles, CA 90067, Attn: Richard M. Pachulski & Maxim B. Litvak; (c) counsel to any Committee; (d) counsel for the Beach Point Funds, O'Melveny & Myers, LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, Attn: Suzzanne S. Uhland & Michael S. Neumeister, (f) counsel for the Administrative Agent, Holland & Knight LLP, 31 West 52nd Street, New York, NY 10019, Attn: Barbra R. Parlin & Joshua M. Spencer, and (g) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Mark S. Kenney.

Dated:  January 19, 2016
          Wilmington, Delaware

                                    THE HONORABLE BRENDAN L. SHANNON
                                    UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:89346.8 89703/002